MARTIN E. WALTERS E-86183
C.S.P. – SOL. 6-206L
PO Box 4000
VACAVILLE, CA. 95696
Pro Se

FILED
JUL 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY KWH DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN EDWARD WALTERS, Petitioner. | Criminal Case NO. 88cr 0769-DMS |
| VS. | Civil Case NO. 08 cv 0924-DMS |
| UNITED STATES OF AMERICA, Respondent. | Reply To Governments response and opposition to motion Pursant To 28 U.S.C. § 2255; And Declaration in support thereof. |

COMES NOW Petitioner, MARTIN EDWARD WALTERS, Pro Per, in response to Governments opposition to Petitioner's Title 28 U.S.C. § 2255 application, Filed 6-26-2008, received 7-1-2008.

First of all, Petitioner did not receive the Courts Order dated May 29, 2008, and he does not know what he is expected to do or know, without said order. Petitioner requests a copy of Said Order because he is a layman at Law, inarticulate, and has too many deficiencies to list. Mainly, he does not know how To Proceed, Time limits, etc., and may need additional Time. However, Petitioner asserts That his Petition is Timely brought, and a bonafide miscarrage of Justice has/will occur without this Honorable Courts intervention.



ORIGINAL

Petitioner is a layman at law and requests appointment of Counsel because the issue(s) are complex (To me) and Petitioner lacks meaningful access to a law library, at most two times a week, and usually ~~0~~ to one (1) Time a week for 2-4 hours; Plus, he suffers from double Vision; This is a complicated case, because it involves two cases, and misrepresentations of facts and law - which were used as the basis for entering Petitioner's guilty Plea's in both State and Federal Jurisdictions; further the misrepresentations of [redacted] law and fact also mislead Petitioner into believeing he would be released from State Prison on 8-2-2005 back in Feb., 26, 1991; [redacted] that Prison officials created this misrepresentation and Petitioner detrimentally relied upon Said, which resulted in Petitioner's abandonment [redacted] or insufficient attempt at direct appeal or timely Habeas Corpus Petition. In other words although Petitioner misunderstood and/or had legitimate claims on appeal, he abaadoned serious efforts to persue known grounds because Prison officials claimed he would be released from prison on 8-2-05, and that "release date" provided the Satisfaction (or false Sense of security) to Petitioner's mind that the "ends" of the "Package deal" would be honored, Thus, the 20 years in custody (true underlying agreement between negotiating Parties) would [redacted] in fact "be effectuated" as the contracting Parties intended. (See Exhibit A)[1]

Your Honor, Petitioner is not a Sophisticated man, and was even less so, as a 20 Year old defendant, somewhat isolated in M.C.C. ad.-seg.; Petitioner was and is ignorant of the law

procedures and Proceedings.

Petitioner is in need of an evidentiary hearing or plenary review of this Court to bring forth reality and Justice by fulfilling the True intentions of the contracting Parties.

Petitioner will do his best to bring you up to speed, and dispell Respondent's assumption's and misrepresentations made to this Court in his un-Varified motion (opposition).

## Declaration

I, Martin Edward Walters, declare and solmnly swear upon my Oath that the following statements are true and correct to the best of my Knowlege, and I swear this to be true under penalty of perjury.

1. On 10-21-88, I was arrested by federal authorities, and housed in Metropolitan Correctional Center (M.C.C.) in San Diego Calif., held without bail and charged with numerous Drugs and Weapons Violations in case # 88-0769-G- Criminal.

2. On 12-1-88, I was charged by Cal. State authorities on numerous charges, includeing first degree Murder, in San Diego Cal., in Case # CR 103749.

3. The Courts appointed Parties Larry Ainbinder (esq.) and Jim Pokorny (esq.) to represent Petitioner in State and federal Cases respectfully. Plus, Ed. Miller (Dep. Dist. Attorney, (D.D.A.).), and D. Thomas Ferarro (Assistant United States Attorney (A.U.S.A.) represented the State and Federal Governments respectively; and Martin Edward Walters. (Real Party of Interest).

4. AFTer Numerous failed plea negotiations, The Prosecutions offered Petitioner a "Package Deal" plea agreement that purportedly satisfied Petitioner's and the Prosecutions compramise, That compramise being that, Petitioner agreed to serve 20 years in custody to Satisfy all cases Pending in both Jurisdictions e.g. No New indictments or new cases or counts etc.; the State would not prosecute/File charges against Petitioner's Mother and Aunt. (As they threatened earlier)

In retrospect here is where the problems arise.

Effectuating the True Underlying agreement.

According to the Officer's of the court, The System does not provide for a Sentence of "20 years in custody" due to "Sentencing Guideline Ranges", "Post-conviction credit", "accptance of responsibility" factors, etc..

Although Petitioner is not accustomed to accepting or negotiating in Variables e.g. Level 36, plus 2 for Management factor, minus -2 for acceptance, concurrent counts etc. (lawyer business)

Petitioner had good cause to rely on his counsel and the Governments' were Telling the truth, that A.) Petitioner faced L.W.O.P. in ~~both~~ Federal court. and B.) that the Charges and express Promises i.e. concurrent time; Served in Federal custody; and representations of Good time, and multijurisdictional Prisoner status Ensured Petitioner's freedom at the expiration of his federal Sentence! thus, effectuating the actual 20 years in custody. Because Petitioner "would not"

Serve one day on the first degree murder charge" and Petitioner would also be elligiable for Parole up To 60 month early. (on the Term, prescribed in murder matrix)

These representations proved unequivicly that the State case was Virtually a NON-liability. (i.e. shorter time.) Petitioner detrimentally relied on these Promises and inducements. Thus, Only Voluntary under those premises. (lies)

Respondent representing our honorable United States of America our nation, and his integrity, implies to this Honorable Court that the intent of the Parties was That Petitioner was to Serve his federal Sentence in State Custody, and concurrent To his State Sentence based upon his proffered exhibits.

With all due respect sir, that proposition is proposterous.

Petitioner asserts that reporters transcripts of this honorable Court dated may 9, 1990, The "Plea Agreement" Transcripts Show the intent of the contracting Parties; along with but not limited to: the "express Promises" stated in the change of Plea form (Respondents #7 exhibit, B); the Probation report excerpt, (see Exhibit N/A); Plea Agreement Minute Order dated May 9, 1990, (see exhibit C); Motion to withdraw guilty plea, Dated 12-4-90, Opposition to said "Withdrawl" Motion Dated 1-8-91; and Sentencing transcripts, Dated 1-10-1991, and Minute Order; and abstract of Judgement, also dated 1-10-1991. (see exhibits D-E)

Petitioner asserts that the plea agreements express promises or provisions i.e. concurrent time, served in Federal custody, inter alia, are in fact [his] conditions for pleading guilty in the package deal. The provisions are also evidence of the expectation and understanding, of Petitioner, That the States time was in fact determined to be shorter than or equal to, Petitioner's expected Federal time. Surely, the express promises/provisions would create an anomoly to conclude the State's sentence would be longer than the Federal Sentence. Further, an examination of Mr. James Pokorny's, billing minutes would show that My appointed Counsel believed that Petitioner would serve 19 years on the first degree murder, also claiming Mr. Larry Ainbinder believed this as well. (see excerpt, as exhibit E). Furthermore, when My State counsel submitted the motion to withdraw my ~~guilty~~ guilty Plea, (see exhibit D); and at the plea withdrawl hearing on 1-10-91, Petitioner's Counsel told the Open Court, that Petitioner's release from Prison was anticipated at 20 years That Petitioner would be free at the age of 40 (in all likelihood) while the Trial Court and D.D.A., Said nothing. (see exhibit D).

Finally, in Respondent's own exhibit 3, Mr. J.F. Pokorny, Said 25 years to life actually Means... Petitioner would Serve 20-21 years, thats the actual amount of time [He] will serve; according to D.D.A. Mr. miller who was present.

Please forgive me if [I] appear rude, but Petitioner has been mislead and lied to by the Executive branches representatives So Many Times that he is frustrated.

Petitioner believes that Respondent, representing the

the honorable People of These United States of America with honor, dignity, and integrity, and Under Sworn Oath Should be on my side... Pushing ~~the~~ or insisting the Executive branch of California, honor it's Promises to Me, a U.S. citizen, who also sworn allegiance to the United States, ~~and~~ NOT Perpetuate the fraud or constructive fraud and/or dishonor of the State's promises upon Your U.S. citizens, whom are Powerless.

Sir, Your Oath, honor and integrity should compel your honesty You and Petitioner deserve better than some sham to win a case Public confidence in the honor of our Government is at stake and the promises of our Government must be Kept, according to U.S. Supreme Court Law, (e.g. Santobello, Adamson and her Progeny Buckley, Poole, etc. etc.), as well as the Concomitant Obligations flowing from the Plea agreements. (i.e. multijurisdiction Prisoner Initial Parole hearing, Post-conviction credit, Parole Period etc.)

Petitioner asserts these events were part of Petitioners Considerations when Pleading guilty due to the nature of The System's effectuating process for Petitioner to arrive at the [His] final destination = freedom from incarceration i.e. the Purpose of Pleading guilty and Waiveing My U.S. Constitutional Rights. To pretend otherwise would suggest Petitioners Concomitant obligation of serving time incarcerated is not required and Thus Petitioner demands release, Today!

Issue the Order releaseing Petitioner because Petitioner discharged his debt to Society by Pleading guilty, and the concomitant obligation is not binding.

If the State or Federal Government is not bound than neither is Petitioner. Thus, it follows Petitioner is illegally confined.

Respondent implies, in his motion to oppose, that Honorable Earl B. Gilliam Sentenced Petitioner to Cal. State prison. (See his Exhibit 2) When in fact Honorable Judge Gilliam, "recomended" to the Federal B.O.P. Such.

Your Honor, Petitioner was sentenced in State Court to serve his State sentence concurrent to his federal sentence; to be Served in Federal custody, on 1-10-91. (See Exhibit D)

On 1-17-91, Petitioner requested that he be sent to a State Prison, because as the Son of a Federal Probation officer, Orville Edward Walters, Petitioner was fighting with other Federal inmates and that was not a conducive environment for rehabilitating oneself, or earning Post conviction credit. (Surprisedly inmates are not fond of the children of our Executize branch.)

Honorable Judge Gilliam understood Petitioner's request in light of the fact Petitioner was going to a U.S. Penatentury.

Judge Gilliam told Petitioner he could recomend a State prison However, he could not Promise one, because the B.O.P. decided those issues.

No promises were made, No conditions or provisions were waived it was a simple request between men.

Petitioner had no expectation of going to a State prison.

Petitioner's main concern was getting answers about what "25 Years to Life" Sentence was? (imposed by State Court)

another lie, and the Court claimed Petitioner delayed, when in fact Petitioner was isolated, without property at Lompoc U.S.P. from 8-1-90, to Nov. – Dec. of 1990. Another misrepresentation by men representing position of honor.

Futher, after sentencing Petitioner's counsel Larry Ainbinder said Petitioner must have misunderstood, and Petitioner would have his Indeterminate Sentence (I.S.L.) fixed by prison officials at reception center, within 120 days.

Petitioner would have appealed his ambiguous Sentence had it Not been for the fact, Prison officials did claim Petitioner had a 25 year Term (see Exhibit A) and he could reduce that Term and "release Date" or "DAYS to serve" in the C.D.C., if Petitioner agreed to behaive and participate in Work or Education, etc., Petitioner agreed and did his best. (P.C. § 2930)

Please understand that virtually all Petitioner's anxieties and fears were put to rest when he relied (detrimentally) upon the C.D.C. Forms, counselors, and Program Administrators and inmates all Telling Petitioner he had a 25 year term.

This perceived reality created by the Executive branch, C.D.C., caused Petitioner to abandon serious attempts to appeal and Habeas review because Petitioner had his release date. Thus, No point in trying to fix something that was fixed.

Then in 1996, when A.E.D.P.A. passed and the dates To File came and went, it was of No consequence because Petitioner had his release date and he was working and behaiving well/okay and earning his conduct/Term reduceing credits. (So he thought!)

Petitioner clearly Understood the Price Tag for murder (1st) would be about 19 years, and as low as 17yr 8mo. to a Max of 21 years for a 33 year term-Minus 33%. (Not Life!)

No one ever mentioned that Petitioner (may) need to be found suitable for parole in order to receive his prescribed Term of punishment based solely on the circumstances of the convicted offense. That does not make sense. (unless a prisoner actually received early release via parole, say at a P.C. § 3041(a) initial Parole hearing conducted 1 year prior to the min. term, and thereby fulfilling their obligation pursuant to P.C. § 1168(d) as read in 1917.) Why would a person have to overcome such a burden of the Gift of Parole unless in fact it was durring the time window of the Gift?

As you can see by the express legislative intent of P.C. § 1168(d) The Executive Authority's Obligation at the M.E.P.D. or after minimum period of confinement, their obligation must be executed, reguardless of Parole Suitability. (See exhibit G)

Anyway Petitioner did now know any of the laws used to execute the sentences, he Only knew that he would be released at the expiration of the Federal sentence. Because the calculations and promises or provisions ensured That result. (according to all the "officers of the Court")

On 1-10-91, Petitioner tried to inquire/object to the sentence but the Judge Hon. Jesus Rodriguez refused to call on Petitioner whose hand was raised. The Sentencing was a surpise, Petitioner thought it was a plea withdrawl proceeding. At the hearing the Judge denied my Petition on the false basis that Petitioner received a benefit that the State prosecutor assited my Family into receiveing a minimum Term in their Federal Case.

During plea bargaining stages, The D.D.A. Said That first degree Murder carried "a Sentence range of 25 years to Life.", not an indeterminate sentence. No ducument or Penal code or advisement by ~~counsel~~ Anyone, did the word "indeterminate" ever appear. Not in any Motion, Plea Agreement form, hearing etc. did "indeterminate" ever come forword. As a Matter of fact Petitioner did not even know what an indeterminate Term was until after Sentencing. And even then he erroneously believed it was a I.S.L. indeterminate term. (which may or may not be true, it's too difficult a question to ascertain the truth.)

See, when Petitioner's counsel and D.D.A. showed Petitioner California's first degree murder matrix, which ~~defined~~ provided for the Terms (punishment or "price tag for the crime") in years, Predicated upon circumstances of the crime. Petitioner Thought those Terms were in fact determinate Sentences to be imposed by the Superior Court Judge at Sentenceing. (see ex. H)

Similar To Sentenceing guidelines in the Federal System, for example even though the Statute (Fed.) provided 10 years to life The actual Punishment of level 36 Provided for a 188-235 month sentence. Thus, 10 years to Life actually means a 212 Month term. And 25 years to Life actually meant a e.g. 27 Year Term, (excludeing Post conviction credit of 33% Persuant to P.C. § 2931.) or 19 years in custody.

The Federal Statutes Provided for a 15% post conviction credit, and the State 33%. Thus, when calculated by counsel resulted in a 19 year term (Net) e.g. 27 Years (gross) Subtract 33% or 8 years, equals 19 years.

for over 12 years Petitioner believed he would be elligible for Parole in 2004 and his release date was secure.

Then in about Nov. 2003, counselors started telling him he had a Life Sentence.

Petitioner, a layman thought the C.D.C. Staff converted or trying to convert his (believed) 25 year term into a Life Sentence, for no reason. So, [He] appealed (administratively) by 602 form, and the Staff (Executive branch) said to Petitioner that ~~E~~ this was a Sentencing Issue and refered me to Court for relief. (another misrepresentation) This was not a sentencing issue in the "illegal sentence" sense, that Petitioner was lead to believe by Department (C.D.C.) Staff. (see Exhibit J)

Then During the ~~Ct~~ Court process, Petitioner's first 'Habeas' the Court claimed Petitioner received an Indeterminate Sentence, Petitioner showed his counselor and he admitted the Court was right Petitioner did not receive a life Sentence. Thus, reaffirming Petitioner's misplaced belief in his release date. (I.S.L. Term Fixed)

On 2-24-05, 6 month's late, Petitioner appeared before a B.P.H. Parole Consideration hearing and was denied parole for 5 years. A decision which is not provided by Board Regulations, Title 15 §2370 (d), for a person with my "Multijurisdictional Status". Thus, the Executive was not only late, but scheduled me for the wrong hearing and ~~dispos~~ failed to provide a dispositive decision regaurding the California Term. As usual the Executive (state) fails to perform, and repeals its Administrative remedy process so the Courts must bail them out, but usually deny Prisoner's for Not Knowing how or when to obtain Judicial Proceedings (in ~~California~~ STATE COURT) or relief. (we are not skilled pleaders)

Petitioner studying every law book(s) he could get; conducting on going investigations with both state and Federal counsel and members of the Agencies. (C.D.C.R and B.P.H.); the Cal. A.G.'s office trying to obtain the correct information.

Petitioner discovered the appropriate Regulations in Oct./NOV. of 2007 and were affirmed by Mr. Rooz of the B.P.H. in March of 2008. (see Exbits H)

Petitioner submitted an appeal (simultaneously) Via 602, requesting transfer back to a Federal prison, Petitioner explained all the problems he was haveing and how C.D.C.R. or the B.P.H. was dishonoring the provisions of his plea Agreement of concurrent time; served in Fed. custody; the 5 year parole period, in the C.D.C.R was Now claiming Petitioner would be subject to a penal consequence merely Titled "parole" but really a "supervised release" and Not for a Maximum of 60 Months as clearly stated in the plea Agreement, but for the remainder of Petitioner's life. (unacceptable); furthermore he was not entitled to the post conviction credit he earned because now it's claimed to advance a parole consideration hearing, not to reduce My prescribed Term, in July of 2007.

On 1-18-08, the C.D.C.R. refused to honor any of the promises listed above. again falsely claiming the Federal Sentence is to run after the State Sentence. (another lie)

Look Petitioner is not accustomed to haveing people in position of Authority simply Transmografying his plea Agreements provisions, his Conditions for pleading guilty, nulified Misconstrued, and dishonored.

These "professionals" do not know what they are doing, they

learn how to do the Job one way and when My Situation (a extreme rareity) is brought forth it does not "Fit the Mold" and Petitioner's claims, facts, and status, and promised Terms are swept under the carpet.

No one knows why [I'm] here yet do nothing to get me back To where [I'm] supposed to be, i.e. Federal custody. so, Petitioner can get ~~the~~ A material benefit of his plea bargain e.g. the Initial parole hearing and dispositive decision flowing there-from that would unequivically prove Petitioner's state Term has expired and he is illegally confined. furthermore Petitioner believes his fed term has expired or will this year (2008) and Once again ~~the~~ Fed. Executive miscalculated the Term TOO.

The Factual predicate to these claims Only occured this year and could not have been discovered through due diligence any Sooner. plus, The State Government brain washed Me into believ-eing Petitioner would be released on 8-2-2005, back IN Feb. of 1998. (see ex. A) Therefor, The Time period should be Tolled or equitable estoppel should be applied to protect Petitioner from the miscarriage of Justice manifested by Government action and inaction, fundamental fairness requires this Courts power & intervention in this Extra Ordinary case.

There are significant amount of factual and legal disputes These are Santobello claims, not "recomendations" of a Judge in State or Federal court, or a misspoken statement (or out of context) by Mr. Pokorny at a sentenceing hearing. These are my conditions for pleading guilty and the State agreed with them and promised so expressly. (See exhibit D)

Petitioner has a Federal cognizable claim guarteed by the

by the U.S. Constitution interpreted by Holdings of the U.S. Supreme Court. (and 9th circut too) to enforce the terms inducements and prosecution promises of Petitioner's plea bargain. (14th Amend. Due process Right.)

Petitioner requests a Evidentiary hearing to develop facts contained both on and off the record, to prove Petitioner's assertions. That this is a santobello issue, and ~~Petitioner~~ Our True intent i.e. "Ends". Petitioner is entitled to relief. He is illegally incarcerated in State prison and/or illegally over incarcerated period.

Respondent points out that Parole (Federal) ~~Board~~ was abolished in for federal offenses in 1984. The Legislature also provided for a long Period of time (18 years I think) that the Board would act; and that is not the point in this case. The State prosecutor told me that either State or Federal Authorities would conduct the Multi jur-isdictional Prisoner Hearing on 5-9-1990, and Title 15 § Regulations 2370 State Reg's (Cal.) require this and the disposifive decision (which is in effect a "Term Fixing" hearing, Not a actually Parole consideration, Cal. "Parole" is a "Penal consequence", Not a gift of Leiniency!); and B.P.H. Commissioner Roos affirmed this Process is True, on 2-8-2008. (see Exhibits H)

Petitioner is/was entitled to the Hearing as a matter due process, and a Prescribed decision. Further, to claim or indicate that this is not true, indicates the Prosecutor lied to induce my guilty Plea's, or the B.P.H. Staff is currently lying, and/or the Regulations and or practice of the B.P.H. is unauthorized

Petitioner should not have to wait until 2010 and hope that he will get the dispo. he is entitled to in 2008, and hope that if the B.P.H. does not perform, Petitioner would be able to get relief

from the Courts, because B.P.H. desolved its appeal process That require Prisoners to seek redress in (this) over burdened Court. These Tactics employed by these Agencies create defenses for their unauthorized (by law), decisions. That is not Justice, that is exploitation. of ignorant, unsophisticated mass of prisoners.

Your Honor please, recognize that in a indeterminate Sentencing scheme their are Two(2) distinct obligations A.) Term Fixing B.) Parole consideration, both provided release, at different Times. Much is published about "Parole release", in most cases The Authority circumvents its Term determine/Fixing obligation (expressed in Legislation, codified in P.C.§ 1168(d) of 1917) under the guise of "Parole Consideration" based upon P.C.§ 3041(a).'s Published Code. They perpetuate this sham on U.S. citizens (prisoners) and the Courts by using it's rule Making Authority P.C.§ 5076.2, to Only Publish Regulations for that particular hearing, and define it's phases of Bureaucratese e.g. "Life Prisoner" seeking "Parole Consideration", to advance a "25 years to Life" is really "Life, with a minimum of 25 years" agenda. They have a Financial interest, and a political agenda (No Willie Horton in Cal.). The bureaucratese becomes adopted by Appellant prisoner's and Courts and the words provoke and inspire an inaccurate rationale, because the Courts relate or coralate "Parole consideration" of a "Life Prisoner" under a abuse of discretion standard, thus the Executive circumvents reality by exploiting Judicial Maxims/Rules/or Principals of law. They have successfully exploited legalese and shifted the burden of proof onto the prisoners despite the clear language in P.C.§ 3041(b).

This case is not about Me being Suitable for parole, or the Sham.

This is about a Federal Prosecutor and State Prosecutor MAkeing promises and inducements to inspire My Guilty Plea's and waiveing U.S. constitutional rights. [see exhibit K, incorporated herein]

The issue of fact is did they make the promises and inducements? Petitioner says yes; and it is supported by the record, and operation of law.

Would Petitioner have pleaded guilty without the promises and inducements? No. and the record supports my claim (see Proceedings dated 5-8-1990 in this Southern District Court)

Are you fulfilling those promises and inducements. (You is the State and Federal Governments)? No. and that is supported by the record.

This Court is no stranger to the applicable law for broken plea agreements and/or contracts.

The next issue is did the State provide Petitioner with a release date on 2-26-1991? Yes. And supported by documents.

Did Petitioner detrimentally rely upon the false representation of the State Agency? Yes. abandoned appeals and Habeas.

To his prejudice? yes. How? Petitioner in affect abandoned his direct appeal and Habeas Corpus claims on grounds he knew then e.g. I.A.C., Governmental and or Judicial Misconduct (Judge involved in Plea), fair trial (Judge Coerced guilty plea by threat to deny any chance of defense, Order trial without discovery etc.), Surprise State sentence (Petitioner Bargained for a sentence between 25-28 years, Not indeterminate sentence;

Petitioner's guilty plea was induced by false premises unlawful and misrepresentation; or duress, fraud, "essential elements of consent," and/or involentary on those prejudicial misrepresentations. Petitioner would have pointed out that his plea withdrawl motion was denied on a false premise i.e. a misrepreshtation that Petitioner received a benefit that was not true, and Petitioner was actually Innocent and/or the elements and information could not support a conviction on first degree murder. To name a few.

Petitioner did not know of these Issues then, they were not predictable due to the nature of the execution of a Sentence and the State created "Release Date", "for work" scheme purpetrated upon me. (see Exhibit A)

Plus, the review would have been under pre - A.E.D.P.A. standards.

Equitable estoppel and/or fundamental fairness should be used to force/Bind the State to it's "work for release" Contract created by her Agencies abuseing its inherent influence as Authority.

Where is the fairness in this?
Why are my conditions i.e. "express promises" unenforceable?
Where is my contractual interpretation? e.g. "25 to Life" may Have been an indeterminate term to you all, but not me.; parole etc

Please forgive my assertions, Petitioner had vested or settled expectations in his release date, and when that was taken he was throwen into a paralell universe or alternate reality. to describe all the actions he took to ascertain the current understanding (reality) was/is very difficult to explain on paper. (due to mis-direction)

Respondents in both this action (§2255) and (§2254) action, and their Agencies attempt to skew reality by trying to place events into a Vacuum for a distorted annalisys, to escape the truth or fact that the True "intent" underlying agreement / compromise of the contracting parties was - is, in fact, 20 years in custody.

An annalysis of the records in both State and federal courts clearly shows Petitioner expressly believed he would be released at the age of 40 and/or 20 years.

Respondents own exhibits indicate that "25 years to life actually means" [he] will serve 20-21 years. "that's The actual time [he] will serve." [plus see State Court Transcripts dated 1-10-91]

What your honor does not see, is the Fact that prior to the Fed. Sentence hearing, Petitioner Told Mr. Pokorny that he would in fact ~~rescind~~ withdraw his Federal Plea on the ground he was mislead by the Fed. Judge, A.U.S.A., and Fed. Counsel about the false claim he Faced L.W.O.P. (and was advised he would get L.W.O.P.) if found guilty to count (1) one, when the true penalty was 0 to 20 years, unless the Court was appraised of the surprise sentence, etc. and Petitioner wanted the information on the record of what 25 years to life was meant or comprehended by Petitioner. ~~and~~ once that was expressed on the record and affirmed or ~~seem~~ Seemedly endorsed as true (20-21 years in custody) by Judge, Counsel, Both prosecutions. Only then did Petitioner feel truely comfortable into believeing with Certainty that the (New twist) effectuating charges were true

Thus, the Deal would be honored and Petitioner would not need
to try to withdraw the federal plea. (i.e. Situation (sentence) cured.)

These cases were intertwined and yet seperate and a "package deal" and
Seemingly seperate. In Petitioner's Mind he could not comprehend the
intracacies between State and Federal relationships and him or the Cases
because his Attorney's told him he would yet consequtive time should
he prevail in One Court (Fed.) and not the other, in the context of plea
withdrawl. When in fact that was not true, in this case.

Petitioner should have ignored counsel, Moved in Fed. Court for with-
drawl (based on misadvisement) then moved in State Court under broken
deal, then renegotiated and/or trial under a Truer comprehension
of consequences. Because the D.D.A. used the Fed. L.W.O.P. To get
a first degree, and claim the "Not one day on the 1st degree Murder"
because [I'd] serve 20 years for the Fed. case.

Their were so many false premises and inducements in abstract
annalysis due to the L.W.O.P. misrepresNtation, as well as emotional Toll
and bargaining Power. Notwithstanding today's unforseen issues.

In other words Petitioner does not accept 20 year compramise
agreement without the pressure of L.W.O.P., or the effectuating charges
leading to this fiasco, would not have been accepted (maybe not even
offered).

Your honor, Please, help me fulfill the intent of the contracting
Parties, Promote Justice, enforce my bargain, don't let the State
Circumvent it's concomitant obligations and frustrate the Very
Purpose of pleading guilty i.e. freedom after 20 years, for the States
Vacuum of "Life imprisonment" i.e. that was not the Deal/"bagrain"!
(Nor is it legal without the Statutory underpinnings (Former P.C. § 671).)

Petitioner's conditions for pleading guilty, and agreed to by the California's representative/Agent [redacted] are and were, inter alia,

1. Anytime Petitioner received in State court would be concurrent to anytime Petitioner would receive in federal Court.

2. Anytime Petitioner received from State Court would be Served in Federal custody.

These are express promises in our agreement, and the State refuses to honor them by action and/or inaction. [redacted]

3. They dishonor the 60 month parole period and impose a life time of Supervised release called parole, resulting in a lifetime of conditional freedom or restraint.

4. They dishonor the concomitant Inducements obligations, represented to induce the guilty plea's and Waive My U.S. Constitutional guareanteed Rights (relating to trial etc.).

e.g. Multijurisdiction Prisoner parole hearing and dispositive decision flowing therefrom; good time/work time confinement term reduceing credit, etc. (others Not mentioned for sake of brevity)

## Conclusion

Petitioner is entitled to some relief. Respondent relies on factually distguishable cases, that are not on point, and not controling law in this controversy. [redacted]

In Sumation, it seems to me, fundamentally unfair, to have court appointed counsel in both State and Federal cases, ~~both~~ prosecutors in both State and Federal cases, Telling Petitioner that he Would serve 19-21 years in Custody, in a package deal plea bargain with both Jurisdictions, and (Seemingly) ratified by both State and Federal Court Judges in open court, Only to be denied by the actions or inactions of the States Agencies, who were not Part of the negotiations, and/or limit their annalysis of Petitioner's situation (status and express promises) To one in which [he] is (and must have agreed to being by necessary implication), a "Life" Prisoner, and as such has no Vested expectation of freedom.

From Petitioner's View that is manipulation and constitues fraud, because Petitioner relied upon his perfectly clear understanding of the compramise/the True underlying agreement, and understanding that the first degree murder carried Virtually No liability and helped the State prosecutor and the Victims family and society as a whole; ~~Only to be frustrated~~ To his detriment because of the effectuating charges, ~~and~~ Subjecting Petitioner To a lifetime of imprisonment and/or life time of parole; dishonoring his conditions for pleading guilty, combined or in part, all frustrate Petitioner's Purpose for Pleading guilty.

Petitioner would not have pleaded guilty had it not been for the expectation of being free after expireation of the Federal Time. the record on 5-8-90 Proves this. (see Exhibit I)

# Prayer for relief

Petitioner respectfully prays this Court will provide Petitioner with any relief, in law or equity, that he may be entitled to.

If Petitioner is deficient ~~plea~~ in his pleadings please ask questions and allow him a chance to rectify or clarify. Petitioner rushed this, however a more detailed explanation of events and actions are submitted in the "~~package deal~~" Habeas Corpus 28 U.S.C. §2254, also pending in this Court in case # 08-civ-00167-DMS-NLS, for same and similar grounds here. I'd like to incorporate all the documents and stuff together in this case, to give the court a fuller story and since these deals were created together maybe they must be dealt with together, [I] don't know.

(FN 1) All exhibits contained herein are intended to be incorporated ~~into~~ by reference. And all penal code sections are for California. Sorry, Petitioner is a layman.

I, Martin Edward Walters, swear under penalty of perjury that the aforementioned, facts and information is true and correct, to the best of my knowlege.

Executed on 7-6-2008 A.D.

Martin Walters

MARTIN WALTERS
Petitioner in pro se

VERIFICATION
(C.C.P. §446; §2015.5; 28 U.S.C. §1746)

I, ~~Matt Braden~~ Martin Walters declare under the penalty of perjury that:

I am ~~not~~ the party in the attached matter, I have read the foregoing documents and know the contents thereof, and the same is true of my own personal knowledge, or upon information and belief therein that they are true. That if called to testify as to the contents hereof, I could do so competently as a sworn witness.

Executed this 6 day of July, 2008 at the California State Prison-Solano, in the City of Vacaville, County of Solano, State of California.

(Signature) Martin Walters
Declarant

**********************************************************************

DECLARATION OF SERVICE BY MAIL
(C.C.P.§1013(a); §2015.5; 28 U.S.C. §1746)

I, Matt Braden declare; That I am a resident of the California State Prison-Solano. in the State of California. I am over the age of (18) years of age, I am [X] am not [ ] a party to the above entitled action. My address is P.O. Box 4000; cell (206 up), Vacaville, California 95696-4000.

I served the attached described documentation entitled:

1. reply to Governments response and opposition to Motion pursuant to 28 U.S.C. §2255; and 2. declaration ~~and~~ in support thereof; 3. points and authorities in support of Habeas corpus petition.

on the person(s)/entities/parties specified below by placing a true and duplicated copy(s) of the described documentation into a First Class Postage Paid envelope and submitted it to custody officials for inspection, sealing, and depositing in the United State Mail, consistent with the "Mailbox Rule": Houston v. Lack, 487 U.S. 266,108 S.Ct. 2379, 101 L.Ed.2d. 245 (1988) at the California State Prison-Solano, in Vacaville, California 95696-4000, addressed as follows:

1. United States District Court, Southern District Court of California office of the Clerk, 880 Front street, suite 4290, San Diego, CA. 92101-8900.
2. U.S. Department of Justice, United States Attorney, Southern District of California, 880 Front st. Room 6293, San Diego, CA. 92101-8893

There is First Class mail delivery service by the United States Postal Service at the person(s)/entities/parties addresses and/or regular communications by Postal Service delivery at the addresses above. I declare under the penalty of perjury that the foregoing is true and correct according to my knowledge and beliefs, and that I executed the service on:

This 15 day of July, 2008

(Signature) Matt Braden
Declarant

# EXHIBIT COVER PAGE:

Exhibit: A

Description of this exhibit: California Calculated [My] Term at 25 years; Petitioner relied (detrimentally) upon this "Release Date", "days to serve"; and abandoned Direct appeal and timely Habeas fileing on known issues in 1991.; and worked and behaived well for the Release Date.

Number of pages of this exhibit: 1 pages.

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

ORIGINAL

COPY

TATE OF CALIFORNIA
REDIT/TERM COMPUTATION

. MAXIMUM DSL DATE

1. 2-21-91 (RECEIVED DATE) + 25 yrs. (TOTAL TERM) = 2-21-2016 (BASE DATE)

2. Less total preconfinement credit 1156 + 41 - 1197

3. MAXIMUM DSL RELEASE DATE = 11-11-2012

. GOOD TIME CREDIT

1. Received date or 7-1-77 whichever is later, less one day - ~~2-20-91~~ 2-21-91

2. Days in custody of department = 7935

3. Postsentence + 41

4. Days in custody on which GTC may be earned = 7976 7

5. ÷ 3 = GOOD TIME CREDIT = ~~2658~~ 2659

. MINIMUM DSL RELEASE DATE (A-3 minus B-5) = 8-2-2005

1/3 MEPD

OMMENTS:

Case #1 2/1994

Sub. = 7/2004

MEPD: 8-1-2005

Computed by: Q. Miller (Case Records) — 2/26/91 (date)

Audited by: ________ (Case Records) — ________ (date)

| NAME | NUMBER | INSTITUTION | DATE |
|---|---|---|---|
| Walters, Martin | E86183 | RJDRC | 2/26/91 |

CD . 6?9? (Rev 12/81)

# EXHIBIT COVER PAGE:

Exhibit: B

Description of this exhibit: State guilty plea; provides evidence of express promises (in dishonor); No "indeterminate" sentence; 5 year parole period (not life); and No requirement of "parole suitability" for Term, credits, or release.

Number of pages of this exhibit: 2 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ____________________________________

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

FILED KENNETH E. MARTONE Clerk of the Superior Court 0253 MAY -9 1990 By: A. PECK, Deputy

People vs. Martin Walters CR No. 103749

DA No. B 46516

## PLEA OF GUILTY/NO CONTEST - FELONY

The defendant in the above-entitled action, in support of his/her motion to change his/her plea(s) in open Court, personally and by his/her attorney, does declare as follows:

1. Of those charges now filed against me in this case, I plead guilty (Guilty) No Contest to the following violations: (List Crimes and Code Sections) [MW]

P.C. §187 Murder, 1st degree (Count 8) Amended Information

1a. **(If Applicable)** I also admit the following enhancement(s)/prior conviction(s) with which I am charged: (List Court, Docket No. and Date of any Prior Conviction) [crossed out]

N/A

2. I have not been induced to enter the above plea by any promise or representation of any kind, except: (Briefly state any agreement with the District Attorney.) [MW]

Dismiss all remaining counts + allegations; D.A. has no opposition to serving sentence in federal custody; concurrent to federal sentence in 89-0769 G; DA agrees to file no charges against either Martha Walters or Carmen Fonseca (Martin Walters's mother and aunt); Dismiss the companion drug case

## RIGHT TO A LAYWER

3. I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer, or the Court will appoint a lawyer for me if I cannot afford one. [MW]

## CONSTITUTIONAL RIGHTS

I understand that I also have the following constitutional rights, which I now give up to plead either Guilty/No Contest:

| | I understand this right. | I give up this right. |
|---|---|---|
| 4. The right to be tried by a jury, in a speedy, public trial. | MW | MW |
| 5. The right to confront and to cross-examine all the witnesses against me. | MW | MW |
| 6. The right to remain silent (unless I choose to testify on my own behalf). | MW | MW |
| 7. The right to present evidence and to have witnesses subpoenaed to testify in my behalf at no cost to me. | MW | MW |

## CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

8a. I understand that I may receive this maximum penalty as a result of my plea: 25 yrs to life years in State Prison, $ 10,000 fine and ~~48~~ 60 months parole, with up to one year return to prison for every parole violation. If I should receive probation (for up to five years), I understand that I may be given up to a year in local custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any terms or conditions of probation I can be sent to State Prison for the maximum term as stated above. [MW]

8b. My attorney has explained to me that other possible consequences of this plea may be: [MW]

(Circle applicable consequences.)

(a) Consecutive sentences.
(b) Loss of driving privileges.
(c) Commitment to the Youth Authority.
(d) Registration as a sex offender.
(e) Registration as an arsonist.
(f) Ineligibility for probation/presumptive prison. (circled)
(g) Registration as a narcotics offender.
(h) Restitution and/or a restitution fine. ($100-$10,000) (circled)
(i) Serious felony prior/prison prior. (circled)
(j) Priorable (circled)

9. I understand that if I am not a citizen of the United States a plea of Guilty or No Contest could result in deporation, exclusion from admission to this country, and/or denial of naturalization. N/A [crossed out]

10. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases. N/A [crossed out]

11. I now plead *guilty* (Guilty / No Contest) to the charges(s) described in #1 above and admit that on the date charged I: (Describe facts as to each charge in #1.) [MW]

~~[illegible]~~
*lawfully murdered Christine Reyes, alone, my brother Vincent did not aid or assist in any way with her death* 0254

11a. **(If Applicable)** I understand that as to any and all prior convictions(s)/enhancements(s) alleged against me in this case, I have all the constitutional rights listed in #3-#7 above. As to any prior convictions alleged, I understand that if I request a jury trial on the current case, the jury would not learn of or decide, the prior conviction(s) unless and until the jury found me guilty on the current charges. *N/A*

11b. **(If Applicable)** I herby admit the prior conviction(s)/enhancement(s) listed in this form, and give up my constitutional rights, including the right to separate jury determination on the issue of the prior conviction(s). *N/A*

12. I do understand that the matter of probation and sentence is to be determined solely by the Court. [MW]

13. **(Harvey Waiver)** The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence. [MW]

14. I am entering my plea freely and voluntarily, without threat or fear to me or anyone closely related to me. [MW]

15a. I am pleading Guilty because in truth and in fact I AM GUILTY [MW]

15b. I understand that a plea of No Contest is the same as a plea of Guilty in this criminal case and for all purposes has the same consequences as a plea of Guilty. *N/A*

16. I am now sober. I have not consumed any drug, alcohol or narcotic within the past 24 hours to the extent that my judgment is impaired. [MW]

17. I declare under penalty of perjury, under the laws of the State of California, that I have read, understood, and initialed each item above, and everything on the form is true and correct. [MW]

Dated: *5-9-90* Defendant's Signature *Martin Walters*

Defendant's Address ______________________
Street City State ZIP

Defendant's Telephone No. (   ) - __________

**ATTORNEY'S STATEMENT**

The undersigned states that (s)he is the attorney for defendant in the above-entitled action; that (s)he personally read and explained the contents of the above declaration to the defendant and each item thereof; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty/No Contest; that (s)he personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge explanation of the contents of each item; that (s)he observed defendant date and sign said declaration; that (s)he concurs in defendant's above plea and in defendant's waiver of constitutional rights.

Dated: *5-9-90* *[signature]*
Attorney for Defendant

**INTERPRETER'S STATEMENT (If Applicable)**

I, the interpreter in this proceeding, having been duly sworn, truly translated this form and all the questions therein to the defendant in the ______________ language. The defendant indicated that (s)he understood the contents of the form and (s)he then initialed and signed the form.

Dated: ______________ ______________
Court Interpreter

**PROSECUTOR'S STATEMENT**

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's plea of Guilty/No Contest as set forth above.

Dated: *5.9.90* *[signature]*
Deputy District Attorney

**COURT'S FINDINGS AND ORDER**

The Court, having questioned the defendant concerning the defendant's constitutional rights, finds that defendant has voluntarily and intelligently waived his/her constitutional rights. The Court finds that defendant's pleas and admissions are freely and voluntarily made, that defendant understands the nature of the charges and the consequences of the plea, and that there is a factual basis for the plea. The Court accepts defendant's plea, and the defendant is hereby convicted on his plea.

Dated: *5/9/90* *[signature]*
Judge of the Superior Court

# EXHIBIT COVER PAGE:

Exhibit: C

Description of this exhibit: Fed. plea (of Guilty) transcripts, evidence of "served in Fed. custody", "Fed. Inmate", Life (not true) misrepresentation, etc.

Number of pages of this exhibit: 22 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ______________________________

SAN DIEGO, CALIFORNIA - WEDNESDAY, MAY 9, 1990 - 4:30 P.M

:: :: ::

THE CLERK: NO. 2-A ON CALENDAR, CASE NO. 88-07 UNITED STATES OF AMERICA VS. MARTIN EDWARD WALTERS FOR DISPOSITION.

MR. POKORNY: GOOD AFTERNOON, YOUR HONOR. JAME POKORNY, APPOINTED COUNSEL FOR MARTIN EDWARD WALTERS, WHO IS PRESENT IN CUSTODY.

MR. FERRARO: TOM FERRARO FOR THE UNITED STATES

I WOULD ALSO LIKE THE RECORD TO REFLECT THAT MR. AINBINDER FROM THE PUBLIC DEFENDER'S OFFICE IS PRESEN AS WELL. MR. AINBINDER REPRESENTS THE DEFENDANT IN A HOM CIDE CASE IN CALIFORNIA SUPERIOR COURT.

THE COURT SHOULD BE INFORMED THAT EARLIER THIS AFTERNOON ABOUT FOUR O'CLOCK MR. WALTERS ENTERED A PLEA OF GUILTY IN THE CRIMINAL CASE IN THE SUPERIOR COURT.

MR. AINBINDER: IF YOUR HONOR WISHES, I'D BE GLAD TO ANSWER ANY QUESTIONS IN REGARD TO THE PLEA AGREE- MENT THAT WAS ENTERED INTO ON THE OTHER CASE.

THE COURT: AS I UNDERSTAND IN THE PROPOSED PLE AGREEMENT -- AND I HAVEN'T HAD A CHANCE TO READ THIS PLEA AGREEMENT -- THE STATE ACTION AND THIS ACTION, THE PLEA AGREEMENTS IN BOTH WERE DEPENDENT UPON EACH OTHER?

MR. AINBINDER: YES, YOUR HONOR.

THE COURT: OKAY. MR. POKORNY, HAVE YOU HAD

DO YOU ACKNOWLEDGE YOU'VE BEEN CHARGED IN THIS INDICTMENT WITH THESE COUNTS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: PARAGRAPH 9 READS THAT YOU HAVE READ THE CHARGES AGAINST YOU CONTAINED IN THE INDICTMENT, AND THOSE CHARGES HAVE BEEN FULLY EXPLAINED TO YOU BY YOUR ATTORNEY, MR. POKORNY; IS THAT CORRECT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DO YOU HAVE ANY QUESTIONS OF MR. POKORNY AT THIS TIME ABOUT ANYTHING THAT YOU'RE CHARGED WITH?

THE DEFENDANT M. WALTERS: NO.

THE COURT: IT'S MY UNDERSTANDING YOU'RE GOING TO PLEAD GUILTY TO THOSE THREE COUNTS, 1, 10 AND 13; CORRECT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, WITH REFERENCE TO COUNT NO. 1. YOU UNDERSTAND THAT THERE IS A MINIMUM MANDATORY UP TO 10 YEARS AND POSSIBLE LIFE IMPRISONMENT; DO YOU UNDERSTAND THAT? THE MAXIMUM COULD BE LIFE?

THE DEFENDANT M. WALTERS: YES.

THE COURT: AND YOU COULD BE ORDERED TO PAY A FINE IN ADDITION TO THE TIME SERVED OF $4 MILLION; DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: AND THAT THERE'S A FIVE YEAR SUPER-

VISED RELEASE ADDED TO THAT; DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, COUNT NO. 10 CARRIES WITH IT A MAXIMUM OF 10 YEARS IN PRISON AND A FINE OF $250,000, EITHER OR BOTH; DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: ALSO, THERE'S A FIVE YEAR SUPERVISED RELEASE; DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: COUNT 13 DOES NOT CARRY SUPERVISED RELEASE WITH IT?

MR. FERRARO: NO, SIR, JUST CONSECUTIVE FIVE YEAR TERM.

THE COURT: COUNT 13 CARRIES WITH IT FIVE YEAR IMPROVEMENT CONSECUTIVE TO ANY OTHER SENTENCE THAT YOU MIGHT RECEIVE ON THIS; DO YOU UDNERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, SUPERVISED RELEASE MEANS THIS. IF YOU'RE ORDERED TO SERVE TIME IN CUSTODY, THEN AT THE TIME YOU'RE RELEASED FROM CUSTODY YOU COULD BE PLACED ON SOMETHING SIMILAR TO PROBATION FOR FIVE YEARS. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DURING THAT PERIOD OF FIVE YEAR TERM, THERE WILL BE CERTAIN CONDITIONS THAT ARE OPERATIVE, AND

IF YOU FAIL TO COMPLY WITH THOSE TERMS AND CONDITIONS OF SUPERVISED RELEASE, YOU COULD BE BROUGHT BACK TO COURT IN ORDER TO SERVE AN ADDITIONAL FIVE YEARS. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DO YOU HAVE ANY QUESTIONS ABOUT THE MAXIMUM PUNISHMENT YOU COULD RECEIVE IN THESE CASES?

MR. POKORNY: YOUR HONOR, COULD WE JUST TAKE A SECOND?

THE COURT: YES.

MR. POKORNY: OKAY.

THE COURT: DO YOU UNDERSTAND THAT IN THE FEDERAL SYSTEM, LIFE IMPRISONMENT IS THERE'S NO PAROLE, IT'S FOR LIFE?

THE DEFENDANT M. WALTERS: YES.

THE COURT: SO, COUNT 1 CARRIES WITH IT A MAXIMUM LIFE IMPRISONMENT. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES, I DO.

THE COURT: DO YOU HAVE ANY QUESTIONS ABOUT THE MAXIMUM PUNISHMENT YOU COULD RECEIVE?

THE DEFENDANT M. WALTERS: NO.

THE COURT: NOW, THE GOVERNMENT HAS AGREED, IN RETURN FOR YOUR PLEA, THAT YOU WILL FULLY APPRISE THE PROBATION OFFICE AND THE DISTRICT COURT OF THE NATURE, SCOPE AND EXTENT OF YOUR CONDUCT DURING THE CHARGES AGAINST YOU

AND RELATED MATTERS, INCLUDING ALL MATTERS OF AGGRAVATION AND LITIGATION RELEVANT TO THE ISSUE OF SENTENCING.

DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: NO, I DON'T UNDERSTAND THAT.

THE COURT: OKAY. THAT MERELY SAYS THAT THE GOVERNMENT WILL TELL ME, "I REPRESENT THE UNITED STATES DISTRICT COURT," AND THE PROBATION OFFICER ABOUT ALL OF YOUR CONDUCT AND EVERYTHING THAT YOU'VE DONE UP UNTIL NOW.

THE DEFENDANT M. WALTERS: YES.

THE COURT: THAT WILL BE THE GOOD THINGS AND THE BAD THINGS. WE CALL IT AGGRAVATION AND LITIGATION. LITIGATION MEANS GOOD THINGS. AGGRAVATION MEANS BAD THINGS

YOU UNDERSTAND THEY'LL TELL THE PROBATION OFFICER AND THE COURT ALL THOSE THINGS?

THE DEFENDANT M. WALTERS: RIGHT.

THE COURT: IF THEY'RE PERTINENT FOR PURPOSES OF SENTENCING IN THIS CASE. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: PERTINENT?

THE COURT: RELEVANT.

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, PARAGRAPH 5 READS THIS WAY. IT'S UNDERSTOOD BY YOU AND THE UNITED STATES GOVERNMENT, ALONG WITH YOUR ATTORNEY, THAT THE SENTENCING JUDGE -- THAT'S ME -- IS NEITHER A PARTY NOR AM I BOUND BY THIS

AGREEMENT, AND I'M FREE TO IMPOSE THE MAXIMUM PUNISHMENT AS SET FORTH IN PARAGRAPH 3 ABOVE, WHICH WE TALKED ABOUT, LIFE IMPRISONMENT. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: YOU MISSED ONE. GO FROM 5 TO 7.

PARAGRAPH 7 -- THERE'S NO 6 HERE -- LINE 15, SAYS AFTER SENTENCING HAS BEEN IMPOSED ON THE COUNT TO WHICH YOU PLEAD GUILTY, AS AGREED HERE, THE GOVERNMENT WILL MOVE TO DISMISS THE REMAINING COUNTS. THAT'S A PROMIS ON THEIR PART. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, HERE'S WHAT THE GOVERNMENT AGREE TO AS FAR AS SENTENCING IS CONCERNED.

FIRST, THAT THE BASE LEVEL WILL BE 36.

SECOND, THERE WILL BE A TWO POINT UPWARD ADJUSTMENT FOR ROLE IN THE OFFENSE AS A MANAGER AND SUPERVISOR OF FIVE OR MORE PARTICIPANTS.

THREE, A TWO POINT REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY.

DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: THAT WOULD MAKE IT 36. THE BASE LEVEL, THEN, WILL BE 36. DOES EVERYONE AGREE WITH THAT?

MR. POKORNY: YES, SIR.

MR. FERRARO: YES, YOUR HONOR.

THE COURT: THE GOVERNMENT AGREES THAT ANY SENTENCE IMPOSED IN COUNT 10 WILL BE CONCURRENT WITH ANY OTHER SENTENCE IMPOSED IN THIS CASE. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: SO IT WON'T BE ADDED ON TO IT. IT WILL BE CONCURRENT WITH.

THE DEFENDANT M. WALTERS: YES.

THE COURT: HAVE THERE BEEN ANY OTHER PROMISES MADE TO YOU IN RETURN FOR YOUR PLEA OF GUILTY, OTHER THAN WHAT I HAVE JUST STATED AND GONE OVER WITH YOU?

THE DEFENDANT M. WALTERS: NO.

THE COURT: HAS ANYONE COERCED YOU, OR FORCED YOU OR THREATENED YOU IN ANY WAY, OR COERCED, OR FORCED OR THREATENED ANY MEMBERS OF YOUR FAMILY OR LOVED ONES IN ORDER TO GET YOU TO TAKE THIS DISPOSITION?

THE DEFENDANT M. WALTERS: NO.

THE COURT: DO YOU ENTER A PLEA OF GUILTY TO THESE THREE COUNTS BECAUSE YOU ARE GUILTY?

THE DEFENDANT M. WALTERS: YES.

THE COURT: MR. POKORNY, IS THERE ANYTHING YOU WISH TO ADD TO THE PLEA BARGAIN OR TO THE POSSIBLE MAXIMUM PUNISHMENT?

MR. POKORNY: NO, YOUR HONOR.

THE COURT: DOES THE GOVERNMENT HAVE ANYTHING

TO ADD?

MR. FERRARO: NO, SIR.

MR. POKORNY: YOUR HONOR, THE COURT IS AWARE, BECAUSE OF MR. AINBINDER'S PRESENCE, THAT THERE WAS A PLEA IN THE STATE COURT MATTER. JUST SO IT'S BEEN STATED ON THE RECORD, BECAUSE I DIDN'T HEAR IT. IT WAS AGREED, I BELIEVE, BY ALL PARTIES THAT ANY TIME MR. WALTERS DOES WILL BE IN FEDERAL CUSTODY.

THE COURT: IS THAT AGREEABLE WITH THE GOVERNMENT?

MR. FERRARO: YOUR HONOR, THAT'S NOT NECESSARILY PART OF THE AGREEMENT, BUT EXPECTATION OF THE PARTIES THAT IT WILL BE IN FEDERAL CUSTODY.

MY COMMUNICATIONS WITH THE BUREAU OF PRISONS THUS FAR, MR. STEVENS, THAT SINCE THE DEFENDANT IS A FEDERAL INMATE, HE IS GOING TO REMAIN A FEDERAL INMATE AND WILL SERVE HIS TIME IN FEDERAL CUSTODY.

WE HAVE NO OBJECTION TO HIS REMAINING IN FEDERAL CUSTODY, AND THAT'S BEEN THE POSITION OF THE DISTRICT ATTORNEY, AND IT REMAINS THE POSITION OF THE UNITED STATES.

THE COURT: YOU WOULD BE MAKING THAT REQUEST?

MR. POKORNY: THAT'S RIGHT, YOUR HONOR.

THE COURT: MR. AINBINDER, WILL YOU BE MAKING THAT REQUEST IN STATE COURT?

MR. AINBINDER: YES, YOUR HONOR. THE STATE AGREEMENT WAS BOTH WRITTEN AND STATED ON THE RECORD THAT THE

DISTRICT ATTORNEY WILL NOT OPPOSE MR. WALTERS REMAINING AS A FEDERAL INMATE AND SERVING HIS TIME IN A FEDERAL INSTITUTION. THAT'S BEEN CONSENTING TO AND ENTERED INTO BY JUDGE RODRIGUEZ IN SUPERIOR 9 THIS AFTERNOON.

THE COURT: OKAY. THEN I'LL SENTENCE YOU UNDER THE FEDERAL LAW.

ANY OTHER PROMISES OR ANYTHING THAT SHOULD COME BEFORE US TODAY?

MR. POKORNY: I DON'T BELIEVE SO, YOUR HONOR.

THE COURT: ARE YOU SATISFIED, SON?

THE DEFENDANT M. WALTERS: YES.

THE COURT: ALL RIGHT. NOW I'M GOING TO TALK TO YOU ABOUT YOUR CONSTITUTIONAL RIGHTS. WHEN I'M DONE I'LL ASK IF YOU UNDERSTAND THEM, AND IF YOU WAIVE THEM. AS I GO THROUGH THEM I'LL ASK IF YOU UNDERSTAND THEM. IF YOU DON'T UNDERSTAND THEM, PLEASE SAY SO.

YOU UNDERSTAND YOU'RE ENTITLED TO HAVE A SPEEDY AND PUBLIC TRIAL AND TRIAL BY JURY WITH REFERENCE TO EVERYTHING YOU'RE CHARGED WITH?

THE DEFENDANT M. WALTERS: YES.

THE COURT: YOU UNDERSTAND YOU'RE ENTITLED TO HAVE THE PROSECUTOR PROVE THE CASE AGAINST YOU BEYOND A REASONABLE DOUBT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: IN ORDER TO DO THAT IT WOULD BE NECES-

SARY THAT THE PROSECUTOR CALL WITNESSES AND THAT THE WITNESSES TESTIFY IN YOUR PRESENCE AND THE PRESENCE OF YOUR LAWYER, AND AFTER THEY HAVE TESTIFIED, THEN YOUR LAWYER CAN ASK THEM QUESTIONS. WE CALL IT CROSS-EXAMINATION. DO YOU UNDERSTAND THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: YOU UNDERSTAND YOU ALSO HAVE THE RIGHT TO HAVE SUBPOENAED IN YOUR OWN BEHALF, THAT IS, A COURT ORDER ISSUED TO BRING RECORDS AND WITNESSES AND DOCUMENTS, EVIDENCE TO COURT TO HELP YOU IN DEFENDING YOURSELF AT NO COST TO YOU WHATSOEVER?

THE DEFENDANT M. WALTERS: YES.

THE COURT: YOU ALSO HAVE THE RIGHT TO REMAIN SILENT. YOU DON'T HAVE TO SAY ANYTHING THAT MIGHT BE USED AGAINST YOU. DO YOU UNDERSTAND YOU'RE ENTITLED TO DO THAT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: WHEN A PERSON ENTERS A PLEA OF GUILTY, THE COURT, WHEN THE PLEA IS ENTERED, AND THAT'S ME AT THIS TIME, HAS THE DUTY AND RESPONSIBILITY TO MAKE A DECISION AS TO WHETHER OR NOT YOU ARE IN FACT GUILTY OF WHAT YOU ARE PLEADING GUILTY TO. THE WAY THAT I DO THAT IS ASK YOU TO TALK TO ME AND TELL ME ABOUT THE UNDERLYING FACTS TO THE COUNTS YOU'RE PLEADING GUILTY TO.

MY QUESTION TO YOU AT THIS TIME, WILL YOU TALK TO ME ABOUT THOSE FACTS AND TELL ME WHAT HAPPENED IN YOUR

OWN WORDS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, YOU UNDERSTAND IF YOU DO THAT, YOU WOULD BE WAIVING OR GIVING UP YOUR RIGHT TO REMAIN SILENT. IS THAT THE WAY YOU UNDERSTAND IT?

THE DEFENDANT M. WALTERS: YES, IT IS.

THE COURT: NOW, THOSE ARE YOUR CONSTITUTIONAL RIGHTS.

DO YOU HAVE ANY QUESTIONS ABOUT ANYTHING WE TALKED ABOUT WITH REFERENCE TO YOUR CONSTITUTIONAL RIGHTS?

THE DEFENDANT M. WALTERS: NO.

THE COURT: DO YOU UNDERSTAND THEM ALL?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DO YOU WAIVE THEM AND GIVE THEM UP AT THIS TIME?

THE DEFENDANT M. WALTERS: YES, I DO.

THE COURT: LET'S GO, NOW, TO -- LOOKING FOR THE BASIS FOR THE PLEA.

IN COUNT 1, CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND POSSESS METHAMPHETAMINE WITH INTENT TO DISTRIBUTE.

DO WE HAVE AN OVERT ACT THERE THAT YOU'RE LOOKING TOWARD?

MR. POKORNY: YOUR HONOR, COULD WE STAND BY FOR JUST 30 SECONDS?

THE COURT: YES.

4

MR. POKORNY: THANK YOU, YOUR HONOR. WITH RESPECT TO AN OVERT ACT THAT SUPPORTS THE -- IF I COULD DIRECT THE COURT'S ATTENTION TO PAGE 5, PARAGRAPH 19, ON OR ABOUT SEPTEMBER 19TH.

MR. WALTERS WOULD CONCEDE THE ALLEGATIONS SET FORTH IN THAT PARAGRAPH.

THE COURT: MR. WALTERS, COUNT 1 READS --

BEGINNING ON A DATE UNKNOWN AND CONTINUING UP TO AND INCLUDING ON OR ABOUT OCTOBER 31, 1988, THAT YOU DID KNOWINGLY AND INTENTIONALLY CONSPIRE WITH OTHER PERSONS -- CONSPIRE MEANS TO HAVE AN AGREEMENT WITH OTHER PARTIES -- KNOWN AND UNKNOWN TO THE GRAND JURY TO MANUFACTURE AND POSSESS WITH INTENT TO DISTRIBUTE 800 POUNDS OR MORE OF METHAMPHETAMINE.

UP UNTIL THE DATE OF OCTOBER 31, 1988, DID YOU HAVE AN AGREEMENT WITH OTHER PARTIES TO MANUFACTURE METH-AMPHETAMINE?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DO YOU KNOW WHAT METHAMPHETAMINE IS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: WERE YOU GOING TO MANUFACTURE THAT, THAT IS, MAKE IT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: THAT IS, SOMEONE WAS GOING TO MAKE IT.

DID YOU PARTICIPATE IN THE MAKING?

THE DEFENDANT M. WALTERS: YES.

THE COURT: AND THE PURPOSE OF MAKING IT WAS TO DISTRIBUTE IT; IS THAT CORRECT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DID YOU MAKE MORE THAN 800 POUNDS IN THAT PERIOD OF TIME?

THE DEFENDANT M. WALTERS: NO.

MR. AINBINDER: I THINK THE INDICTMENT CHARGES IN EXCESS OF 100 GRAMS. MR. WALTERS WOULD ADMIT THAT HE DID PARTICIPATE IN MANUFACTURING MORE THAN --

THE COURT: MORE THAN 100 GRAMS?

MR. FERRARO: THE GOVERNMENT IS SATISFIED WITH THAT, YOUR HONOR.

THE COURT: DID YOU PARTICIPATE IN MAKING MORE THAN 100 GRAMS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, NAME JUST ONE PERSON THAT HAD SOMETHING ELSE TO DO WITH THIS, THAT YOU AGREE WITH.

THE DEFENDANT M. WALTERS: MICHAEL MOORE.

MR. POKORNY: MICHAEL MOORE IS SET FORTH AS A CO-DEFENDNAT IN THIS MATTER, YOUR HONOR.

THE COURT: ALL RIGHT. I NOW GO TO THE DATE OF SEPTEMBER 19TH, 1988.

IT ALLEGES THAT THE DEFENDANT MARTIN EDWARD

WALTERS AND VINCENT LEGREND WALTERS HAD NEGOTIATED WITH AN UNDERCOVER AGENT AND REPRESENTATIVE OF T.N.S.

WHAT'S T.N.S.?

MR. FERRARO: TRIP NECK SCIENTIFIC, YOUR HONOR.

THE COURT: FOR THE PURCHASE OF APPROXIMATELY $207,000 IN CHEMICALS.

ON SEPTEMBER 18TH, 1988, DID YOU GO TO A CERTAIN PLACE AND ENTER INTO NEGOTIATIONS TO BUY ABOUT $207,000 WORTH OF CHEMICALS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: AND WERE THOSE THE KIND OF CHEMICALS THAT COULD BE USED IN THE MANUFACTURE OF METHAMPHETAMINE?

THE DEFENDANT M. WALTERS: YES.

THE COURT: WAS THAT THE PURPOSE OF BUYING IT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DID YOU GO WITH VINCENT WALTERS?

IS THERE A PROBLEM THERE?

MR. POKORNY: YOUR HONOR, JUST FOR A SECOND.

THE COURT: WELL, ASK WHETHER HE WENT WITH ANOTHER PERSON.

MR. POKORNY: YES, YOUR HONOR, WE CONCEDE THAT.

THE COURT: DID YOU GO WITH ANOTHER PERSON?

THE DEFENDANT M. WALTERS: YES.

THE COURT: DID YOU TALK TO A PERSON THAT YOU DIDN'T KNOW WAS A FEDERAL AGENT AT THE TIME, BUT YOU THOUGHT

WAS NOT A FEDERAL AGENT; IS THAT WHO YOU NEGOTIATED WITH?

THE DEFENDANT M. WALTERS: YES.

THE COURT: CAN YOU TELL ME WHERE YOU WENT TO DO THIS. GIVE ME A GENERAL LOCATION, SUCH AS FIRST AND BROADWAY, FIFTH AND MARKET, OR SOMETHING LIKE THAT.

MR. POKORNY: YOUR HONOR, I CAN HELP WITH THAT, BECAUSE I DON'T THINK HE KNOWS THE ADDRESS. IT WAS ON MAGNATRON BOULEVARD UP IN THE KEARNY MESA AREA IN THE CITY OF SAN DIEGO.

THE COURT: IS THAT CORRECT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: IS THE GOVERNMENT SATISFIED?

MR. FERRARO: YES, SIR.

THE COURT: I'LL GO TO COUNT 10. COUNT 10 READS, AUGUST 23, 1988, ON OR ABOUT THAT DATE, THAT YOU, MR. WALTERS, ALONG WITH OTHER PERSONS DID KNOWINGLY POSSESS A FIREARM, TO WIT, AN EXPLOSIVE PIPEBOMB CONSISTING OF PIPE, PIPE NIPPLES, PIPE CAPS, SMOKELESS GUN POWDER, AND TIME FUSES, WHICH WERE NOT REGISTERED.

THE DEFENDANT M. WALTERS: YES.

THE COURT: DID YOU HAVE A PIPEBOMB AND THOSE ITEMS ON AUGUST 23, 1988?

THE DEFENDANT M. WALTERS: YES.

THE COURT: WAS THAT IN A HOUSE OR SOMETHING THAT OTHER PERSONS HAD ACCESS TO?

18

IT READS YOU DID ALONG WITH OTHER PERSONS POSSESS THOSE.

THE DEFENDANT M. WALTERS: YES.

THE COURT: WELL, THAT'S NOT NECESSARY FOR THIS COUNT, ANYWAY.

MR. POKORNY: YOUR HONOR, THIS IS JUST A STRAIGHT POSSESSION COUNT.

THE COURT: YES. YOU HAD SOME SMOKELESS GUN POWDER WITH YOU, AND A FUSE?

THE DEFENDANT M. WALTERS: YES.

THE COURT: WERE ANY OF THOSE ITEMS REGISTERED?

THE DEFENDANT M. WALTERS: NO.

THE COURT: CAN YOU TELL ME WHERE THEY WERE ON AUGUST 23, 1988; IN YOUR HOME, OR CAR, OR SOMETHING OF THAT NATURE?

MR. POKORNY: YOUR HONOR, I DON'T BELIEVE MR. WALTERS KNOWS THE ADDRESS OF THIS RESIDENCE. ASSUMING IT WAS A RESIDENCE IN SAN DIEGO -- IN CARLSBAD COURT. IT WAS LOCATED IN THE LIVING ROOM UNDER A SOFA COUCH IN THE LIVING ROOM.

THE COURT: WHERE WAS THE HOUSE?

MR. FERRARO: 1026 CARLSBAD COURT, SAN DIEGO, OR SANTEE, HOUSE THAT THE DEFENDANT HAD ACCESS AND CONTROL OVER.

THE COURT: IS THAT CORRECT, MR. WALTERS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW WE'LL GO TO COUNT 13. THIS CHARGES CARRYING A FIREARM.

MR. FERRARO: YOUR HONOR, IF I CAN HELP THE COURT OUT ON THAT. THIS COUNT IS A LITTLE COMPLICATED. I'M NOT SURE OF THE DATE ALLEGED.

THE COURT: SEPTEMBER 24TH.

MR. FERRARO: ALL RIGHT. ON SEPTEMBER 24TH --

THE COURT: AND SEPTEMBER 26TH.

MR. FERRARO: OKAY. THE CRUX OF THIS CHARGE IS ON THE DATES ALLEGED THE DEFENDANT, ALONG WITH JUAN LOPEZ, WERE LOOKING TO REOBTAIN APPROXIMATELY TWO POUNDS OF METHAMPHETAMINE WHICH HAD BEEN TAKEN. THEY CAME IN CONTACT WITH TWO PEOPLE BY THE NAME -- ONE BY THE NAME OF BARBARA AND ANOTHER BY THE NAME OF COOK. THEY BELIEVE THEY WERE SOMEHOW INVOLVED IN THE THEFT OF THE TWO POUNDS OF METHAMPHETAMINE.

THE COURT: LET ME STOP YOU THERE SO WE CAN DO IT PIECE-BY-PIECE.

SEPTEMBER 24, SEPTEMBER 26TH OF 1988, MR. WALTERS, WERE YOU, ALONG WITH MR. LOPEZ, LOOKING FOR TWO POUNDS OF METHAMPHETAMINE THAT YOU THOUGHT HAD BEEN STOLEN FROM YOU?

THE DEFENDANT M. WALTERS: YES.

THE COURT: AT THAT TIME DID YOU HAVE IN YOUR

'0

POSSESSION A GUN, FIREARM, .223 CALIBER ASSAULT RIFLE, A SHOTGUN AND A PISTOL?

THE DEFENDANT M. WALTERS: YES.

THE COURT: GO AHEAD NOW. NEXT STEP.

MR. FERRARO: AND BASICALLY IN AN ATTEMPT TO GET THAT BACK, THOSE WEAPONS WERE DISCHARGED.

THE COURT: WHO WERE THE PARTIES INVOLVED THAT HE WAS TRYING TO GET IT BACK FROM?

MR. POKORNY: YOUR HONOR, EXCUSE ME. AS FAR AS THE FACTOR ALLEGATIONS -- DISCHARGE IS NOT NECESSARY AT ALL. CARRYING OR --

MR. FERRARO: THAT'S RIGHT. AS LONG AS HE'S CARRYING IT IN AN ATTEMPT TO GET THE DRUGS BACK, I'M SATISFIED WITH THAT.

THE COURT: WELL, HE SAID THAT.

NOW, WERE THOSE DRUGS PART OF A DRUG TRAFFICKING PROCESS, THAT IS, WERE THEY SOLD WITHOUT BEING PAID FOR?

DID YOU SELL THEM AND WEREN'T PAID, IS THAT WHY YOU WERE TRYING TO GET THEM BACK?

THE DEFENDANT M. WALTERS: NO.

MR. POKORNY: YOUR HONOR, MR. WALTERS WOULD CONCEDE IT WAS PART OF THE TRANSACTION. THEY WERE TRYING TO RETRIEVE SOME DRUGS THAT HE THOUGHT HE HAD A LAWFUL RIGHT TO.

THE COURT: MR. WALTERS, IS THAT CORRECT?

THE DEFENDANT M. WALTERS: YES.

MR. FERRARO: UNLAWFUL --

THE COURT: HAD A RIGHT TO. LET'S NOT USE THE WORD LAWFUL. HAD A RIGHT TO.

MR. POKORNY: HAD A RIGHT TO.

THE COURT: NOW, USE THE TERM THEY, AND I BETTER COVER THIS POINT. THAT WAS DRUG TRAFFICKING, AND THAT WAS MAINLY CONSPIRACY TO MANUFACTURE AND POSSESS METHAMPHETAMINE WITH THE INTENT TO DISTRIBUTE. IS THAT THE NATURE OF THAT PARTICULAR TRAFFICKING THAT YOU WERE DOING?

MR. POKORNY: IT FORMS THE BASIS FOR COUNT 13, YES, YOUR HONOR, WE WOULD CONCEDE THAT.

THE COURT: MR. WALTERS?

THE DEFENDANT M. WALTERS: YES.

THE COURT: NOW, MR. WALTERS, CAN YOU TELL ME THE LOCATION OF YOU ON EITHER OF THESE DATES, WHEN YOU HAD THESE THREE WEAPONS IN YOUR POSSESSION, ALONG WITH MR. LOPEZ?

THE DEFENDANT M. WALTERS: CHULA VISTA.

THE COURT: OKAY. AT THAT TIME YOU WERE SEEKING TO RECOVER THIS METHAMPHETAMINE IN CHULA VISTA?

THE DEFENDANT M. WALTERS: YES.

THE COURT: ARE YOU SATISFIED?

MR. FERRARO: YES, SIR. THANK YOU.

THE COURT: OKAY. DOES ANYONE HAVE ANY OTHER

ITEM? I'M ABOUT TO MAKE THE FINDINGS.

MR. POKORNY: NO, YOUR HONOR.

MR. FERRARO: NO, YOUR HONOR.

THE COURT: MR. WALTERS, THE COURT FINDS YOU HAVE A CLEAR MIND AND CLEAR HEAD TODAY; THAT YOU UNDERSTAND THE ENGLISH LANGUAGE, YOU READ IT AND WRITE IT; THAT YOU UNDERSTAND THE RAMIFICATIONS AND CONSEQUENCES OF YOUR CHANGE OF PLEA TODAY. THAT YOU UNDERSTAND YOUR CONSTITUTIONAL RIGHTS, YOU'VE MADE AN INTELLIGENT WAIVER OF THOSE RIGHTS. THAT THERE'S A FACTUAL BASIS TO ACCEPT YOUR PLEA OF GUILTY. THE PLEA OF GUILTY WILL BE ACCEPTED AS TO THESE THREE COUNTS, 1, 10 AND 13, AND THE PLEAS TO THESE COUNTS ARE FREE AND VOLUNTARY.

THE CLERK: NOW THAT YOU'VE BEEN ADVISED OF YOUR RIGHTS, THE CHARGES AGAINST YOU AND THE POSSIBLE SENTENCE, HOW DO YOU NOW PLEAD TO COUNTS 1, 10 AND 13, ARE YOU GUILTY OR NOT GUILTY?

THE DEFENDANT M. WALTERS: GUILTY.

THE CLERK: AS TO EACH COUNT?

THE DEFENDANT M. WALTERS: YES.

THE COURT: OKAY. DATE OF SENTENCING, GENTLEMEN; DOES ANYONE HAVE ANY THOUGHTS?

MR. POKORNY: YOUR HONOR, WE DISCUSSED THIS WITH THE COURT'S CLERK. WOULD AUGUST 6TH BE CONVENIENT TO THE COURT?

THE COURT: NO, THE COURT WILL BE DARK. THE COURT WILL BE DARK FROM JULY 27TH.

MR. POKORNY: HOW ABOUT JULY 23RD, YOUR HONOR?

THE COURT: OKAY. JULY 23RD.

NOW, ON SENTENCING, DO YOU WANT TO BALANCE IT OUT SO THAT I SENTENCE HIM LAST?

MR. POKORNY: FIRST, YOUR HONOR.

THE COURT: FIRST. OKAY.

MR. AINBINDER: THAT WAY WE CAN -- (UNDISCERNIBLE) THE GUIDELINE ISSUE. THE AGREEMENT ENTERED INTO STATE COURT IS OCCURRING, AND IT'S EASIER TO AFFECT WITH YOUR HONOR SENTENCING FIRST.

THE COURT: ALL RIGHT. JULY 23RD AT NINE O'CLOCK FOR SENTENCING.

THE CLERK: MAY THE MOTION DATE AND TRIAL DATE BE VACATED?

THE COURT: THEY MAY BE VACATED.

* * *

# EXHIBIT COVER PAGE:

Exhibit: D

Description of this exhibits withdrawl of guilty process; evidence of the promises and my unrebutted expectations; surprise sentencing; "served in Fed. custody", etc.

Number of pages of this exhibit: 13 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ____________________

F I L E D
KENNETH E. MARTONE
Clerk of the Superior Court
0332
DEC - 4 1990
By: A. WOODS, Deputy

FRANCIS J. BARDSLEY
Public Defender
Law Offices of the Public Defender
233 "A" Street, Suite 300
San Diego, California 92101
Telephone: (619) 338-4774

LARRY AINBINDER
Attorney for Defendant
MARTIN WALTERS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, v. MARTIN WALTERS, Defendant. | CASE NO. CR 103749<br>C.A. NO. B 46516<br><br>**NOTICE OF MOTION TO WITHDRAW PLEA OF GUILTY (PENAL CODE §1018)**<br><br>DATE: December 18, 1990<br>TIME: 10:00 a.m.<br>DEPT: Superior 9 |

TO: EDWIN L. MILLER, DISTRICT ATTORNEY, AND HIS DESIGNATED REPRESENTATIVE, EVAN MILLER, DEPUTY DISTRICT ATTORNEY

PLEASE TAKE NOTICE that on December 18, 1990, at 10:00 a.m., defendant MARTIN WALTERS, by and through his attorney, LARRY AINBINDER, and the Office of the Public Defender, will move this Court to enter an order allowing him to withdraw his previously entered plea of guilty. This motion is based on the instant Notice of Motion, the Points and Authorities in Support of the Motion, and the attached Declaration and Affidavit.

I

PROCEDURAL STATUS

On May 9, 1990, MARTIN WALTERS entered a plea of guilty to first degree murder before this Honorable Court (P.C. § 187). The

COPY
San Diego County
COPY



EXHIBIT "F"

EXHIBIT

the light most favorable to the government, these tapes show Martin Walters purchasing enormous quantities of precursor chemicals and supplies for the production of multi-hundred pound shipments of methamphetamine.

It was counsel's opinion, communicated to Mr. Walters, that the state of the federal prosecutor's evidence was extremely strong. It was also counsel's opinion, again communicated to Mr. Walters, that as a result of these videotapes, (and despite the fact that the People's evidence was nowhere near so strong), that even if we should prevail completely on all of the state charges, it was a near certainty that Mr. Walters would spend the rest of his natural life in a federal penitentiary should he elect to go to trial on those charges. The same opinions were communicated to him by his federal defense attorney, James Pokorny.

This information obviously had a profound effect on Martin. He was 20 years old when arrested. And because of the mutually mistaken belief that he faced an LWOP sentence in federal court on charges he would almost certainly be convicted of, he was under the impression that if he accepted the plea bargains offered and entered pleas of guilty to both cases, including a plea to the instant P.C. § 187 charge, he would in all likelihood walk out of prison at the age of 40 with most of his life in front of him; but if he did not resolve the cases by plea, he would serve the rest of his natural life incarcerated in a federal prison. This impression was <u>the</u> motivating factor in deciding to enter his plea of guilty to murder in the case now before your honor. It was obviously based on an extremely material misunderstanding of the true consequences of electing trial over entering a plea of guilty.

San Diego County

112

0342

FILED
KENNETH E. MARTONE
Clerk of the Superior Court

JAN 08 1991

By: C. BURGESS, Deputy

EDWIN L. MILLER, JR.
District Attorney
EVAN MILLER
Deputy District Attorney
STACY RUNNING
Law Clerk
6002 County Courthouse
San Diego, California 92101
531-4473

Attorneys for Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SAN DIEGO JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, v. MARTIN WALTERS, Defendant. | No. CR103749/DA B46516 <br> POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY <br> DATE: January 10, 1991 <br> TIME: 10:00 A.M. <br> DEPT: 69 |

I

**THE BURDEN IS ON DEFENDANT TO DEMONSTRATE GOOD CAUSE FOR WITHDRAWING HIS GUILTY PLEA BY CLEAR AND CONVINCING PROOF.**

Penal Code section 1018 allows for the withdrawal of a previously entered plea at any time before judgment for good cause. The standard upon which said motion should be granted is a strong showing of clear and convincing proof. (People v. Cruz (1974) 12 Cal. 3d 562, 566; People v. Fratianno (1970) 6 Cal.App.3d 211, 222.)

The broad discretion vested in a court in connection with an evaluation of a motion pursuant to Penal Code section 1018 means a sound judicial discretion, and it will not be an abuse of discretion unless the court's decision exceeds the bounds of reason

COPY

0343

in its examination of the circumstances before it. (Mendieta v. Municipal Court (1980) 109 Cal.App.3d 290, 294; People v. McDonough (1961) 198 Cal.App.2d 84, 90.) "While the section is to be liberally construed, and a plea withdrawn for mistake, ignorance, inadvertence, or any other factor overreaching the defendant's free and clear judgment, the facts of such grounds must be established by clear and convincing evidence." (People v. Roper (1983) 144 Cal.App.3d 1033, 1044; People v. Knight (1987) 194 Cal.App.3d 337, 344.)

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision. Brady v. United States (1970) 397 U.S. 742, 756-757. Post plea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. Id.

The court's discretion is to be exercised only after a consideration of all factors necessary to a just result. (Ibid.) In determining whether its ruling will "promote justice," the court is required to consider the rights of the People. Leave to withdraw a plea which will result in inconvenience and expense to the state should not be granted lightly. (Id., at p. 331.)

The court is not bound to give full credence to the statements of a defendant in support of his motion to withdraw his plea, even if uncontradicted, in view of the defendant's obvious interest in the outcome of the proceeding. (People v. Beck (1961) 188 Cal.App.2d 549, 553.)

/ / / / /

In this case, the defendant, Martin Walters, is attempting to withdraw the state portion of a federal/state plea bargain package he entered into with the United States Government and the People of the State of California.

The basis for this request is the defendant's contention that he mistakenly believed he would be facing life without possibility of parole for the primary count charged in his federal indictment. The defendant claims that for this reason alone, he accepted the plea bargain package. [See defendant's moving papers at p.2, lines 21 through 26].

However, the People must point out that this defendant had other reasons for accepting this plea bargain. The defendant was charged in Counts 7 and 8 of the state information with kidnapping for ransom with allegations of bodily injury (PC 209(a)) and murder in the first degree (PC 187(a)), respectively. Count 7 mandated a sentence of life without parole. Count 8 had a sentence range of 25 years to life.

In exchange for his plea of guilty to Count 8 of the information (PC 187(a)) the People dismissed Count 7, thereby saving the defendant from the possibility of life without parole in state prison. Furthermore, the People did not oppose the defendant's wish to serve his sentence in federal custody; concurrent with his federal sentence. The People agreed to file no charges against the defendant's mother, Martha Walters, or his aunt, Carmen Fonsica, and also to assist in limiting the amount of time they would serve in federal custody. Finally, the People dismissed the companion drug cases against the defendant that had been trailing along with the

/ / / / /

0345

primary charges. The defendant received the benefit of his bargain with regard to the state charges.

II

**THE DEFENDANT HAS CHOSEN THE WRONG FORUM IN WHICH TO PRESENT HIS CLAIMS**

Assuming arguendo, that the defendant was mistaken about the maximum sentence he could receive in federal court, why is he seeking his remedy in state court where he received the benefit of his bargain and yet, has filed no motion in federal court to withdraw his plea?

**CONCLUSION**

For the reasons stated, it is respectfully requested that defendant's motion be denied.

Dated: January 8, 1991

Respectfully submitted,

EDWIN L. MILLER, JR.
District Attorney

By: Evan Miller
EVAN MILLER
Deputy District Attorney

Attorney for Plaintiff

In this case, the defendant, Martin Walters, is attempting to withdraw the state portion of a federal/state plea bargain package he entered into with the United States Government and the People of the State of California.

The basis for this request is the defendant's contention that he mistakenly believed he would be facing life without possibility of parole for the primary count charged in his federal indictment. The defendant claims that for this reason alone, he accepted the plea bargain package. [See defendant's moving papers at p.2, lines 21 through 26].

However, the People must point out that this defendant had other reasons for accepting this plea bargain. The defendant was charged in Counts 7 and 8 of the state information with kidnapping for ransom with allegations of bodily injury (PC 209(a)) and murder in the first degree (PC 187(a)), respectively. Count 7 mandated a sentence of life without parole. Count 8 had a sentence range of 25 years to life.

In exchange for his plea of guilty to Count 8 of the information (PC 187(a)) the People dismissed Count 7, thereby saving the defendant from the possibility of life without parole in state prison. Furthermore, the People did not oppose the defendant's wish to serve his sentence in federal custody; concurrent with his federal sentence. The People agreed to file no charges against the defendant's mother, Martha Walters, or his aunt, Carmen Fonsica, and also to assist in limiting the amount of time they would serve in federal custody. Finally, the People dismissed the companion drug cases against the defendant that had been trailing along with the

/ / / / /

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT NO. 15 HON. PERRY LANGFORD, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>PLAINTIFF,<br>VS.<br>MARTIN E. WALTERS,<br>DEFENDANT. | CASE NO. CR 103749<br>MOTION TO WITHDRAW PLEA<br>PAGES 1 - 31 |

REPORTER'S TRANSCRIPT

JANUARY 10, 1991

APPEARANCES:

FOR THE PLAINTIFF: EDWIN L. MILLER, JR.
DISTRICT ATTORNEY
BY: EVAN MILLER
DEPUTY DISTRICT ATTORNEY
220 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT: LARRY AINBINDER
DEPUTY PUBLIC DEFENDER
233 A STREET
SAN DIEGO, CALIFORNIA 92101

REPORTED BY: YVONNE A. MORENO, CSR 5366
OFFICIAL COURT REPORTER
SAN DIEGO SUPERIOR COURT

TO HIM THAT "WHY WOULD YOU WANT TO DO THAT." AND FOR THAT REASON WE SUGGESTED TO HIM THAT THE OFFERS MADE ON BOTH SIDES OF THE STREET, A PLEA TO FIRST DEGREE MURDER OVER HERE, A PAROLABLE OFFENSE, PLEAS TO THE CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND TO THE GUN COUNTS OVER IN FEDERAL COURT, RUN CONCURRENT WITH A RELEASE DATE ANTICIPATED AT 20 YEARS, WERE SOMETHING THAT MADE A LOT MORE SENSE.

IT WAS ESSENTIALLY OUR JOINT ADVICE TO THE OPINION THAT FACING LIFE WITHOUT PAROLE IN A FEDERAL CASE, WHERE THERE WAS VIDEOTAPE EVIDENCE AS STRONG AS THAT VIDEOTAPE EVIDENCE APPEARED, THAT THAT WAS JUST SUICIDAL. AND SO THAT NO MATTER WHAT THE STRENGTHS OR WEAKNESSES OF THE PEOPLE'S EVIDENCE IN THIS CASE, IT MADE NO SENSE TO REJECT THE OFFER AND TO BE ACQUITTED, LET'S SAY, OVER HERE AND TO TURN AROUND AND BE CONVICTED IN FEDERAL COURT AND SPEND THE REST OF HIS NATURAL LIFE IN FEDERAL PRISON.

THAT WAS THE MOTIVATING FACTOR AND THE RECURRENT REASON FOR HIS ENTERING HIS PLEA TO THIS CHARGE, AND IT'S FOR THAT REASON THAT IT'S MY READING OF THE LAW HE SHOULD BE ENTITLED TO WITHDRAW HIS PLEA IN THIS CASE.

I WILL SIT DOWN BASICALLY WITH THIS LAST THOUGHT: TO TELL HIM THAT THAT FACT DOES NOT JUSTIFY WITHDRAWING HIS PLEA IS ESSENTIALLY TO SAY "WELL, 20 YEARS OR LIFE WITHOUT THE POSSIBILITY OF PAROLE, YOU BASICALLY UNDERSTOOD THE PARAMETERS OF THE PLEA, WHICH IS THAT YOU'RE GOING TO DO A LOT OF TIME AND REALLY WHAT'S THE DIFFERENCE."

AND IN MY MIND WHEN YOU'RE TALKING ABOUT A FELLOW WHO THEN WAS 22 YEARS OLD AND TRYING TO MAKE SOME

DECISIONS BASED UPON WHETHER HE WOULD WALK OUT OF PRISON ROUGHLY AT THE AGE OF 40 OR SPEND THE REST OF HIS NATURAL LIFE IN PRISON, PARTICULARLY AS IT HAD BEEN IMPRESSED UPON HIM BY BOTH THE FEDERAL JUDGE, THE FEDERAL PROSECUTOR, MYSELF, HIS FEDERAL DEFENSE ATTORNEY AND THE PRECEEDING LAWYERS, IT'S JUST MIND-BOGGLING TO BELIEVE THAT THAT DID NOT AFFECT AND DID NOT CONTROL HIS DECISIONS IN THIS CASE, AND FOR THESE REASONS WE BELIEVE IT'S APPROPRIATE TO ALLOW HIM TO WITHDRAW HIS PLEA.

THE COURT: OKAY.

BEFORE I ASK THE PEOPLE TO RESPOND, LET ME ASK YOU THIS, MR. AINBINDER. IT'S YOUR POSITION THAT AS BORNE OUT BY THE DOCUMENTS THAT YOU SUBMITTED FROM THE FEDERAL COURT THAT ALL PARTIES, THE JUDGE IN THE FEDERAL SYSTEM, AS WELL AS ALL THE PARTIES IN THE STATE SYSTEM AND THE PROSECUTOR AND EVERYBODY INVOLVED IN THE CASE AS TO THE FEDERAL CASE, THEY WERE UNDER THE MISTAKEN BELIEF THAT THE MAXIMUM PUNISHMENT AT THAT TIME WAS LIFE IMPRISONMENT.

MR. AINBINDER: THAT IS CORRECT.

THE COURT: JUST LIFE WITHOUT POSSIBILITY OF PAROLE UNDER THE FEDERAL SYSTEM.

MR. AINBINDER: THAT'S CORRECT.

THE COURT: NOW, MY QUESTION IS, FIRST OF ALL, IS WAS THAT A QUESTION, WHETHER HAD IT -- WHERE THERE WAS AN OPEN ISSUE IN THE FEDERAL SYSTEM WHETHER OR NOT THE NEW TERM APPLIED TO YOUR CLIENT OR CASES RELATED SIMILAR TO YOUR CLIENT, OR WAS IT SOMETHING THAT CAME ABOUT IN TERMS OF A CASE WHICH CLARIFIED THE ISSUE OF RETROACTIVITY.

HAVE THE REPORT IN FRONT OF ME.

THE QUESTION THOUGH, YOUR HONOR, IS ALSO DID HE RECEIVE THE BENEFIT OF HIS BARGAIN OVER IN STATE COURT. AS I POINT OUT IN MY MOVING PAPERS, HE WAS ALSO LOOKING AT A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT. SO WHEN HE PLED TO THE FIRST DEGREE MURDER, HE GOT THE BENEFIT OF NO LONGER BEING EXPOSED TO A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT.

IN ADDITION TO THAT, WE AGREED THAT HE COULD SERVE HIS TIME IN FEDERAL CUSTODY AS OPPOSED TO A STATE FACILITY. WE ALSO AGREED THAT ANY TIME HE GOT IN THE STATE CASE COULD BE CONCURRENT WITH THE FEDERAL TIME.

WE AGREED TO FILE NO CHARGES AGAINST BOTH HIS MOTHER AND HIS AUNT ON A SOLICITATION FOR MURDER CASE. WE ALSO AGREED - AND THE FEDERAL PROSECUTOR WAS HERE AT THE TIME OF THE CHANGE OF PLEA - THAT THE AMOUNT OF TIME THAT BOTH HIS MOTHER AND HIS AUNT WOULD GET ON THEIR FEDERAL CASE RELATED TO THE SOLICITATION OF MURDER, THAT WE WOULD PUT A LID ON THAT TIME AND ALL OF THAT HAS HAPPENED.

THERE HAVE BEEN NO CHARGES FILED AGAINST THE MOTHER. NO CHARGES AGAINST THE AUNT. AND, IN FACT, THE MOTHER AND AUNT WERE SENTENCED IN FEDERAL COURT TO THE LIMIT THAT WE DISCUSSED HERE IN STATE COURT. SO HE HAS RECEIVED THE BENEFIT OF THAT BARGAIN.

IN ADDITION TO THAT, THERE WAS A COMPANION DRUG CASE THAT WAS DISMISSED IN STATE COURT. SO HE HAS RECEIVED CONSIDERABLE -- A CONSIDERABLE AMOUNT OF BENEFIT OVER IN STATE COURT FOR THE PLEA THAT HE ENTERED.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

103749 DA B4651602

AMENDED MINUTES

PROB HEARING-SENTENCING/PLEA WITHDRAWAL HEARING

E 01-10-91 AT 10:00 A. M

ESENT: HON. JESUS RODRIGUEZ JUDGE PRESIDING DEPARTMENT 009

ERK MAUREEN COLAHAN REPORTER YVONNE MORENO

HE PEOPLE OF THE STATE OF CALIFORNIA
VS

E. MILLER ✓ S. RUNNING CLI ✓
DEPUTY DISTRICT ATTORNEY

WALTERS MARTIN E
DEFENDANT

L. AINBINDER ✓ PUB DEF
ATTORNEY FOR DEFENDANT (APPT'D/RETAINED)

LATION OF PC187(A)

DEFENDANT ☒ NOT PRESENT ☐ ARRAIGNED FOR JUDGMENT ☐ WAIVES ARRAIGNMENT

☐ DEFENDANT ADVISED OF RIGHTS AND (ADMITS/DENIES) A VIOLATION OF PROBATION. ☐ WAIVES HEARING

PROBATION IS: ☐ DENIED ☐ REVOKED ☐ REINSTATED ☐ CONTINUED ☐ MODIFIED ☐ GRANTED ____ YEARS (FORMAL/SUMMARY)

☐ IMPOSITION OF SENTENCE IS SUSPENDED. ☐ DEFENDANT SENTENCED TO STATE PRISON, EXECUTION SUSPENDED (SEE BELOW FOR TERM).

CONDITIONS OF PROBATION INCLUDE, BUT ARE NOT LIMITED TO:

☐ COMMITMENT TO SHERIFF FOR ____ DAYS. ☐ ADULT INSTITUTIONS RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.

☐ FINE OF $ ____ INCLUDING PENALTY ASSESSMENT AT $ ____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.

☐ RESTITUTION OF $ ____ TO VICTIM/RESTITUTION FUND AT $ ____ PER MONTH, COMMENCING ____ THROUGH REVENUE AND RECOVERY.

☒ RESTITUTION/FINE OF $ 5000 PER GC 13967, XXXXXXXXXXXXXXXXX per PC2085.5

☐ PARTICIPATION IN COMMUNITY SERVICES PROGRAM IN LIEU OF RESTITUTION.

☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS. 25 Years to Life

☐ REGISTRATION PER PC 290/H&S 11590. ☐ TEST PER PC 290.2

☒ DEFENDANT IS COMMITTED TO DEPARTMENT OF CORRECTIONS FOR LOWER/MIDDLE/UPPER TERM OF ____ YEARS. COUNT 8
(SEE BELOW FOR ADDITIONAL COUNTS)

☐ DEFENDANT IS COMMITTED TO CALIFORNIA YOUTH AUTHORITY. ☐ PER W&I 707.2 ☐ PER W&I 1737
(SEE BELOW FOR FINDINGS)

☐ DEFENDANT IS ADVISED OF APPEAL RIGHTS ☐ DEFENDANT IS ADVISED REGARDING PAROLE

CREDIT FOR TIME SERVED
771 DAYS LOCAL
____ DAYS STATE INST.
385 DAYS PC 4019
1156 TOTAL DAYS CREDIT

DEFENDANT REMAINS AT LIBERTY:
☐ ON BOND POSTED $ ____
☐ ON OWN RECOGNIZANCE
☐ ON PROBATION

DEFENDANT REMANDED TO CUSTODY:
☒ WITHOUT BAIL
☐ WITH BAIL SET AT $ ____

☐ DEFENDANT ORDERED RELEASED FROM CUSTODY

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT

____ CONTINUED TO/SET FOR ____ AT ____ M IN DEPT. ____ ON MOTION OF COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON:

☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION PER PC 1203.03. FURTHER HEARING SET FOR ____ AT ____ M IN DEPT. ____

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ ____. SERVICE WITHHELD TO ____.

☐ BENCH WARRANT, ISSUED ____ IS RECALLED.

☐ BOND FORFEITED. BOND AMOUNT ____. BOND NO. ____. BOND COMPANY ____. AGENT ____

☐ BOND IS EXONERATED.

☐ PROCEEDINGS SUSPENDED PER: ☐ PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ W&I 3051 ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR DATE OF SERVICE OF PETITION AND ORDER.)

OTHER: ☐ REFERRED TO DEPT. OF REVENUE AND RECOVERY ☐ REPORT TO REGISTRAR OF VOTERS ☐ DMV ABSTRACT

Plea Withdrawal Hearing - Court receives Copy of Plea Agreement Federal Court dated 5-9-90 as Court Exhibit 1, Copy of Supplemental Transcript of Proceedings Federal Court dated 5-8-90 as Court Exhibit 2, Copy of Pages 25-30 of Federal Case 88-0769 Transcript dated 5-9-90, as Court Exhibit 3. The Court denies the defendant's motion for withdrawal of guilty plea.

Probation Hearing & Sentencing - Restitution of $3,629.00 to the victims listed in the Probation Report per GC13967(c). This judgment to be executed on 1-18-91 or after the sentencing in Federal Case 88-0769G. Concurrent to the Federal Case. Committment to be served in Federal Institution.

F
KENNETH E. MARTONE
Clerk of the ...
D

JAN 10 1991
0346
By: S. TALBOTT, Deputy

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## ABSTRACT OF JUDGMENT
## FOR COMMITMENT TO STATE PRISON

THE PEOPLE OF THE STATE OF CALIFORNIA
PLAINTIFF

VS

MARTIN EDWARD WALTERS
DEFENDANT

DATE JANUARY 10, 1991
CASE NUMBER: L CR 103749
PRESENT
HON. JESUS RODRIGUEZ
JUDGE OF THE SUPERIOR COURT

EDWIN L. MILLER, Jr., District Attorney
By EVAN MILLER
DEPUTY

LARRY AINBINDER
COUNSEL FOR DEFENDANT

MAUREEN COLAHAN
CLERK

YVONNE MORENO
REPORTER

[ ] PROBATION HAVING BEEN HERETOFORE GRANTED AND SAID PROBATION HAVING BEEN REVOKED ON ________.
[X] APPLICATION FOR PROBATION IS DENIED. THE DEFENDANT ~~IS DULY ARRAIGNED~~ XXXXXXXXXX (WAIVES FORMAL ARRAIGNMENT).

Count No. 8 . WHEREAS THE SAID DEFENDANT ON HIS PLEA of GUILTY
(GUILTY, NOT GUILTY, FORMER CONVICTION OR ACQUITTAL, ONCE IN JEOPARDY, NOT GUILTY BY REASON OF INSANITY) having

been convicted by COURT (THE COURT OR JURY) of MURDER, 1st degree
(DESIGNATION OF CRIME AND DEGREE IF ANY, INCLUDING FACT THAT IT CONSTITUTES A SECOND OR SUBSEQUENT, IF THAT AFFECTS THE SENTENCE)

IN VIOLATION OF PENAL CODE SECTION 187, 1st degree
(REFERENCE TO CODE OR STATUTE, INCLUDING SECTION AND SUBSECTION THEREOF, IF ANY VIOLATED.)

YEAR CRIME COMMITTED IS 1988.
THE DEFENDANT IS CREDITED FOR TIME SPENT IN CUSTODY, 1156 TOTAL DAYS, INCLUDING:
ACTUAL LOCAL TIME 771 PC 4019 CREDIT 385, STATE INSTITUTIONS TIME ________.

THE COURT FINDS: ("IF NO FINDING MADE, ENTER "NO FINDING MADE")
NO FINDING MADE. . THE DEFENDANT ________ (WAS OR WAS NOT) ARMED WITH A DEADLY WEAPON AT THE TIME OF HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING OF SECTIONS 969c and 12022 OF THE PENAL CODE.
NO FINDING MADE. . THE DEFENDANT ________ (USED OR DID NOT USE) A FIREARM IN HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING OF SECTIONS 969d and 12022.5 OF THE PENAL CODE.
NO FINDING MADE. . THE DEFENDANT ________ (WAS OR WAS NOT) ARMED AT THE TIME OF HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING OF SECTION 1203 OF THE PENAL CODE AND THAT WEAPON WAS

03r1

THE DEFENDANT HAS HAD PRIOR FELONY CONVICTIONS AS FOLLOWS: DISPOSITION

NOT APPLICABLE

0347

It is therefore ordered, adjudged and decreed that the defendant be punished by imprisonment in the State Prison of the State of California for the term prescribed by law. It is ordered that the sentences shall be served in respect to one another as follows (CC or CS):

CONCURRENT

and in respect to any prior incomplete sentence(s) as follows (CC or CS):

CONCURRENT TO FEDERAL CASE 88-0769G. Defendant to be held in Federal Facility.

It is further ordered that the defendant be remanded to the Sheriff of the County of San Diego; and pursuant to the aforesaid judgment, this is to command you, the Sheriff, to deliver the defendant into the custody of the ~~Director of Corrections of the State of California at the California Institution for Men at Chino / Women at Frontera, California at your earliest convenience.~~
Federal facility.

The Court ( DID NOT ) instruct the defendant of his right to appeal in accordance with Rule 250, California Rules of Court.
did / did not

JUDGE OF THE SUPERIOR COURT
JESUS RODRIGUEZ

I certify the foregoing to be a true and correct abstract of the Judgment made and entered on the Minutes of the Superior Court herein.

Dated: JANUARY 10, 1991

**KENNETH E. MARTONE**
**CLERK OF THE SUPERIOR COURT**

By________________________________Deputy
SHARON TALBOTT

03re

# EXHIBIT COVER PAGE:

Exhibit: E

Description of this exhibit: Fed. lawyer Billing minutes / Diary: evidence of unfair trial; 19 years calculated in State case; 20 year Fed. Sentence longer that state; and 20 years in custody as intended by contracting parties.

Number of pages of this exhibit: 5 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

PETIONERS FED SW DOCS PERSONAL NOTES ON CASE.

Note: All References to (E.B.G) Are EARL B. GILLIAM FEDERAL DIST. COURT Judge

CL NAME/ADDRESS MARTIN EDWARD WALTERS

DOB
IMM STATUS
HOME PHONE
POE/PHONE
SPOUSE/S.O. NAME
SPOUSE/S.O. POE/PHONE

ARRESTING AGENCY
CASE AGENT/PHONE
NAME OF AUSA/PHONE TOM FERRARO 557-7040

DEFENSE INV/PHONE LIZ SEMEL
CO-COUNSEL/PHONE LARRY AINBINDER 338-4774

DATE OF ARREST
CHARGES
BOOKING # 15490-198 11th floor
BAIL STATUS DETAINED
MAGISTRATE
MAG CASE #
JUDGE EBG
USDC CASE # 88-0769 G
ARRAIGN
PE
MS 12/08/89
MOTIONS
CONT MOTIONS 04/16/90
CONT MOTIONS 05/07/90
CONT MOTIONS 05/08/90
JT

PO/PHONE

*******************************DIARY NOTES**********************

12/06/89 .10 tcf EBG clerk Mac re new case from Zeke Cortez

12/06/89 .30 tct Zeke. He says:

(1) he has to sub out because he represented a relative of the snitch, Juan Antonio Lopez.

(2) there is a state case now, with Larry Ainbinder

(3) case has been declared complex

12/06/89 N/C tcf cl's mother JFP NI LMTC



COPY

EXHIBIT "D"

EXHIBIT

Larry feels that the only defense in the fed action is that all Martin was doing was show, and nothing substantive.
Told Larry that we would call him to see which dept he gets assigned to, so we can bring in docket sheet from SDSC to show to EBG on 05/07/90

04/29/90 2.10 review disc

04/30/90 3.10 review disc

05/01/90 3.90 review disc

05/02/90 .20 tcf EBG clerk re chambers conf w/all parties today at 4:30pm

05/02/90 .20 conf w/DDA Evan Miller

05/02/90 .20 tct Larry Ainbinder

05/02/90 .40 chambers conf w/EBG, Adair, Ball, Ainbinder, Miller ...bottom line is that EBG wants to muscle cl into a dispo by ordering him to stand trial on 05/08/90! Told him that I was not ready, that I had relied on the state court case schedule to go first, and that discovery was <u>still coming in</u>! (We just got a note today saying that 198 ore pages are ready)
Court says that since they have him in Fed custody, that they will do what they want to do, and the hell with Judge Rodriguez. EBG indicates that he will personally call Rodriguez, and tell him that they can do the fed case in 4 days and then the conviction will make the state case go away.

05/02/90 .40 conf w/Larry...the interesting thing is that if EBG forces us to trial, they will get a dismissal in state court (with refiling a virtual certainty, but he will get another shot at a prelim)
Also, they will not waive time for trial, and they will insist on going. Larry is sure that if Martin gets convicted in the feds first, this will not compel him to plead in the state court case at all, irrespective of what EBG thinks!

05/02/90 1.40 revioew disc

05/03/90 .30 tcf Larry, who says that he and Evan met with Rodriguez today, and explained the situation to the judge. Rodriguez says that if on zero day (which is technically Saturday, which makes it Monday 05/07) Martin demands a trial, Rodriguez will give him a courtroom...regardless of EBG's wishes.

05/03/90 .30 tct Ferraro re meeting to discuss evidence today.

05/03/90 tct Suzie to find out if the Grand Jury Transcripts are ready. They are not but she will call me as soon as they are done.

05/03/90 tct Suzie to let her know that we are missing page 30 and

198 in the discovery from the 2nd. Request that she just make copies and call me when the Grand Jury Transcripts are ready and I will pick them all up together.

05/04/90 tct Suzie to find out if the transcripts are ready yet. She said that they still have not received them from the court reporter but she will call me as soon as they do have them.

05/04/90 2.30 review disc

05/04/90 2.10 conf w/inv Larry Polinsky

05/04/90 .60 conf w/AUSA Tom Ferraro

05/04/90 1.20 review defense inv reports

05/05/90 5.80 review discovery and transcripts

05/05/90 .40 tct co-counsel

05/05/90 3.20 legal research re: outrageous gov't conduct

05/05/90 5.10 trial prep

05/05/90 .30 tct investigator

05/06/90 5.20 review disc and transcripts

05/06/90 2.40 legal research re ephedrine

05/06/90 4.90 trial prep

05/06/90 .80 conf w/inv

05/06/90 1.10 conf w/cl

05/07/90 N/C tct Yolanda, LMTC ASAP.

05/07/90 .30 Conf w/Ainbinder re: scheduling of trial.

05/07/90 .20 Conf w/Even Miller re: scheduling trials.

05/07/90 .40 Appeared EBG for motions. Court denies our motion for continuance. Court grants government motion for handwritting expl. Court orders matter to trial tomorrow morning 8:30 a.m.

05/07/90 3.40 trial prep

05/07/90 .80 Conf with investigator.

05/08/90 .50 appear EBG for trial...matter trails

05/08/90 .60 conf w/cl

05/07/90 .80 Conf with investigator.

05/08/90 .50 appear EBG for trial...matter trails

05/08/90 .60 conf w/cl

05/08/90 1.50 review disc

05/08/90 .30 conf w/cl

05/08/90 2.20 trial prep

05/08/90 .30 conf w/cl...he still wants to tomorrow to think about deal

05/08/90 .20 conf w/co-counsel

05/08/90 .30 tct Yolanda Hash re potential of deal

05/09/90 .30 conf w/co-counsel

05/09/90 .30 appear EBG...matter transferred to S-9, and our case set for hearings as follows:

(1) motions 06/18/90
(2) JT 07/17/90

05/09/90 1.20 conf w/inv and co-counsel

05/09/90 2.30 review disc

05/09/90 .20 tcf co-counsel as to cl's plea in state court

05/09/90 .40 conf w/co-counsel

05/09/90 .20 conf w/cl re change of plea

05/09/90 .60 appear EBG for change of plea per written plea agreement to counts 1, 10 and 13. Count ten to run concurrent to count one, time to be served in federal custody

05/09/90 .20 tct inv to advise

05/14/90 .30 tcf PO Shirley Pacheco, who will be going to see cl tomorrow at MCC

05/24/90 .30 conf w/Ainbinder re probation officer interview and acceptance of responsibility

05/26/90 .30 tct Martin's grandmother Beulah Walters [415/481-0859...she will send me a letter which she thinks could help out

05/31/90 .30 R+R letter from cl's grandmother

is...I will set it up and call Larry

07/17/90 N/C tct EBG chambers NI LMTC

07/17/90 .20 tcf EBG law clerk who says that the only time that the judge can meet with us is tomorrow at 4:15

07/18/90 N/C tct Ferraro and Ainbinder to advise NI LMTC

07/18/90 .20 conf w/Ainbinder and Ferraro. Ferraro points out that we goofed up a little doing the dispo...cl was advised that the max for count one was 10-life. Actually, the guidelines changed one day after cl's conduct (difference is between 10/31/88 and 11/01/88) the actual guidelines in effect at time of offense were 0-20 years.

Martin could argue ineffective assistance of counsel if he wanted to, however:

(a) his state court case was mandatory 25-life

(b) even under the correct guidelines, his exposure at trial was a term of years that would have exceeded a life sentence

For these reasons, any IAC claim would be without merit.

Bottom line is that this makes the PSR recommendation moot, because the max cl could get would be 20 (for count one) plus 5 (for count two) for a total of 25 years! Martin should be happy about this.

07/18/90 .20 conf w/Ainbinder...he thinks that since Martin will do probably 19-20 actual years state, we should have his fed sentence a little longer than state so he doesn't have to go and do any state time. Therefore, we should get a total sentence of around 23years 3 months, which is 20 years actual time.

07/18/90 1.20 legal research re guidelines and prison terms. It appears that we should ask for 18 years and 3 months (219 months) for the conspiracy, 10 years (120 months) for the pipe bomb...all to run concurrent. Then add five years mandatory for the gun, and you get 23 years and 3 months (279 months). This will get him out in twenty years on the nose, which is what we all intended when we did plea negotiations (cal. civ code of civ. proc. § 1859)

07/19/90 1.40 prep for sent hearing

07/19/90 .50 R+R probation response to our obj to PSR

07/23/90 .30 appear EBG for hearing...marshal tells me that cl was hospitalized a couple of days ago for kidney problems, and should be in Harbor View Hosp...we will check and find out. Matter put over to 07/26/90 fpr status

07/23/90 tct Harborview Medical Center (232-4331) They do not have any information or records showing that Martin is there.

# EXHIBIT COVER PAGE:

Exhibit: F

Description of this exhibit: Fed. Sentence excerpt 1-17-91, affirms 25 to life actually means 20-21 years, state time concurrent to fed.; and Fed. A.U.S.A. admits to "calculations" etc.

Number of pages of this exhibit: 3 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

THE COURT: MR. WALTERS, I HAVE IN MY HAND THE PRE-SENTENCE REPORT IN THIS MATTER. HAVE YOU HAD A CHANCE TO GO OVER IT WITH YOUR LAWYER, MR. PORKORNY?

THE DEFENDANT: YES, I HAVE, YOUR HONOR.

THE COURT: IS THERE ANYTHING ABOUT THE REPORT YOU WOULD LIKE TO TALK TO MR. POKORNY ABOUT BEFORE WE GO ANY FURTHER THIS MORNING?

THE DEFENDANT: YES.

THE COURT: OKAY. YOU MAY TALK WITH HIM NOW.

(COUNSEL AND DEFENDANT CONFER.)

MR. POKORNY: WE ARE READY TO PROCEED, YOUR HONOR.

THE COURT: ANYTHING ELSE YOU WANT TO TALK TO HIM ABOUT, MR. WALTERS?

THE DEFENDANT: NO.

THE COURT: THE COURT HAS READ AND CONSIDERED THE OBJECTIONS, AND ALSO HAS SOME WRITTEN THINGS HERE, THE ATTACHMENT THERETO. THE COURT HAS READ AND CONSIDERED ALL OF THAT FOR PURPOSES OF SENTENCING.

MR. POKORNY, DO YOU HAVE ANYTHING YOU WOULD LIKE TO SAY ABOUT SENTENCING BEFORE WE SENTENCE THE DEFENDANT?

MR. POKORNY: YES, YOUR HONOR. IT WILL BE BRIEF IN VIEW OF THE FACT THAT THE COURT HAS EXPRESSED IT'S INCLINATION TO FOLLOW THE PLEA AGREEMENT.

JUST BY WAY OF A QUICK REVIEW. IN STATE COURT 25 TO LIFE ACTUALLY MEANS, ACCORDING TO MR. MILLER, WHO'S

OUR EXPERT FROM STATE COURT, THAT THIS MAN WILL BE ELIGIBLE FOR PAROLE IN ABOUT 17 AND TWO-THIRD YEARS, WHICH I GUESS IS 17 YEARS AND EIGHT MONTHS. AS A PRACTICAL MATTER, HE WILL COME UP FOR PAROLE TO THE PAROLE HEARING IN ABOUT 18 YEARS.

I UNDERSTAND THAT THE LIKELIHOOD OF HIM BEING PAROLED AT THAT TIME IS SLIM TO NONE. HOWEVER, IT EXISTS.

THE PAROLE BOARD WILL THEN SET, IF IT DENIES HIS APPLICATION FOR PAROLE, ANOTHER PAROLE HEARING, EITHER ONE, TWO OR THREE YEARS DOWN THE ROAD FROM THAT DATE.

WE AGREE THAT HIS PROBABLE RELEASE DATE IS GOING TO BE 20 TO 21 YEARS, IT LOOKS LIKE, STATE SIDE. THAT'S THE ACTUAL TIME THAT HE'LL DO.

AS I INDICATED, THE JUDGMENT IS GOING TO BE ENTERED SUBSEQUENT TO TODAY'S DATE.

MY SUGGESTION TO THE COURT -- THIS IS FAIRLY STRAIGHTFORWARD. WE HAVE NO REAL BEEF WITH THE PRE-SENTEN( REPORT. WE FILED OUR OBJECTIONS, AND THEY'RE A MATTER OF RECORD AT THIS POINT. IT APPEARS TO BE FAIRLY ACCURATE OTHER THAN THE POINTS WE RAISED, WHICH WERE REALLY CON- CLUSIONARY POINTS IN THE COMPUTATION OF THE GUIDELINES SCORE BY THE PROBATION OFFICER.

WE ARE SUGGESTING THAT THE COURT GO BY LEVEL 36, CRIMINAL HISTORY CATEGORY OF ONE, WHICH FACTUALLY IS THE CASE. I THINK HE HAD ONE -- HE WAS -- SINCE HE WAS

THE COURT: ALL RIGHT.

MR. FERRARO: YOUR HONOR, I DON'T THINK IMPOSING THE LOWER END IS REQUIRED BY THE AGREEMENT. THE UNITED STATES ASKED THE COURT TO IMPOSE A 25-YEAR SENTENCE. LET ME BREAK THAT DOWN.

COUNT 1, 20 YEARS. COUNT 10, A CONCURRENT 10 YEAR SENTENCE. COUNT 13, A CONSECUTIVE FIVE-YEAR TERM OF IMPRISONMENT.

MUCH HAS BEEN SAID THIS MORNING ABOUT FIGURING OUT THE KIND OF SENTENCE THAT WILL BE ULTIMATELY IMPOSED IN THE CASE AGAINST MARTIN WALTERS IN STATE COURT. WHAT I MEAN BY THAT IS THERE HAS BEEN CALCULATIONS, ATTEMPTING TO FIGURE OUT HOW MANY YEARS MR. WALTERS WILL ACTUALLY SERVE IN STATE PRISON. I WOULD SUBMIT TO THE COURT THAT NONE OF THAT REALLY HAS ANY PLACE HERE, OR ANY REAL CONSIDERATION BEFORE YOU. THE DEFENDANT IS GOING TO BE SENTENCED ACROSS THE STREET FOR THE CRIMES THAT HE COMMITTED.

OUR AGREEMENT IS SIMPLY THAT THE TIME IS TO RUN CONCURRENT. NOW, WE STAND BY THAT AGREEMENT. ACTUALLY, THE GOVERNMENT NEVER AGREED TO THAT. THE STATE AGREED TO IT. WE DON'T WANT TO INTERFERE WITH THEIR AGREEMENT. WE DON'T WANT TO INTERFERE WITH THEIR ATTEMPT TO DO THAT.

BUT I WOULD SUBMIT THAT WE NEED TO LOOK AT THIS CASE AND PUNISH THIS DEFENDANT FOR THE CRIMES HE COMMITTED HERE, AND THE SUPERIOR COURT WILL IMPOSE A SENTENCE FOR

# EXHIBIT COVER PAGE:

Exhibit: 9

Description of this exhibit: Cal. P.C. § 1168(d)(Ann.) shows, Respondent Agency required to determine term, after Min. term. Exp. without required "parole suitability". (exposes Cal. sham)

Number of pages of this exhibit: 5 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ___________________________

CA-STAT-AN2 - PENAL Sec. 1168, Sentence to imprisonment in state prison; trial court sentencing; fixing of term or duration

------------ Excerpt from page 86744 follows ------------

HISTORICAL AND STATUTORY NOTES

2004 Main Volume

As added in 1917, the section read:

"(a) Every person convicted of a public offense, for which public offense punishment by imprisonment in any reformatory or the state prison is now prescribed by law, if such convicted person shall not be placed on probation, a new trial granted, or imposing of sentence suspended, shall be sentenced to be confined in the state prison, but the court in imposing such sentence shall not fix the term or duration of the period of imprisonment.

"(b) It is hereby made the duty of the warden of the state prison to receive such person, who shall be confined until duly released as provided for in this act; provided, that the period of such confinement shall not exceed the maximum or be less than the minimum term of imprisonment provided by law for the public offense of which such person was convicted.

"(c) It shall be the duty of the judge before whom such convicted person was tried, and of the district attorney conducting the prosecution, to obtain and with the commitment furnish to the state board of prison directors in writing all information that can be given in regard to the career, habits, degree of education, age, nativity, nationality, parentage, and previous occupation, of such convicted person, together with a statement to the best of their knowledge as to whether such person was industrious or not, of good character or not, the nature of his associates and his disposition.

"(d) The governing authority of the reformatory or prison in which such person may be confined, or any board or commission that may be hereafter given authority so to do, shall determine after the expiration of the minimum term of imprisonment has expired, what length of time, if any such person shall be confined, unless the sentence be sooner terminated by commutation or pardon by the governor of the state; and if it be determined that such person so sentenced be released before the expiration of the maximum period for which he is sentenced, then such person shall be released at such time as the governing board, commission or other authority may determine.

"(e) The state board of prison directors shall make all necessary rules and regulations to carry out the provisions of this act not inconsistent therewith, and may provide the forms of all documents necessary therefor.

------------ Excerpt from page 86745 follows ------------

"(f) Any convicted person undergoing sentence in either of the state prisons of this state, not sooner released under the provisions of this act shall, in accordance with the provisions of existing law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted."

The act which added this section also contained the following provision: "This act shall take effect upon the adoption of an amendment to the Constitution authorizing the Legislature to provide for the government, charge, and superintendence of an institution for females charged with or convicted of public offenses."

The section was extensively modified in 1927, rewritten in 1929, to incorporate provisions previously appearing in former §§ 18, 18a, and 1588, and amended in various aspects in 1931, 1933, 1935, and 1937. As amended in 1937, prior to the distribution of most of the provisions to other sections in 1941, the section read:

"(1) Imprisonment. Every person convicted of a public offense, for which imprisonment in any reformatory or State prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to be imprisoned in a State prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.

"It is hereby made the duty of the warden of any of the State prisons to receive such person, who shall be imprisoned until duly released as provided for in this section. The term of imprisonment shall not exceed the maximum or be less than the minimum term of imprisonment provided by law for the public offense of which such person was convicted.

"The Board of Prison Terms and Paroles, or any board or commission that may be hereafter given authority so to do, may determine and redetermine after the expiration of the minimum term of imprisonment provided by law, except that in cases in which the minimum term of imprisonment is more than six months, the Board of Prison Terms and Paroles may determine after the expiration of six

months from and after the actual commencement of such imprisonment, what length of time, if any, such person shall be imprisoned, unless the sentence be sooner terminated by commutation or pardon by the Governor of the State.

"When a prisoner has imposed upon him two or more cumulative or consecutive sentences, the Board of Prison Terms and Paroles may determine after the expiration of six months of his first sentence, what length of time he shall serve on all such cumulative or consecutive sentences.

"In case any convicted person undergoing sentence in any of the State prisons commits any infraction of the rules and regulations of the prison board, or escapes while working outside such prison under the surveillance of prison guards, or violates his parole, the Board of Prison Terms and Paroles may revoke any order theretofore made determining the length of time such convicted person shall be imprisoned, and make a new order determining such length of time not exceeding the maximum penalty provided by law for the offense for which he was convicted, unless the sentence be sooner terminated by commutation or pardon by the Governor of the State. Such revocation and redetermination shall not be had except upon a hearing upon the question of such infraction or escape or violation and an adjudication by the board that such prisoner was guilty thereof, which adjudication shall be final. At such hearing such prisoner, unless outside the walls of the prison as an escape and fugitive from justice, shall be present and entitled to be heard and may present evidence and witnesses in his behalf.

------------ Excerpt from page 86746 follows ------------

"Any convicted person undergoing sentence in any of the State prisons, not sooner released under the provisions of this section shall, in accordance with the provisions of existing law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was convicted.

"(2) Certain minimum penalties. The following shall be the minimum term of sentence and imprisonment in certain cases, notwithstanding any other provisions of this code, or any provision of law specifying a lesser sentence:

"(a) For a person not previously convicted of a felony, but armed with a deadly weapon either at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest, five years;

"(b) For a person previously convicted of a felony either in this State or elsewhere, and armed with a deadly weapon, either at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest, ten years;

"(c) For a person previously convicted of a felony either in this State or elsewhere, but not armed with a deadly weapon at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest, five years;

"(d) For a person convicted at one trial of more than one felony, and upon whom are imposed cumulative or consecutive sentences the aggregate of the minimum terms of which exceed ten years, ten years;

"(e) Such minimum penalties shall apply only when such possession of a deadly weapon or previous conviction of a felony as above specified has been charged and admitted or found to be true in the manner provided by law and the minimum terms specified in paragraphs (a) and (b) shall not apply in those cases wherein the property stolen or sought to be stolen is an animal or animals and the manner in which such property is taken or attempted to be taken constitutes the crime of theft and the weapon used during the commission thereof is not used or intended to be used against a person or to resist arrest.

"The words 'deadly weapon' as used in this section are hereby defined to include any instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sand club, sandbag, metal knuckles, any dirk, dagger, pistol, revolver or any other firearm, any knife having a blade longer than five inches, any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club.

"(3) Good credits. The State Board of Prison Directors shall require of every able-bodied prisoner imprisoned in any State prison as many hours of faithful labor in each and every day during his term of imprisonment as shall be prescribed by the rules and regulations of the prison.

------------ Excerpt from page 86747 follows ------------

"In all cases there may be allowed to apply upon the term of imprisonment fixed such credits for meritorious conduct and diligent labor as are or may be authorized by law.

"Except as otherwise provided in this section, every prisoner who has committed no infraction of the rules of regulations of the prison, or the laws of the State, and who performs in a faithful, diligent, industrious, orderly and peaceable manner the work, duties and tasks assigned to him to the satisfaction of the prison officials, and in whose behalf the warden of the prison shall file a report certifying that his conduct and work have been meritorious and recommending allowance of time credits to him, shall upon, but not until, the adoption of such recommendation by the State Board of Prison Directors, be allowed time credit reductions from his term of confinement (instead of and in lieu of such time credits as were heretofore allowed by law) a deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of said term, and correspondingly for any part of the year, where such term of confinement is for more or less than a year. The mode of reckoning credits, recommended by the warden and allowed by the Board of Prison Directors, shall be as shown by the following table:

| Number of years of sentence | Good time that may be earned | Total good time that may be earned | Time to be served if full credits are earned and allowed |
|---|---|---|---|
| 1st year ..... | 2 months | 2 months | 10 months |
| 2nd year ..... | 2 months | 4 months | 1 year 8 months |
| 3rd year ..... | 4 months | 8 months | 2 years 4 months |
| 4th year ..... | 4 months | 1 year | 3 years |
| 5th year ..... | 5 months | 1 year 5 months | 3 years 7 months |
| 6th year ..... | 5 months | 1 year 10 months | 4 years 2 months |
| 7th year ..... | 5 months | 2 years 3 months | 4 years 9 months |
| 8th year ..... | 5 months | 2 years 8 months | 5 years 4 months |
| 9th year ..... | 5 months | 3 years 1 month | 5 years 11 months |
| 10th year ..... | 5 months | 3 years 6 months | 6 years 6 months |

"And so on, through as many years as may be the time of confinement.

"The phrase 'term of confinement' as used herein shall not in any case be construed to include sentences for crimes committed while under commitment to a State prison but in all such cases the credits shall be computed on the separate sentence resulting from such conviction.

------------ Excerpt from page 86748 follows ------------

"If any convict shall assault any keeper, guard, foreman, officer, convict or other person, or threaten or endanger the person or life of anyone, or violate or disregard any prison rule or regulation, or neglect or refuse to do the work to which he is assigned, or be guilty of any misconduct, the

Board of Prison Directors may declare a forfeiture of all time credits theretofore earned by or allowed to him before the commission of such offense and/or all time credits which he may thereafter earn, or the Board of Prison Directors may forfeit such part of such time credits as they may determine; such forfeitures, however, shall be made only by the board of directors after due proof of the offense and notice to the offender unless such offender be outside the walls of the prison as an escape and fugitive from justice, and the board may restore time credits forfeited for good cause shown, and may allow extra credits for extra meritorious conduct and industry.

"(4) Parole. The Board of Prison Terms and Paroles shall have power to establish rules and regulations under which any prisoner who is now, or who hereafter may be imprisoned in any of the State prisons, and who had served the period of time prescribed by this section, may be allowed to go upon parole outside the prison buildings and inclosures.

"No prisoner may be paroled in any case until he has served the minimum term of imprisonment provided by law for the offense of which he was convicted, except that in cases of parole not otherwise specifically provided by this section, or if this section does not specifically provide such minimum sentence, then by other provisions of law, in which the minimum term of imprisonment is more than one year, he may be paroled at any time after the expiration of one-half the minimum term of imprisonment provided by law for the offense of which he was convicted, with benefit of credits, but in no case shall he be paroled until he has served one calendar year, and in any case the matter of parole may be determined by the board at any time after the expiration of six months from and after the actual commencement of such imprisonment.

"No prisoner who has served a previous sentence in a State prison in this or any other State or in a Federal penitentiary may be paroled until he has served at least two calendar years.

"No prisoner who has had imposed upon him two or more cumulative or consecutive sentences may be paroled until he has served at least two calendar years of the aggregate time of such cumulative or consecutive sentences.

"No prisoner confined in the State prison and no prisoner under sentence to the State prison who is convicted of an escape or an attempt to escape from the prison or the guards may be paroled until he has served at least two calendar years from and after the date of his return to the prison after

such conviction.

------------ Excerpt from page 86749 follows ------------

"No prisoner imprisoned under a life sentence may be paroled until he had served at least seven calendar years.

"If neither a maximum nor a minimum term of imprisonment is imposed by law for the offense of which the prisoner was convicted, but a fixed and definite term is imposed by the court, he may be paroled after serving one calendar year of his term.

"At least thirty days before the Board of Prison Terms and Paroles shall meet to consider the granting of a parole to any prisoner or to fix and determine the length of time any prisoner shall be confined, the said board shall send written notice thereof to the judge of the superior court before whom the prisoner was tried and convicted and to the district attorney and the sheriff of the county from which the prisoner was sentenced.

"Prisoners on parole shall remain under the legal custody and control of the State Board of Prison Directors and shall be subject at any time to be taken back within the inclosure of the prison. If any parole prisoner shall leave the State without permission of the Board of Prison Terms and Paroles he shall be held as an escaped prisoner and arrested as such.

"The Board of Prison Terms and Paroles upon granting any parole to any prisoner may impose on the parole such conditions as it may deem proper, and may impose as a condition of the parole, that all or a portion of his credits earned, or to be earned, may be forfeited by order of the State Board of Prison Directors in the event that such prisoner shall break his parole or violate any law of the State, or rule or regulation of the prison, or of the State Board of Prison Directors, or rule of the Board of Prison Terms and Paroles, or any of the conditions of his parole.

"Such forfeiture of credits shall not be had except upon a hearing upon the question of such violation and an adjudication by the board that such prisoner was guilty thereof, which adjudication shall be final. At such hearing such prisoner, unless outside the walls of the prison as an escape and a fugitive from justice, shall be present and entitled to be heard and may present evidence and witnesses in his behalf.

"Full power to make and enforce rules and regulations relating to the parole of prisoners, to grant paroles thereunder, to suspend, cancel and/or revoke paroles without notice, and to retake and imprison any prisoner so upon parole, is hereby conferred upon the Board of Prison Terms and Paroles. The written order of the chairman of the board shall be a sufficient warrant for all officers named therein to authorize such officers to return to actual custody any conditionally released or paroled prisoner.

------------ Excerpt from page 86750 follows ------------

"It is hereby made the duty of all chiefs of police, marshals of cities and villages, sheriffs of counties, and all police, prison and peace officers, and constables to execute any such order in like manner as ordinary criminal process.

"The Governor of the State shall have like power to cancel and revoke the parole of any prisoner. The written authority of the Governor shall likewise be sufficient to authorize any of the officers named therein to retake and return said prisoner to the State prison. His written order cancelling or revoking the parole shall have the same force and effect and be executed in like manner as the order of the chairman of the Board of Prison Terms and Paroles.

"No parole shall be revoked and no credits forfeited without cause, which cause must be stated in the order revoking the parole or forfeiting the credits.

"From and after the suspension, cancellation, or revocation of the parole of any prisoner and until his return to custody he shall be deemed an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be part of his term.

"(5) Rules and Regulations. The State Board of Prison Directors and the Board of Prison Terms and Paroles shall make all necessary rules and regulations to carry out the provisions of this section not inconsistent therewith, and may provide the forms of all documents necessary therefor.

"(6) Application of Section. The provisions of this section are to apply to all prisoners now serving sentence in the State prison, to the end that all times the same provisions relating to sentence, imprisonments and paroles of prisoners shall apply to all the inmates thereof.

"(7) Constitutionality. If, for any reason, any subsection, sentence, clause, phrase, or word of this section be found unconstitutional, such decision shall not affect the validity of the

remaining portions of this section."

For partial validity provisions and repeal of inconsistent acts, contained in the 1931 act, see Historical and Statutory Notes under > Penal Code § 18.

The 1941 amendment rewrote the section to read as follows:

"Every person convicted of a public offense, for which imprisonment in any reformatory or State prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced to be imprisoned in a State prison, but the court in imposing the sentence shall not fix the term or duration of the period of imprisonment."

------------ Excerpt from page 86751 follows ------------

The 1963 amendment added a second paragraph which read as follows:

"When a defendant has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, if it is deemed warranted by the diagnostic study and recommendations approved pursuant to Section 5079, the court may recall the commitment previously ordered and release him under supervision as provided by Section 1203."

The 1967 amendment authorized, in the second paragraph, recall of the "sentence and" commitment and authorized resentence instead of release under supervision.

The 1969 amendment inserted, in the second paragraph following the word "may", the words "within 120 days of the date of commitment on its own motion, or thereafter upon recommendation of the Director of Corrections"

The 1976 amendment rewrote the section to read as follows:

"(a) Every male convicted of a public offense, for which a determinate period of imprisonment in any state prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2. For any male not sentenced under such provision, but who is sentenced to be imprisoned in the state prison the court in imposing the sentence shall not fix the term or duration of the period of imprisonment.

"(b) Every female convicted of a public offense, for which a determinate period of imprisonment in any state prison is now prescribed by law shall, unless such convicted female is placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2. For any female not sentenced under such provisions, but who is sentenced to detention at the California Institution for Women the court in imposing the sentence shall not fix the term or duration of the period of imprisonment."

Section 28 of Stats.1976, c. 1192, p. 5449, provided:

"The state prison sentencing provisions of this act shall be considered to be minimum and maximum prison sentences to be determined by the Adult Authority under Section 1168 or 1168a, as the case may be, and > Section 5077, of the Penal Code, until the operative date of Senate Bill 42 [Stats.1976, c. 1139] of the 1975-1976 Regular Session. On the operative date of Senate Bill 42 [July 1, 1977], the state prison sentencing provisions of this act shall be applied in accordance with the provisions of Senate Bill 42, if Senate Bill 42 is chaptered."

------------ Excerpt from page 86752 follows ------------

The 1977 amendment rewrote the section to read as follows:

"(a) Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2.

(b) For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment."

The 1984 amendment inserted, in subd. (a), "or for which only a single term of imprisonment in state prison is specified".

# EXHIBIT COVER PAGE:

Exhibit: H

Description of this exhibit: "multijurisdiction prisoner" dispo.; of Petitioners Cal. sentence/term.; defines status and decision(s) that shall be rendered; not 5 year Denial; Murder matrix "price tag for crime" at Ika.

Number of pages of this exhibit: 3 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

*1. Amendment filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).*
*2. Amendment of subsection (b) filed 7-14-78 as an emergency; effective upon filing (Register 78, No. 28).*
*3. Certificate of Compliance filed 10-27-78 (Register 78, No. 43).*

*frog 03/16/07, Register 2007, No. 11*

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2368, s 2368. Prehearing Procedures.

***764 15 CCR s 2368**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2368. Prehearing Procedures.**

Upon notification that the board at the central office calendar has ordered a hearing for a multijurisdiction prisoner or parolee, the central office hearing coordinator shall assure that the officials of the other jurisdiction have done the following:

(a) Scheduled the hearing.

(b) Met time limits.

(c) Advised the prisoner or parolee of his rights.

(d) Screened the prisoner's or parolee's requests for witnesses, if applicable.

(e) Notified any necessary witnesses of the date, time and place of the hearing, if applicable.

(f) Disclosed all documentary and physical evidence unless designated confidential under Section 2235.

(g) Decided requests for continuances under Section 2253.

(h) Arranged necessary attorney representation, if applicable.

(i) Otherwise prepared the case for a hearing.

*frog 03/16/07, Register 2007, No. 11*

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2369, s 2369. Documentation Hearing.

***765 15 CCR s 2369**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2369. Documentation Hearing.**

At this hearing, the panel shall review the prisoner's activities and conduct considering the criteria in ss 2290 and 2410 and document activities and conduct pertinent to granting and withholding postconviction credit. This hearing shall be conducted by a one person panel and the panel member shall be a commissioner or deputy commissioner. The hearing shall be scheduled pursuant to s 2269.1. For multijurisdiction prisoners located outside California, the hearing may be conducted over the telephone or by videoconferencing.

*Note: Authority cited: Section 5076.2, Penal Code. Reference: Section 1389.7, 3041, 3041.5, 11190 and 11193, Penal Code.*

*HISTORY*

*1. Amendment of section heading, repealer and new section and newNote filed 6-17-2003; operative 7-17-2003 (Register 2003, No. 25).*

*frog 03/16/07, Register 2007, No. 11*

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2370, s 2370. Initial Parole Hearing: Prisoner Rights.

***766 15 CCR s 2370**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2370. Initial Parole Hearing: Prisoner Rights.**

(a) Multijurisdiction Prisoners Located in California. At the hearing specified in Section 2268 all multijurisdiction prisoners located in California, shall have the rights specified in Sections 2245-2255.

(b) Multijurisdiction Prisoners Located Outside California. At the hearing specified in Section 2268, all multijurisdiction prisoners located outside California shall have the rights specified in Section 2367. The hearing shall be a telephone hearing.

(c) Record. The record of the hearing shall be a verbatim transcript.

(d) Decision. In making a decision concerning parole for multijurisdiction prisoners the hearing panel shall make one of the following decisions considering the factors enumerated:

(1) To discharge the California sentence at the minimum eligible parole date and waive parole when the crime for which the prisoner has been committed to the other jurisdiction is more serious than the California crime or when the prisoner has stronger family, social or economic ties to the other jurisdiction than he does to California.

(2) To set the California term as provided in this Chapter if the prisoner would serve substantially more time for the California crimes than for the crimes committed in the other jurisdiction, the prisoner has stronger social, family or economic ties to California or the panel determines that discharge would be inappropriate.

*Note: Authority cited: Section 5076.2, Penal Code. Reference: Sections 1170.2, 3041, 3041.5 and 3041.7, Penal Code.*

*HISTORY*

*1. Amendment of section title filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).*
*2. New subsection (d) filed 4-4-78; effective thirtieth day thereafter (Register 78, No. 14).*
**767 3. Amendment of subsection (d)(2) filed 8-12-82; effective thirtieth day thereafter (Register 82, No. 33)*

*frog 03/16/07, Register 2007, No. 11*

© 2007 Thomson/West. No claim to original U.S. Govt. works.

15 CCR s 2371, s 2371. Progress Hearing: Prisoner Rights.

***768 15 CCR s 2371**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**

# California Code Of Regulations
## Title 15. Division 2. Board of Prison Terms

Chapter 3. ; No Life Term

CIRCUMSTANCES

| First Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged of physical pain through the use of non-deadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 25-26-27 | 26-27-28 | 27-28-29- | 28-29-30 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 26-27-28 | 27-28-29 | 28-29-30 | 29-30-31 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 27-28-29 | 28-29-30 | 29-30-31 | 30-31-32 |
| IV. Threat to Public order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution or any killing where the prisoner hired and/or paid another person to commit the offense. | 28-29-30 | 29-30-31 | 30-31-32 | 31-32-33 |

## (c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978

CIRCUMSTANCES

| Second Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 15-16-17 | 16-17-18 | 17-18-19 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 16-17-18 | 17-18-19 | 18-19-20 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 17-18-19 | 18-19-20 | 19-20-21 |

(61) Located in California. A multijurisdiction prisoner is located in California if he is a federal contract, federal consecutive or federal concurrent prisoner incarcerated in a federal correctional institution located in California; a California agency prisoner; or an out–to–court prisoner brought before a California court.

(62) Located Outside California. A multijurisdiction prisoner is located outside California if he is a federal compact, federal consecutive or federal concurrent prisoner incarcerated in a federal correctional institution located outside California; a concurrent prisoner; a consecutive prisoner; a WICC prisoner; an ICC prisoner or an out–to–court prisoner brought before a court outside California.

(63) Material Evidence. Evidence which has a substantial bearing on matters in dispute and legitimate and effective influence on the decision of a case.

(64) M.R.D.: Maximum Release Date: the latest date on which a DSL prisoner can be released from confinement. This date is computed by subtracting preprison credit from the period of confinement prescribed by the court and adding this period of time to the reception date. In computing the maximum release date, good time credit is not subtracted. This date shall be recomputed to reflect the addition of any time at large.

(65) Maximum Term. The longest statutory period of time an ISL non-life 1168 or life prisoner may remain under the jurisdiction of the board.

(66) Minimum DSL Date. The earliest date on which a DSL prisoner may be released from prison. This date is computed by subtracting all preprison credit and all possible good time credit from and adding any at–large–time to the period of confinement under the DSL and adding this period of time to the reception date.

(67) Minimum Eligible Parole Date (MEPD). The earliest date on which an ISL or life prisoner may legally be released on parole. If a prisoner is serving both a life or ISL sentence and a determinate sentence and the determinate sentence release date is later than the statutory MEPD for the life or ISL sentence, the determinate sentence release date is the MEPD.

(68) Minimum Term. The shortest statutory period of time an ISL prisoner must remain under the jurisdiction of the board, including time in prison and on parole.

(69) Multijurisdiction Parolee. Any concurrent, California concurrent, California agency, or cooperative parolee.

(70) Multijurisdiction Prisoner. Any federal contract, federal concurrent, federal consecutive, concurrent, consecutive, California agency, WICC or ICC prisoner.

(71) NAEA. The Narcotic Addict Evaluation Authority: the releasing authority for persons civilly committed to the custody of the Director of the Department of Corrections for treatment of narcotics addiction. See Welfare and Institutions Code section 3150 et seq.

(72) Out–to–Court Prisoner. A California prisoner who is temporarily removed from a department institution to be brought before a court to be tried for an offense, to be examined by a grand jury or magistrate, or for any other proceedings.

(73) Outpatient Clinic. See POC.

(74) P&CSD. Parole and Community Services Division: department staff who supervise parolees and provide a variety of field services.

(75) PAL. Parolee at large: an absconder from parole supervision, who is officially declared a fugitive by board action suspending parole.

(76) Parole Agent. An employee or any of his supervisors in the Department of Corrections who is assigned to supervise adult felons and civilly committed addicts released to the supervision of the P&CSD.

(77) Parolee. A felon released from confinement in state prison to supervision in the community.

(78) Parole Consideration Hearing. Any hearing at which a prisoner's parole suitability is considered including an initial parole hearing, subsequent hearing, and rehearing.

(79) Parole Hold. See Hold.

(80) Parole Violation. Conduct by a parolee which violates the conditions of parole or otherwise provides good cause for the modification or revocation of parole.

(81) Parole Violation Extension. An extension of return to custody time for a parolee in revoked status.

(82) Parole Violator. A parolee who is found to have violated parole and who may be reconfined pursuant to Penal Code section 3057. A parolee returned to prison with a new court commitment is not a parole violator under these rules even if he has been found in violation of parole.

(83) POC. Parole Outpatient Clinic: a section of the P&CSD which provides psychiatric and psychological treatment and evaluation of parolees.

(84) Preprison Credit. Credit for time in custody as certified by the court and provided for in Penal Code section 2900.5.

(85) Probable Cause. A state of facts as would lead a person of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion that the charges are true.

(86) Rap Sheet. The "State Summary Criminal History Information" containing the arrest and dispositional information defined in Penal Code section 11105.

(87) RC. Reception center: an institution designated by the director as a center for the reception of prisoners newly committed to the Department of Corrections.

(88) Receiving State. The state which supervises a cooperative parolee or a concurrent parolee.

(89) Regional Administrator. Administrator of a geographical region in the P&CSD.

(90) Regional Hearing Coordinator. The parole agent assigned to coordinate the revocation process within a P&CSD region.

(91) Relevant Evidence. Evidence which tends to prove or disprove an issue or fact in dispute.

(92) Revocation File. A file containing the documents pertinent to a particular revocation proceeding.

(93) Screening Offer. An offer of a disposition to a parolee when revocation or revocation extension charges are pending.

(94) Sending State. The state where a concurrent parolee was imprisoned.

(95) Slough File. A file supplemental to the central file containing bulky or seldom needed records.

(96) Staff Representative. A department employee who assists the board during a hearing.

(97) Subpoena. A means to secure the attendance of a witness at a parole revocation or rescission hearing. It is an order directed to a person requiring that person's attendance at a particular time and place to testify as a witness.

(98) Subpoena Duces Tecum. A means to secure the delivery of documentary evidence to parole revocation or rescission hearings, ordering that person to deliver documentary evidence at a particular time and place and testify about that evidence.

(99) Unadjusted Maximum DSL Date. This date is computed by subtracting preprison credit from the period of confinement under the DSL and adding this period of time to reception date. In computing the unadjusted maximum good time credit is not subtracted. This date does not reflect the addition of any time at large (see Adjusted Maximum DSL Date).

(100) Unit File. See field file.

(101) Unit Supervisor. A supervisor of case–carrying agents in the P&CSD.

(102) WICC Prisoner. A California prisoner who is confined in a penal institution of another state pursuant to the Western Interstate Corrections Compact. (See Penal Code Section 11190.)

(103) Work–Time–Credit: A reduction of the time served for performance in work, training or education programs.

NOTE: Authority cited: Sections 3041, 3052 and 5076.2, Penal Code. Reference: Sections 187, 189, 205, 209, 217.1, 219, 664, 667.51(c), 667.7, 667.75, 669, 2933, 3041, 3046, 3056, 3057, 3060, 4500, 4801, 5075, 5076.1 and 12310, Penal Code; Section 1672(a), Military and Veterans Code; and Initiative, Proposition 7, November 7, 1978, General Election.

# EXHIBIT COVER PAGE:

Exhibit: I

Description of this exhibit: Fed. pre-plea, evidence petitioner wanted to go to trial. 5-8-90.

Number of pages of this exhibit: 15 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

SAN DIEGO, CALIFORNIA - TUESDAY, MAY 8, 1990 - 8:30 A.M.

:: :: ::

THE CLERK: NO. 1 ON CALENDAR, CRIMINAL CASE NO. 88-0769-G, UNITED STATES OF AMERICA VS. MARTIN EDWARD WALTERS FOR HEARING MOTIONS AND JURY TRIAL.

MR. POKORNY: GOOD MORNING, YOUR HONOR. JAMES POKORNY FOR MARTIN EDWARD WALTERS, WHO IS PRESENT IN CUSTODY.

MR. AINBINDER: YOUR HONOR, PRESENT IN THE COURTROOM -- LARRY AINBINDER, WHO IS WITH THE STATE OFFICE OF PUBLIC DEFENDER. I REPRESENT MR. WALTERS ON THE STATE MATTER.

I WONDER, WITH YOUR HONOR'S PERMISSION, IF I MIGHT ADDRESS --

THE COURT: SURE.

MR. AINBINDER: BEFORE I BEGIN, I WOULD LIKE THE RECORD TO REFLECT THAT DEPUTY DISTRICT ATTORNEY EDWARD MILLER, WHO'S PROSECUTING THE CASE IN STATE COURT, IS ALSO PRESENT IN THE GALLERY.

THE COURT: THE RECORD SHOULD ALSO REFLECT THAT I HAVE BEEN IN TOUCH WITH JUDGE RODRIGUEZ, WHO'S THE PRESIDING JUDGE ON THE CASE AT THIS TIME.

MR. AINBINDER: YOUR HONOR, THE REASON I STOOD UP THIS MORNING WAS THAT -- AS YOUR HONOR KNOWS, HE WAS IN SUPERIOR COURT 9, JUDGE RODRIGUEZ' DEPARTMENT, YESTERDAY, ON A TRIAL CALL. YESTERDAY WAS THE ZERO DAY ON THE SPEEDY

TRIAL ACT, AND MR. WALTERS DID NOT WAIVE TIME. AND HE INDICATED TO THE COURT, IN FACT, A WEEK BEFORE THAT HE MIGHT HAVE A LITTLE PROBLEM WITH THE FEDERAL JURISDICTION, MAKING A STATE -- (UNDISCERNIBLE). MR. WALTERS IS IN FEDERAL CUSTODY HERE.

THE STATE CALLED -- MR. WALTERS WAS STILL IN FEDERAL CUSTODY, AND, AS YOUR HONOR KNOWS, MR. RODRIGUEZ MADE A DUE CAUSE FINDING YESTERDAY, AND TRAILED THE CASE FOR A STATUS HEARING AT TWO O'CLOCK.

I KNEW THAT YOUR HONOR'S CASE HAD BEEN DECLARED COMPLEX, AND WAS DECLARED COMPLEX PURSUANT TO A STIPULATION AND ORDER MONTHS AND MONTHS AGO. SO THAT YOUR HONOR HAS HAD NO SPEEDY TRIAL CONCERNS BEFORE YOU WITH RESPECT TO MR. WALTERS.

WHAT I'M ASKING YOUR HONOR TO CONSIDER TODAY IS TO ALLOW THE STATE CASE TO PROCEED FIRST IN LIGHT OF THE FACT THAT WE HAVE SPEEDY TRIAL PROBLEMS OVER IN THE STATE COURT, HELP US AVOID THOSE BOTH BY WRIT AND BY WAY OF APPEAL SHOULD THE CASE RECESS, AND TO ALLOW MR. WALTERS TO APPEAL, WHERE HE HAS NOT WAIVED TIME.

I'M ALSO REPRESENTING TO THE COURT THAT I'M PRE-PARED ON THE STATE CASE, AND HAVE BEEN FOR SOME TIME AS FAR AS TRIAL IS CONCERNED.

IN DISCUSSING THE CASE WITH MR. POKORNY, IT HAD BEEN OUR UNDERSTANDING FOR A NUMBER OF WEEKS, IF NOT

MONTHS, THAT THE STATE CASE WOULD GO FIRST IN LIGHT OF ITS SETTING BEFORE YOUR HONOR'S SETTING.

SO I WOULD ASK THE COURT TO CONSIDER THE FACT THAT WE'RE PREPARED TO GO ON THE STATE CASE -- WE HAVE SPEEDY TRIAL PROBLEMS OVER ON THE STATE CASE, WHEREAS YOUR HONOR HAS NO SPEEDY TRIAL CONCERN OVER HERE -- CONSIDERING ALLOWING MR. WALTERS TO BE RELEASED FROM STATE CUSTODY FOR THE STATE TRIAL, PARTICULARLY IN LIGHT OF THE FACT THAT NONE OF THE OTHER CO-DEFENDANTS ARE GOING TO TRIAL HERE THIS MORNING BECAUSE OF SEVERANCES -- (UNDISCERNIBLE). I WOULD ASK YOUR HONOR TO CONSIDER THAT.

MR. POKORNY: YOUR HONOR, IF I COULD MAKE A COMMENT, TOO.

YESTERDAY AFTERNOON, THE TIME SET FOR MOTION HEARING, WE STATED TO THE COURT FOUR GENERAL REASONS WHY WE WERE NOT PREPARED TO GO. I WOULD REITERATE THOSE AT THIS TIME. I AM MINDFUL OF THE COURT'S SUPERVISORY POWER, AND THE COURT'S CONCERN WITH ADDITIONAL TIME.

I WOULD STATE THAT IF THIS MATTER WENT TO TRIAL FIRST, THE COURT COULD TAKE CARE OF THE MATTER FAIRLY EFFICIENTLY IN FOUR OR FIVE DAYS, AND PERHAPS SAVE THE STATE COURT THE EXPENSE OF A SIX TO EIGHT WEEK JURY TRIAL.

THAT'S CLEARLY NOT THE CASE NOW. THE ADDITIONAL NEWS IS THAT WITH THE SEVERANCE OF MR. LOPEZ THERE'S NOW GOING TO BE TWO TRIALS OVER THERE. PARTICULARLY WITH

IT DOESN'T MAKE SENSE. NOW WE'RE GOING TO HAVE, EFFECTIVELY THREE TRIALS. ONE HERE, ONE FOR LOPEZ IN STATE COURT AND ONE FOR WALTERS IN STATE COURT, WHICH IS REALLY GOING TO DEFEAT THE PURPOSE OF JUDICIAL ECONOMY. AND, YOUR HONOR, AS I STAND HERE TODAY, I'M NOT ADVERSE TO SAY, I'M NOT PREPARED, PERIOD. MR. WALTERS IS AWARE OF THAT, TOO.

I CARRY IN TWO BRIEFCASES FULL OF MATERIAL. I'VE ALMOST FINISHED GOING THROUGH THAT, BUT I'M NOT GOING TO BE AN EFFECTIVE ADVOCATE. THAT CAUSES ME A PROBLEM, AND I THINK THE COURT SHOULD BE AWARE OF THAT.

THE COURT: WELL, MR. WALTERS IS ONE OF THE ONES WHO CAME INTO COURT AND SAID HE WANTED TO TRY IT THAT WAY.

MR. POKORNY: YOUR HONOR, I DON'T THINK MR. WALTERS UNDERSTOOD THE SIGNIFICANCE OF THE STIPULATION THAT WAS ENTERED, I THINK, BY HIS FORMER COUNSEL AS TO COMPLEX LITIGATION. I'VE ATTEMPTED TO EXPLAIN THAT TO HIM, AND EXPLAIN THAT THERE'S NOT REALLY A SPEEDY TRIAL HERE. HOWEVER, YESTERDAY, IN THE JURY BOX HE ASKED ME TO RENEW HIS OBJECTION AND REQUEST THAT THE INDICTMENT BE DISMISSED FOR VIOLATION OF HIS SPEEDY TRIAL RIGHTS, AND I WOULD SIMPLY SUBMIT THAT TO THE COURT AT HIS OWN REQUEST.

MR. FERRARO: HEREIN LIES THE PROBLEM. THE DEFENDANT HAS COME INTO COURT, AND IRRESPECTIVE OF WHICH ATTORNEY HE'S HAD, HE HAS DEMANDED A SPEEDY TRIAL. HE HAS DEMANDED TO GO TO TRIAL.

WELL, WE'RE HERE TODAY READY FOR TRIAL. AS I HEAR WHAT MR. POKORNY SAYS, HE STILL WANTS A SPEEDY TRIAL, BUT MR. POKORNY SAID HE DOESN'T WANT TO GO TO TRIAL. THE GOVERNMENT IS READY.

WITH RESPECT TO THE STATE CASE, I'M MINDFUL OF THE FACT THAT THEY'RE READY. BOTH PARTIES ARE READY. I'VE BEEN IN CONTACT WITH EDWIN MILLER, AND HE'S READY TO PROCEED ON THAT CASE.

HE INFORMED ME, HOWEVER, THAT IT'S NOT TRUE THAT BY GOING FORWARD TODAY IN THIS CASE WITH MARTIN WALTERS THAT WILL FORCE A SEVERANCE IN STATE COURT.

I KNOW YOUR HONOR WAS A SUPERIOR COURT JUDGE AT ONE TIME. YOU'RE PROBABLY MORE FAMILIAR WITH THE LAWS OF THE STATE OF CALIFORNIA THAN I, BUT I DEFER TO YOU AND THE STATE LAWYERS HERE TODAY.

THE GOVERNMENT IS READY TO PROCEED IN THIS CASE. I DON'T KNOW WHAT ELSE TO SAY.

THE CASE HAS BEEN LANGUISHING IN THE COURTS FOR SOME TIME, APPARENTLY BECAUSE MR. WALTERS HAS HAD A VARIETY OF LAWYERS. IT'S TAKEN TIME FOR THEM TO COME UP TO SPEED. BUT I DON'T KNOW WHERE WE GO FROM HERE.

MR. WALTERS IS ASKING FOR A SPEEDY TRIAL. HE WANTS TO GO FORWARD. THE GOVERNMENT IS READY.

THIS IS REALLY A SIMPLE CASE NOW THAT WE'VE PARED IT DOWN. I INTEND TO DISMISS SOME OF THE COUNTS AND NOT

PROVE SOME OF THE OVERT ACTS, WHICH MAKES THIS CASE MORE COMPLICATED, IN AN EFFORT TO RESOLVE THE CASE IN A SHORT TIME.

I THINK WE CAN FAIRLY TRY THIS CASE. WE'VE GOT SOME STIPULATIONS WITH RESPECT TO THE ANALYSIS OF THE DRUGS IN LESS THAN A WEEK. I HAVE ABOUT FIVE CHEMISTS THAT I HAVE TO CALL FOR THE DRUG ANALYSIS, WHICH MAY MAKE IT TAKE A LITTLE LONGER. BUT WITHOUT PROVING SOME OF THE COUNTS ALLEGED IN THE INDICTMENT, AND PARING DOWN THE OVERT ACTS THAT NEED TO BE PROVED, I THINK WE HAVE A PRETTY QUICK CASE.

THE CASE CONSISTS, IN LARGE MEASURE, OF VIDEO TAPES, TESTIMONY OF ANOTHER CO-DEFENDANT.

I SUBMIT THAT WE CAN TRY THIS CASE QUICKLY. IF WE GO ACROSS THE STREET, THE ESTIMATE IS SIX TO EIGHT WEEKS

THE COURT: WHAT ABOUT MR. POKORNY GETTING READY? HAVE YOU TALKED WITH HIM ABOUT WHAT YOU'RE GOING TO PARE DOWN TO?

MR. FERRARO: YES, SIR, LAST NIGHT AND DURING THE PREVIOUS WEEK I'VE BEEN IN CONTACT WITH MR. POKORNY. I SAT IN MY OFFICE AND I MADE AVAILABLE, ESSENTIALLY MY FILE TO MR. POKORNY FOR HIM TO REVIEW TO MAKE SURE HE HAS FULL DISCOVERY IN THE CASE. I'VE SPOKEN TO HIM AS TO WHAT I EXPECT EACH AND EVERY WITNESS TO TESTIFY TO. THE VARIOUS SUBJECT MATTERS THAT I'M GOING TO QUESTION THE WITNESSES

ABOUT.

I INDICATED TO HIM THAT LIKE HIM I'M SOMEWHAT SCRAMBLING TO GET READY TO MAKE SURE I MAKE AN ORDERLY AND UNDERSTANDABLE PRESENTATION.

IF THERE ARE CHANGES DURING THE COURSE OF THE TRIAL IN TERMS OF WITNESSES, I WILL INFORM HIM OF THAT AHEAD OF TIME, AND I WILL, AS BEST I CAN, DESCRIBE THE SUBJECT AREAS THAT I EXPECT TO QUESTION THE WITNESSES ON.

MR. POKORNY: YOUR HONOR, ONE LAST THING. I DON'T MEAN TO BE THE FLY IN THE OINTMENT HERE.

AS I INDICATED TO THE COURT, THERE ARE SOME UN-RULED UPON MOTIONS. I'VE DISCUSSED THESE INFORMALLY WITH MR. FERRARO. ONE OF THEM I'M PREPARED TO FILE TODAY. NOTICE OF MOTIONS, MOTION TO DISMISS THIS INDICTMENT DUE TO OUT-RAGEOUS GOVERNMENT MISCONDUCT. THAT'S NO SURPRISE TO MR. FERRARO, BECAUSE HE OPPOSED THAT VERY SAME MOTION IN THE RELATED CASE OF UNITED STATES VS. UDELL, JUDGE KEEP'S CASE.

HOWEVER, THERE IS VERY POSSIBLY A MERITORIOUS ISSUE AS TO THE ADMISSIBILITY OF THE VIDEO TAPES. I KNOW IN LOS ANGELES THERE WAS A RECENT CASE IN FRONT OF DISTRICT COURT JUDGE MARSHALL, WHERE A MOTION WAS GRANTED SUPPRESSING VIDEO TAPES. AND THE KIND OF CONTEXT THAT WE HAVE HERE.

NOW, THE REAL PROBLEM IS GOING TO BE IF WE START THE TRIAL AND THAT MOTION HASN'T BEEN RULED UPON -- FRANKLY, I HAVEN'T PREPARED IT YET, BUT I REQUESTED THE RIGHT TO

DO THAT -- IT'S GOING TO CAUSE A PROBLEM FOR MR. FERRARO. HE'S GOING TO START OFF BY SAYING, "WELL, LADIES AND GENTLEMEN, WE'VE GOT VIDEO TAPES TO LOOK AT, TOO."

MY POSITION IS GOING TO BE, "NO, YOU DON'T," BECAUSE I WANT TO GET THEM THROWN OUT. I THINK WE BOTH CONCEDE THAT'S THE MAJOR PART OF THIS CASE.

SO, ONCE AGAIN, I THINK THIS ALL MITIGATES TOWARD NOT STARTING THE TRIAL TODAY. I'M NOT TRYING TO CRY OR WARN. I'M TRYING TO POINT OUT OBJECTIVE REASONS WHY IT DOESN'T MAKE SENSE, AND IT'S FAIR TO MR. WALTERS TO TRY IT.

MR. FERRARO: WHAT I DON'T UNDERSTAND, YOUR HONOR IS -- MR. WALTERS HAS BEEN REPRESENTED BY COMPETENT LAWYERS FOR MORE THAN A YEAR. HE'S THE ONE WHO CAME INTO COURT AND TOLD YOU HE HAS BEEN IN JAIL FOR OVER A YEAR. WHY IS IT THAT ON THE MORNING THE TRIAL IS TO BEGIN THERE ARE ALL THESE MOTIONS THAT NEED TO BE BROUGHT BEFORE THIS COURT, EVIDENTIARY IN NATURE? SUPPRESSION OF THE VIDEO TAPES. PERHAPS OTHER SUPPRESSION OF EVIDENCE. WHY IS IT THAT WE WAIT UNTIL THE MORNING OF TRIAL TO BRING FORTH -- I'M NOT COMPLAINING ABOUT MR. PORKORNY NECESSARILY, BECAUSE I KNOW HE HASN'T BEEN HIS LAWYER THIS WHOLE TIME, BUT WE HAVE HAD DANIEL HORWITZ, WHO'S A VERY EXPERIENCED LAWYER IN TOWN. WE'VE HAD EZEKIEL CORTEZ IN THIS COURT, WHO, AS THE COURT IS WELL AWARE, HAS BEEN PRACTICING HERE FOR

SOME TIME. AND MR. POKORNY.

IT'S JUST CURIOUS TO ME THAT WE'RE HERE AT 8:30 ON THE MORNING OF TRIAL, AND THERE ARE ALL THESE MOTIONS THAT HAVEN'T BEEN FILED.

MR. AINBINDER: COULD I ADDRESS ONE SIMPLE THING? IT SEEMS LIKE WHAT WE HAVE IS ON THE FEDERAL CASE THERE'S NO SPEEDY TRIAL ISSUE, AND MR. POKORNY IS TELLING US HE'S NOT PREPARED, BOTH AS TO MOTIONS AND AS TO THE CASE ITSELF.

ON THE STATE CASE WE HAVE A SPEEDY TRIAL PROBLEM, AND I'M TELLING YOU, AND I WOULD REPRESENT TO THE OTHER STATE LAWYER, WE ARE PREPARED. WE'RE READY TO GO.

MR. MILLER IS HERE. HE'S PREPARED. HE'S READY TO GO.

IT SEEMS TO ME TO AVOID APPELLATE PROBLEMS ON BOTH SIDES, PERHAPS THE WISEST THING TO DO IS TO ALLOW MR. WALTERS TO GO BACK INTO STATE COURT, WHERE WE CAN RESOLV THE CASE, SEND IT OUT TO TRIAL, BE PREPARED. MR. POKORNY CAN PREPARE THE MOTIONS HE NEEDS TO THAT WILL ELIMINATE ANY POSSIBLE INEFFECTIVENESS OF -- (UNDISCERNIBLE) ISSUES ON APPEAL IN THE FEDERAL CASE. IT WILL ELIMINATE THE SPEEDY TRIAL ISSUE IN THE STATE CASE, AND BOTH THE PROSECUTOR, STATE AND FEDERAL, WILL STILL GET THEIR BITE AT THE APPLE IN TERMS OF CONVICTING MR. WALTERS.

THE COURT: LET ME TAKE A FEW MINUTES AND THINK ABOUT THAT.

WE'LL GO TO ANOTHER ISSUE, NOW.

(OTHER MATTERS WERE TAKEN UP BY THE COURT, AND THEN THE FOLLOWING PROCEEDINGS IN U.S.A. VS. MARTIN EDWARD WALTERS WERE HAD:)

THE CLERK: NO. 1 ON CALENDAR, CASE NO. 88-0769-G, UNITED STATES OF AMERICA VS. MARTIN EDWARD WALTERS FOR MOTION HEARING.

MR. POKORNY: GOOD AFTERNOON, YOUR HONOR. JAMES POKORNY, APPOINTED COUNSEL FOR MR. WALTERS. HE IS PRESENT IN CUSTODY.

MR. FERRARO: TOM FERRARO FOR THE UNITED STATES.

THE COURT: WE WILL CONTINUE THE MATTER TO TOMORROW MORNING AT NINE O'CLOCK.

* * *

# EXHIBIT COVER PAGE:

Exhibit: J

Description of this exhibit: State Court Habeas, before Parole Hearing on 2-24-05; because Petitioner thought the Agency converted his 25 year term to life, and Objected!

Number of pages of this exhibit: 1 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED
Stephen M. Kelly, Clerk
FEB 15 2005
Court of Appeal Fourth District

| | |
|---|---|
| In re MARTIN E. WALTERS<br><br>on<br><br>Habeas Corpus. | D045658<br><br>(San Diego County<br>Super. Ct. No. CR 103749) |

THE COURT:

The petition for a writ of habeas corpus has been read and considered by Justices Huffman, Nares and Aaron.

Martin Edward Walters pleaded guilty to first degree murder committed in 1988. On January 10, 1991, the court sentenced Walters to prison for the term of 25 years to life. Walters contends the sentencing court did not determine the punishment to be inflicted as required by law and his sentence is "undetermined." He claims the Department of Corrections is "resentencing" him to a life sentence. Walters is mistaken. The punishment for murder in the first degree is either death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life. (Pen. Code, § 190, subd. (a).) The court imposed a legal sentence and the Board of Prison Terms will determine when and if Walters is suitable for parole.

Walters also contends a $5,000 restitution fine imposed at sentencing under Government Code section 13967 should be reduced to the statutory minimum because he does not have the ability to pay the fine and a defendant's ability to pay became a consideration in 1992. The amended minute order dated January 10, 1991, provided by Walters reflects the court ordered him to pay restitution of $3,629 to the victims listed in the probation report and an additional $5,000 fine under Government Code section 13967. That section required the court to impose a separate and additional restitution fine of not less than $100 and not more than $10,000 when the defendant is convicted of one or more felony offenses. Any objection to the amount imposed should have been raised in the trial court and on appeal. Walters's claim of error is untimely.

COPY

# EXHIBIT COVER PAGE:

Exhibit: K

Description of this exhibit:

Number of pages of this exhibit:_______ pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

DECLARATION IN SUPPORT OF PETITIONERS PETITION FOR WRIT OF HABEAS CORPUS (AND EVIDENTIARY HEARING.)

I, MARTIN EDWARD WALTERS SWEAR ON MY SOLMN OATH AND DEPOSE THAT THE FOLLOWING FACTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND SWEAR THIS TO BE TRUE UNDER THE PENALTY OF PERJURY.

1. PETITIONER WILL BE ILLEGALLY CONFINED IN A CALIFORNIA STATE PRISON UNDER C.D.C.R. # E-86183, BECAUSE THE MOMENT PETITIONERS FEDERAL TERM OF IMPRISONMENT HAS EXPIRED, (WHICH IS ANTICIPATED ON 2-28-08) THE STATES PROMISE, TO RUN "ANY TIME PETITIONER RECEIVED IN STATE COURT WOULD BE CONCURRENT TO ANY TIME PETITIONER RECEIVED IN FEDERAL COURT," INEXORABLY WILL BE BREACHED.

2. PETITIONER HAS SHOWN GOOD FAITH IN BRINGING THESE CONTRACTUAL ISSUES TO THE STATES COURTS, WHERE THEY REFUSE TO CONDUCT A CONTRACTUAL INTERPRETATION OF PETITIONERS PLEA AGREEMENT.

3. PETITIONER ASSERTS THAT HAD THE CALIFORNIA COURTS GRANTED PETITIONER AN EVIDENTIARY HEARING PETITIONER WOULD PROVE HE IS ENTITLED TO RELEASE, BECAUSE HIS STATE PRISON TERM HAS EXPIRED.

4 PETITIONER NEEDS A PLENARY REVIEW, BECAUSE PETITIONER CLAIMed FACTS, Made ON AND OFF THE RECORD by the State entitle HIM TO RELIEF. HABEAS CORPUS IS THE PROPER MECHANISM. AND HE KNOWS OF NO OTHER APPROPRIATE OR SPEEDY REMEDY.

5. PETITIONER HAS A DUE PROCESS RIGHT TO ENFORCE THE TERMS OF HIS PLEA AGREEMENT.

6. ON OR ABOUT 4-19-1990, IN SOUTHERN DISTRICT OF CALIFORNIA, IN THE COUNTY OF SAN DIEGO, AT METROPOLITAN CORRECTIONAL CENTER (M.C.C.), WHERE AFFIANT (PETITIONER) WAS HOUSED (FEDERAL PROPERTY) IS WHERE PETITIONER WAS TOLD BY LARRY AINBINDER (PETITIONER'S LAWYER AND AGENT)

THAT DEPUTY DISTRICT ATTORNEY MR. EVAN MILLER (D.D.A.), OFFERED PETITIONER A PLEA BARGAIN, PETITIONER WOULD PLEAD GUILTY TO FIRST DEGREE MURDER OR HE WOULD PROSECUTE PETITIONERS MOTHER AND AUNT, WHO WERE ARRESTED ON DECEMBER 25, 1989, FOR VARIOUS FEDERAL CHARGES, BY FEDERAL AUTHORITIES. PETITIONER REFUSED, BECAUSE HE DID NOT THINK THAT THE D.D.A. COULD LEGALLY DO THAT THREAT.

7. ON OR ABOUT MAY 2, 1990, AT M.C.C., JIM POKORNY (PETITIONER'S FEDERAL LAWYER AND AGENT) TOLD PETITIONER THAT MR. FERRARO ASSISTANT UNITED STATES ATTORNEY (A.U.S.A.) HAD ALSO OFFERED PETITIONER A PLEA BARGAIN, PETITIONER REFUSED. IN BOTH CASES THE PROSECUTORS (FALSELY) CLAIMED PETITIONER FACED LIFE WITHOUT THE POSSIBILITY OF PAROLE IN THE FEDERAL CASE, BOTH PROSECUTIONS USED THE MISREPRESENTATION AS LEVERAGE WHEN PETITIONER WAS ADVISED BY BOTH LARRY AINBINDER AND JIM POKORNY THAT PETITIONER WOULD PROBABLY BE CONVICTED IN FEDERAL COURT, BASED UPON VIEWING VIDEO AND AUDIO TAPED CONVERSATION, ALLEGEDLY SHOWING PETITIONER NEGOTIATING THE PURCHASE OF LARGE QUANTITIES OF PRECURSER CHEMICALS, ALLEGED FOR THE PRODUCTION OF METHAMPHETAMINE.

8. DURING THE CONVERSATION BETWEEN PETITIONER AND MR. POKORNY, MR. POKORNY TOLD PETITIONER, THAT PETITIONER SHOULD SERIOUSLY CONSIDER TAKING DEALS IN BOTH STATE AND FEDERAL CASES, BECAUSE THE DEAL WOULD SAVE HIS FAMILY, AND PETITIONER WOULD BE FREE IN ABOUT 20 YEARS. MR. POKORNY SAID THAT HE AND LARRY AINBINDER HAD BEEN TALKING TO BOTH PROSECUTORS ABOUT RESOLVING ALL PETITIONERS CASES BY PLEA.

9. MR. POKORNY SAID THAT LARRY AINBINDER TOLD HIM THAT HIS (LARRY AINBINDERS) CALCULATIONS INDICATED THAT, IN PETITIONERS CASE, THE TERM FOR FIRST DEGREE MURDER WITH POST CONVICTION CREDITS WOULD RESULT IN A NINETEEN (19) YEAR PERIOD OF CONFINEMENT AND THAT THE ONLY WAY PETITIONER WOULD EXTEND THE ANTICIPATED PERIOD OF CONFINEMENT WAS VIA FORFEITURE OF CREDIT FOR MISBEHAVIOR. PETITIONER REFUSED THE OFFER, AND TOLD MR. POKORNY, HE WOULD THINK ABOUT IT.

///

10.) On or about, 5-4-90, AT THE FEDERAL JAIL HOUSE,

MR. POKORNY SAID THAT HE, MR. FERRARO, MR. MILLER, AND LARRY AINBINDER HAD AN IN CHAMBERS MEETING WITH HON. EARL B. GILLIAM, PRESIDING JUDGE IN PETITIONER'S FEDERAL CASE. ACCORDING TO MR. POKORNY, THE GROUP DISCUSSED THE STATUS OF THE CASES, DISCOVERY ISSUES, AND DISPOSITION OF THE CASES. AT SOME POINT JUDGE GILLIAM TOLD MR. POKORNY IN FRONT OF THE OTHER LAWYERS THAT HE WOULD ORDER PETITIONER TO STAND TRIAL; IMMEDIATELY, DESPITE THE FACT THAT MR. POKORNY DID NOT RECEIVE ALL THE DISCOVERY EVIDENCE THAT THE A.U.S.A. PLANNED ON INTRODUCING AT PETITIONER'S TRIAL, IF PETITIONER DID NOT DISPOSE OF BOTH CASES BY PLEA, AND THE CONVICTION WOULD MAKE THE STATE CASE GO AWAY, BECAUSE PETITIONER WOULD SPEND HIS NATURAL LIFE IN A FEDERAL PENITENTIARY. MR. POKORNY ALSO SAID THAT HON. JUDGE GILLIAM WOULD DENY ALL PETITIONER'S MOTIONS AND THUS, DEPRIVE PETITIONER OF ANY CHANCE OF SUCCESS AT A JURY TRIAL. AS A RESULT, THE PROSECUTIONS SAID THEY WOULD BE CONTENT IF PETITIONER SERVED 20 YEARS IN CUSTODY.

11.) AFTER THE INITIAL RANTS OF DEFIANCE AND ANGER PETITIONER EXPRESSED TO MR. POKORNY ABOUT THE LEGAL SYSTEMS DISGUSTING TACTICS, PETITIONER INQUIRED ABOUT THE "PACKAGE DEAL" PLEA BARGAIN THAT ENSURED PETITIONER WOULD BE FREE, (NOT ELIGIBLE FOR PAROLE!) IN 20 YEARS.

12.) OVER THE NEXT FEW DAYS (AT M.C.C.), PETITIONER WAS INFORMED BY BOTH LARRY AINBINDER AND POKORNY OF THE PROPOSED "PACKAGE DEAL" OFFERS, AND PROVED TO PETITIONER THAT HE WOULD BE RELEASED BETWEEN 19-21 YEARS. BY DOING CALCULATIONS UPON THE PRESCRIBED ANTICIPATED TERMS, POST CONVICTION CREDITS (P.C. § 2931) CONCURRENT TERMS, LOSS OF POST CONVICTION CREDIT (P.C. § 2932). THE FEDERAL CASE, COUNT 1, PRESENTED AN AMBIGUOS RANGE THAT EXPOSED PETITIONER TO L.W.O.P. A TERM LONGER THAN THE 20 YEARS, AND THE COURTS (FEDERAL) WERE SENTENCING OTHER INMATES TO LONGER TERMS THAN THOSE INMATES THOUGHT THEY BARGAINED FOR, AND DESPITE ASSURANCE BY MR. POKORNY THAT HON. E.B. GILLIAM WOULD HONOR OUR DEAL BECAUSE HE (GILLIAM) WAS THE ONE WHO WANTED THE DEAL TO GET DONE, PETITIONER STILL REFUSED THE PLEA BARGAIN.

13.) ON OR ABOUT 5-5-90,

DURING A MEETING, AT M.C.C., MR. AINBINDER TOLD PETITIONER THAT MR. MILLER CONVEYED TO HIM, TO TELL PETITIONER, THAT PETITIONER "WOULD NOT SERVE ONE DAY ON THE MURDER" AND THAT THE PLEA AGREEMENTS CONCURRENT TIME, AND "MULTIJURISDICTIONAL STATUS" ENSURED THAT PETITIONER DID NOT WANT A FIRST DEGREE MURDER CONVICTION ON HIS RECORD AND REQUESTED OTHER CHARGES.

14.) ON OR ABOUT THE NEXT DAY MR. AINBINDER SAID HE SPOKE TO D.D.A. MILLER AND MR. MILLER NEEDED THE FIRST DEGREE MURDER, TO "EFFECTUATE THE DEAL", AND MR. AINBINDER TOLD PETITIONER THAT THE DEAL WAS FOR TIME, THE CHARGE ITSELF DID NOT MATTER. Petitioner accepted the statements as true.

15.) ON 5-8-90, AT THE FEDERAL COURT HOUSE, HONORABLE E. B. GILLIAM INDICATED ON THE RECORD, THAT PETITIONER SHOULD SERIOUSLY CONSIDER DISPOSING OF BOTH CASES BY PLEA OR PETITIONER COULD SPEND HIS NATURAL LIFE IN PRISON. PETITIONER UNDERSTOOD THIS TO MEAN YOUR GOING TO GET A L.W.O.P SENTENCE IF YOU DON'T RESOLVE THIS CASE BY PLEA. AFTER THE HEARING IN THE FEDERAL COURT HOUSE PETITIONER TOLD MR. POKORNY THAT HE "WOULD BE WILLING TO SERVE 20 YEARS IN CUSTODY" (i.e. PLEAD GUILTY) IF:

16.) FACTS — PETITIONER'S CONDITIONS

1. THAT ANYTIME [HE] RECEIVED IN THE STATE CASE WOULD BE CONCURRENT TO ANY TIME HE RECEIVED IN THE FEDERAL CASE. (BECAUSE PETITIONER DID NOT WANT TO SERVE ANY STATE TIME, AND ACCORDING TO THE D.D.A. CONCURRENT TIME ENSURED PETITIONER WOULD BE FREE AT THE EXPIRATION OF HIS FEDERAL SENTENCE).
2. THAT ANY TIME HE RECEIVED IN (BOTH CASES) WOULD BE SERVED IN FEDERAL CUSTODY (BECAUSE [HE] DID NOT WANT TO SERVE ANY TIME IN STATE PRISON)

3. THE STATE WOULD NOT FILE CHARGES AGAINST PETITIONER'S MOTHER OR AUNT. (BECAUSE THE D.D.A. MILLER HAD THREATEND TO PRESS CHARGES AGAINST THEM EARLIER.) THE

4. PLEA WOULD DISPOSE OF ALL CASES, IN BOTH JURISDICTIONS, e.g. NO MORE SUPERCEDING INDICTMENTS, NOR BEING CHARGED IN STATE COURT FOR COUNTS PETITIONER WAS CHARGED WITH IN FEDERAL COURT THAT WOULD BE DISMISSED, BASICLY NO NEW CASES, A GIMMICK PROSECUTORS WERE USING, TO GET CONSECUTIVE TERMS. (BECAUSE THE STATE AND FEDERAL PROSECUTORS WERE PROSECUTING DISMISSED CHARGES FROM ONE JURISDICTION (CAL.) UNDER THE OTHERS CO-JURISDICTION, AND VICE VERSA, TO THE DEMISE OF UNSOPHISTICATED DEFENDANTS. (LIKE ME.)

17.) MR. POKORNY SAID HE WOULD CONTACT ALL THE "OFFICERS OF THE COURT", MR. AINBINDER, MR. FERRARO (A.U.S.A.), MR. MILLER (D.D.A.) AND TELL THEM PETITIONERS CONDITIONS, HIS FEARS, AND HIS REASONS WHY.

18.) ON 5-8-90, MR. POKORNY SAID HE CONTACTED MR. AINBINDER, AND MR. AINBINDER and He, TOGETHER, THEY WOULD ALL, IRON OUT THE LOGISTICS, ("They All", refer's to Prosecutors TOO.)" to effectuate" the 20 Years in Custody agreement.

(18.5)

Representations, promises, inducements, etc., of (A.U.S.A.) D. THOMAS Ferraro, used to obtain Petitioner's guilty pleas in both state and Federal cases. Not limited to:

1. Starting in about may of 1989, up through Plea Bargaining stages and until about July 24, 1990. D. T. Ferraro (A.U.S.A.) convinced Petitioner, his state and federal appointed lawyers; D.D.A. Miller, Evan; and Federal District Court Judge Honorable Earl B. Gilliam; that Petitioner faced life without the Possibility of Parole (L.W.O.P.) in Count (1) one. This was untrue. My point being that when a prosecutor says something is true, his influence carries great weight. Especially in the mind of Petitioner a federalist, whose father a federal Probation officer, instilled deep rooted core beliefs in the honest, fair, and true professionalism in the administration of justice. To Perform with honor and integrity and fundamental fairness.

2. On or about May 2, 1990, D. THOMAS Ferraro, told Petitioner's State and Federal lawyers, Larry Ainbinder and James F. Pokorny (esq.) respectively. That he and D.D.A. Evan Miller would be satisfied if Petitioner served 20 years in custody if Petitioner would agree to Plead guilty in both State and Federal cases (CR 103749 and 88-0769-G-criminal, and [They] wanted my lawyers to tell me of the plea offers and compromise.

3. On or about May 4, 1990, D. THOMAS Ferraro told Petitioner, via counsel, James F. Pokorny and Larry Ainbinder, that Petitioner would serve no more than 20 years should Petitioner accept the Package Deal plea bargain.

4. On 5-9-1990, Petitioner accepted the package daal

Plea agreements, with Petitioner's conditions accepted.

¶ On 5-9-1990, D. THOMAS Ferraro, told Petitioner that the United States government would NOT run whatever Sentence Petitioner received in Federal court concurrent To anytime Petitioner may receive in State Court. Mr. Ferraro made a point to say "it was the State who agreed to run their time concurrent to anytime you may receive in Federal court."

Petitioner was aware of this emphasized point/provision. Their was minor discussion about Post conviction credit (Federal) omitted for the sake of brevity.

These representations by A.U.S.A. D.T. Ferraro were witnessed and affirmed as true by both Petitioners counsel, Larry Ainbinder and James F Pokorny, in the United States District Court, Southern District of California.

# GUILTY PLEAS

19.) (a) ON 5-9-90 IN THE STATE SUPERIOR COURT, IN THE COUNTY OF SAN DIEGO, LARRY AINBINDER INFORMED PETITIONER, THAT, HE, AND MR. POKORNY HAD ADVISED THE D.A., THE D.D.A., THE JUDGES HON. JESUS RODRIGUEZ (STATE) AND HON. EARL B. GILLIAM (FEDERAL), OF PETITIONERS CONDITIONS, FEARS AND REASONS FOR THE CHANGE OF PLEA; (b) AND FURTHER THAT ALL PARTIES AGREED TO PETITIONERS CONDITIONS, AND D.D.A. MILLER WAS GETTING THE PLEA AGREEMENT FORM AND THE MURDER MATRIX, SO THAT HE (D.D.A. MILLER) COULD SHOW PETITIONER THE TERMS PETITIONER WOULD BE EXPOSED TO IN CALIFORNIA'S FIRST DEGREE MURDER MATRIX, IN D.D.A. MILLERS OWN WORDS.
(c) AFTER ABOUT 45 MINUTES, PETITIONER WAS TAKEN INTO COURT ROOM, # 9, AND SAT AT THE DEFENDANTS TABLE (NO JUDGE WAS PRESENT).
(D) MR. AINBINDER BEGAN TO EXPLAIN THE DEAL IN FRONT OF D.D.A. MILLER. WHO NODDED IN AFFIRMATIVE AGREEMENT. (E) PETITIONER ASKED MR. MILLER DIRECTLY IF, THE MURDER MATRIX APPLIED TO MURDERS COMMITTED IN 1988, BECAUSE THE MATRIX PAGE INDICATED AFTER NOV. 8, 1978, (F) D.D.A. MILLER WOULD NOT ANSWER PETITIONER DIRECTLY AND ANSWERED TOWARDS LARRY AINBINDER "YES."

20.) PERPLEXED, PETITIONER ASKED D.D.A. MILLER DIRECTLY IF HE IN FACT TOLD LARRY AINBINDER THAT PETITIONER "WOULD NOT SERVE ONE DAY ON THE MURDER BECAUSE THE STATE SENTENCE WOULD EXPIRE BEFORE THE FEDERAL SENTENCE"? AGAIN, D.D.A. MILLER ANSWERED "YES", TO LARRY AINBINDER.

MAY BE SENSING PETITIONER'S TREPIDATION, LARRY AINBINDER SAID TO D.D.A. MILLER, JUST TALK TO HIM EVAN, WITH ALL THATS GOING ON, HE DOESN'T TRUST THE GOVERNMENT.

21) D.D.A. MILLER HESITANTLY CONFIRMED CONCURRENT TIME; MULTI-JURISDICTIONAL STATUS; HOW HE THOUGHT THAT THERE WAS EVIDENCE INDICATING TORTURE, INDICATING HE BELIEVED PETITIONERS TERM WOULD BE IN THE 30-31-32 YEAR MATRIX BOX.

22) LARRY AINBINDER RESPONDED BY STATING THERE IS NO EVIDENCE OF TORTURE, ALL EVIDENCE INDICATES THIS WAS AN ACCIDENT.

23) D.D.A. MILLER SAID "YOU WILL GET A TERM IN ONE OF THOSE BOXES" (IN THE MURDER MATRIX) AND WHATEVER TERM (PETITIONER RECEIVED) WILL "BE REDUCED BY POST-CONVICTION CREDIT BY 33%". FURTHER, D.D.A. MILLER SAID PETITIONER WOULD BE ELIGIBLE FOR EARLY RELEASE ON PAROLE, HE CROSSED OUT THE 48 MONTHS ON THE FORM AND WROTE 60 (MONTHS), STATING THAT PAROLE WAS <u>NOT</u> A CERTAINTY, BUT POSSIBLE AND THAT WAS UP TO THE PAROLE BOARD.

24) IN PETITIONERS MIND HE WOULD GET ABOUT A 28-29 YEAR TERM, REDUCE THAT BY CREDITS AND PAROLE OF 2 YEARS. THUS, HIS AND LARRY AINBINDERS CALCULATIONS WERE CLOSE ENOUGH TO <u>BELIEVE</u> THAT, PETITIONERS MURDER SENTENCE WOULD EXPIRE BEFORE THE FEDERAL SENTENCE, AND THE CUSTOM MADE PACKAGE DEAL CONCURRENT TIME provision and or multijurisdiction status ENSURED it.

# DEPUTY DISTRICT ATTORNEY'S REPRESENTATION

ON 5-9-90, IN SAN DIEGO COUNTY SUPERIOR COURT, BY DEPUTY DISTRICT ATTORNEY EVAN MILLER, AND WITNESSED AND AFFIRMED AS TRUE BY LARRY AINBINDER (ESQ.), PETITIONER'S COURT APPOINTED COUNSEL, EXPLAINED HOW PETITIONER WOULD BE FREE FROM PRISON AT THE EXPIRATION OF HIS FEDERAL SENTENCE:

HERE IS HOW THE PROCESS WAS EXPLAINED TO PETITIONER (D.D.A.) MR. MILLER SAID:

1. IN ABOUT 3 YEARS [Y]OU WILL GET A PHONE CALL FROM CALIFORNIA AUTHORITIES AT WHAT EVER INSTITUTION YOU MAY BE AT (WE PRESUMED LOMPOC OR LEAVENWORTH), BASICALLY TELLING YOU THAT YOU CAN EARN POST CONVICTION CREDIT 4 MONTHS OFF EACH YEAR IN CUSTODY. (PETITIONER DID NOT KNOW THIS WOULD BE A "MULTIJURISDICTION PRISONER DOCUMENTATION HEARING PURSUANT TO CCR TITLE 15 § 2369").

2. IN ABOUT 15 YEARS, YOU WILL GET ANOTHER PHONE CALL FROM CALIFORNIA PRISON OFFICIALS AT THE PRISON, TELLING YOU THAT YOU'LL BE SCHEDULED FOR A MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING. PETITIONER WAS TOLD THE PAROLING AUTHORITIES WOULD CALCULATE HIS EARNED POST CONVICTION CREDITS AND APPLY THE CREDITS TOWARDS PETITIONER'S TERM. (PETITIONER WAS NOT TOLD THIS WAS THE HEARING WHERE THE BOARD WOULD EITHER:

A.) DISCHARGE PETITIONER'S CALIFORNIA SENTENCE PURSUANT TO CCR TITLE 15 § 2370 (d)(1). OR

B.) SET PETITIONER'S (INDETERMINATE) CALIFORNIA TERM PURSUANT TO TITLE 15 § 2370 (d)(2).

3. HE ALSO SAID BETWEEN 6 TO 18 MONTHS LATER YOU'LL RECEIVE THE DOCUMENTATION TELLING YOU YOUR CALIFORNIA TERM HAS EXPIRED.

THE D.D.A., MR. MILLER NOR COUNSEL EXPLAINED TO PETITIONER THAT THE LAW WAS BASED UPON CALIFORNIA CODE OF REGULATIONS (CCR) TITLE 15, DIVISION 2, ARTICLE 10 FOUND IN SECTIONS 2368-2370. THEY DID NOT TEACH PETITIONER ENOUGH TECHNICAL INFORMATION TO ENSURE PETITIONER TRULY COMPREHENDED, THE SPECIFIC PORTION OF APPLICABLE LAW.

25.) ALTHOUGH PETITIONER SIGNED THE CHANGE OF PLEA FORM INDICATING HE UNDERSTOOD THE TERMS CONTAINED IN THE FORM. IN ALL HONESTY HE DID NOT KNOW:

1. FIRST DEGREE MURDER CARRIED AN INDETERMINATE TERM;

2.(A) THAT THE PROVISION SUGGESTING A 60 MONTH PERIOD OF PAROLE WAS NOT AN EARLY RELEASE (AS FEDERAL LAW STATES);

2.(B) HE DID NOT KNOW THAT PAROLE IN CALIFORNIA WAS A PENAL CONSEQUENCE AND ACCORDING TO C.D.C.R. AND POSSIBLY STATUTE THE APPROPRIATE PAROLE PERIOD IS FOR THE REMAINDER OF PETITIONERS LIFE. (P.C. § 3000.1) NOW, SUBJECTING PETITIONER TO A LIFE TIME OF CONDITIONAL RELEASE.

3. THAT THE TERM PETITIONER OBSERVED WITHIN THE FIRST DEGREE MURDER MATRIX, THAT HE PRESUMABLY BARGAINED FOR, WAS (maybe) CONTINGENT UPON A FINDING OF "PAROLE SUITABILITY".

4. THAT THE CONCURRENT SENTENCE PROVISION MAY NOT ENSURE HIS FREEDOM AT THE EXPIRATION OF HIS FEDERAL SENTENCE.

PETITIONER DID NOT AGREE TO SERVE AN INDETERMINATE SENTENCE, NOR DID HE AGREE TO SERVE A LIFE SENTENCE WITH A MINIMUM TERM OF 25 YEARS, AS C.D.C.R. NOW CLAIMS OR SUGGESTS.

26.) PETITIONER DID NOT AGREE TO SERVE A PENAL CONSEQUENCE, MERELY CALLED "PAROLE", FOR 5 YEARS, NOR DID HE AGREE TO SPEND THE REST OF HIS LIFE ON, THE SUPERVISED RELEASE CALLED, PAROLE.

27.) PETITIONER DID NOT AGREE TO HAVE HIS PRESCRIBED TERM OF IMPRISONMENT, CONDITIONED, UPON A PAROLE BOARDS "FINDING HIM SUITABLE FOR PAROLE" AS A LIFE TERM PRISONER OR AN INDETERMINATE SENTENCED PRISONER "CONSIDERED" A LIFE TERM PRISONER. (WHICH IN AFFECT IS THE SAME SITUATION)

28.) PETITIONER DID NOT AGREE TO HAVE HIS FEDERAL SENTENCE TO RUN CONCURRENT TO HIS STATE SENTENCE, or UP TO A POINT IN TIME, WHERE HE WOULD GO TO STATE PRISON.

## PREJUDICE

29.) PETITIONER WOULD NOT HAVE PLEADED GUILTY TO THE CHARGES HAD HE KNOWN OF ANY, ONE, OF THE ABOVE MENTIONED CONDITIONS, FACTS, MISREPRESENTATIONS OR OMISSIONS.

30.) IN GROUND 1 PETITIONER SEEKS TO ENFORCE THE TERMS, HE SUBJECTIVELY BARGAINED FOR i.e. SPECIFIC PERFORMANCE, BECAUSE THE STATE, MISADVISED, OMITTED, AND MISREPRESENTED THE TERMS, PROMISES, CONDITIONS AND AMBIGUITIES THAT THE STATE CREATED, IN ORDER TO OBTAIN PETITIONERS GUILTY PLEA. PETITIONER SHOULD NOT NOW BE SUBJECTED TO THOSE PREJUDICIAL CONDITIONS, OMISSIONS, MISREPRESENTATIONS ETC. THAT ARE NOW BEING USED TO KEEP HIM IN CUSTODY FOR LONGER THAN HE AGREED TO SERVE, AND POSSIBLY FOR THE REST OF HIS NATURAL LIFE, WHICH FRUSTRATES THE PURPOSE OF THE PLEA.

31.) AlterNATIVELY, SHOULD THE COURT REFUSE TO ALLOW PETITIONER TO ENFORCE THE TERMS THAT HE BARGAINED FOR THEN PETITIONER SEEKS RECISSION OF THE CONTRACTS, BECAUSE THE OMISSIONS (e.g. THE PREREQUISITE OF "FINDING PETITIONER SUITABLE FOR PAROLE" PRIOR TO DETERMINING HIS PRESCRIBED TERM OF PUNISHMENT OR CALCULATING HIS POST CONVICTION CREDITS, IS REDICULOUS.) AND, <u>ARE</u> <u>UNACCEPTABLE</u> CONDITIONS THAT FRUSTRATE THE PURPOSE OF THE PLEA BARGAIN (i.e. LIFETIME INCARCERATION). (Cal. Civ. Code §§ 3390, 3391)

32.) PETITIONER DID NOT PLEAD TO SERVE A LIFE SENTENCE, HE DID NOT PLEAD GUILTY FOR THE MERE HOPE OF RELEASE OR TO BE CONSIDERED FOR PAROLE RELEASE AT AGE 40. HE PLEADED GUILTY TO BE RELEASED FROM INCARCERATION AT THE AGE OF 40!

33.) ON 5-9-1990, PETITIONER PERFORMED AS THE PROSECUTIONS DEMANDED. THUS, IN GOOD FAITH PETITIONER PLEADED GUILTY IN BOTH STATE COURT IN FRONT OF HON. JESUS RODRIGUEZ AND IN FEDERAL DISTRICT COURT (SOUTHERN DISTRICT) IN FRONT OF HON. EARL B. GILLIAM. PETITIONER BELIEVED HE WOULD BE RELEASED FROM CUSTODY BETWEEN 2007-2008.

34.) ON 5-9-90, AFTER PETITIONER SIGNED THE CONTRACT/INSTRUMENT/FORM, D.D.A. MILLER AND LARRY AINBINDER WENT TOGETHER TO GET HON. JESUS RODRIGUEZ, SAN DIEGO COUNTY, SUPERIOR COURT JUDGE FOR THE FORMAL CHANGE OF PLEA PROCEEDINGS, AND TO CALL MR. POKORNY AND D.T. FERRARO (A.U.S.A.) AND GET THE FEDERAL JUDGE HONORABLE EARL B. GILLIAM TO SCHEDULE THE FORMAL CHANGE OF PLEA HEARING FOR THAT SAME DAY.

35.) ACCORDING TO LARRY AINBINDER, EVERYONE WAS READY TO PROCEED AND AFTER THE STATES FORMAL PROCEEDING THE U.S. MARSHALS WOULD TAKE PETITIONER DIRECTLY TO THE SOUTHERN DISTRICT FEDERAL COURT AND PETITIONER WOULD HAVE TO PLEAD GUILTY THERE TOO.

36.) THE JUDGE HON. JESUS RODRIGUEZ, PERFORMED THE CHANGE OF PLEA PROCEEDINGS, CLAIMED HE UNDERSTOOD PETITIONERS CONDITIONS AND PROSECUTIONS PROMISES, READ ME SOME CONSTITUTIONAL TRIAL RIGHTS, BASICLY READ THE FORM, AND PETITIONER PLEAD GUILTY, THE JUDGE FOUND PETITIONER GUILTY. (See change of plea form, incorporated herein, annexed as exhibit A)

37.) EVERYONE EXCEPT BALIFF AND STAFF LEFT THE COURTROOM, PETITIONER SAT IN THE COURTROOM HOLDING ROOM, ALONE AND CRIED; BECAUSE HE WOULD BE IN PRISON FOR 20 YEARS, WHICH WAS LONGER THAN HIS EARLIEST MEMORY IN LIFE.

38.) ON 5-9-90, 30 MINUTES LATER, THE U.S. MARSHALS CAME, HAND CUFFED PETITIONER AND TOOK HIM DIRECTLY TO THE FEDERAL COURTROOM, WHERE ALL THE FEDERAL AND STATE LAWYERS AND HONORABLE EARL B. GILLIAM WERE WAITING, FOR PETITIONER, TO PROCEED IN THE CHANGE OF PLEA HEARING IN PETITIONERS FEDERAL CASE.

IN FEDERAL COURT ON 5-9-90

39.) AS INDICATED BY LARRY AINBINDER, EVERYONE, THE LAWYERS, THE JUDGE, PROSECUTOR APPEARED TO BE READY TO PROCEED, PETITIONER CONSULTED WITH MR. J. POKORNY AND HE ASSURED PETITIONER AGAIN THAT EVERYONE WAS FULLY APPRAISED OF THE PACKAGE DEALS TERMS/CONDITIONS, ON THE FEDERAL SIDE.

40.) PETITIONER SIGNED THE PLEA BARGAIN FORM (THAT ERRONEOUSLY ADVISED EVERYONE THAT PETITIONER FACED L.W.O.P. FOR COUNT ONE) AND WAS FORMALLY ADVISED BY A JUDGE OR MAGISTRATE THAT PETITIONER COULD BE SENTENCED TO LIFE FOR COUNT ONE OF THE INDICTMENT, 88-0769-G-CRIMINAL.

41) PETITIONER HESITATED AND MR. POKORNY ADVISED HIM THAT THE COLLAQUAY WAS A FORMALITY AND TO TRUST HIM.

42) PETITIONER PLEADED GUILTY AS INSTRUCTED IN GOOD FAITH.

43.) HONORABLE EARL B. GILLIAM, STATED ON THE RECORD THAT HIS UNDERSTANDING OF THE PLEA BARGAIN IN STATE AND FEDERAL CASES WERE DEPENDANT UPON EACH OTHER AND INQUIRED INTO THE TERMS AND PROMISES THAT OCCURED IN THE STATE COURT AND BOTH JIM POKORNY AND LARRY AINBINDER BRIEFLY SPOKE OF THE CONDITIONS AND SO DID D. THOMAS FERRARO (A.U.S.A.). THE TERMS OF THE STATES PLEA AGREEMENT WERE BASICALLY STATED ON THE RECORD, THAT ANY TIME PETITIONER RECEIVED IN STATE COURT WOULD BE RUN CONCURRENT TO ANY TIME PETITIONER RECEIVED IN FEDERAL COURT. AND SINCE PETITIONER WAS A "FEDERAL PRISONER AND WOULD REMAIN A FEDERAL PRISONER," HONORABLE EARL B. GILLIAM "WOULD SENTENCE (PETITIONER) UNDER FEDERAL LAW," THESE TRANSCRIPTS ARE IN THE RECORD. (Please see federal guilty plea transcripts, incorporated herein and annexed hereto as exhibit C.)

PETITIONERS REASONABLE BELIEF

44.) ON 5-9-90, AFTER ALL WAS SAID AND DONE, PETITIONER BELIEVED THE FOLLOWING: (FEDERAL CASE 88-0769-G-CRIMINAL).

A.) ALTHOUGH FORWARNED HE COULD RECEIVE A LIFE SENTENCE IN COUNT ONE, THE JUDGE WOULD HONOR THE PACKAGE DEAL, And PETITIONER WOULD RECEIVE 219 MONTHS; FOR COUNT TEN HE WOULD RECEIVE 120 MONTHS, RUN CONCURRENT, WHICH MEANT THAT, HE WOULD NOT SERVE ONE DAY ON THAT CONVICTION, BECAUSE PRESUMABLY PETITIONER WOULD RECEIVE A LONGER SENTENCE FOR COUNT 1. THUS, IT WOULD DEFY LOGIC TO PRESUME COUNT 10 WOULD BE A LONGER PERIOD OF CONFINEMENT, AND HE WOULD, RECEIVE 60 MONTHS for count 13, run consecutive, for a TOTAL OF 279 MONTHS.

B.) FURTHER, PETITIONER BELIEVED HE WOULD EARN 15% POST CONVICTION CREDIT TO REDUCE THAT 279 MONTHS.

PETITIONER CONCLUDED THAT THIS WOULD GET HIM OUT OF PRISON AT 20 YEARS. THUS, EFFECTUATING THE 20 YEARS IN CUSTODY HE AGREED TO SERVE. THIS WAS THE WAY JIM POKORNY EXPLAINED THE EFFECTUATION PROCESS.

45.) IN STATE CASE FOR FIRST DEGREE MURDER, PETITIONER THOUGHT HE WOULD RECEIVE A 28 TO 29 YEAR TERM, NOT AN INDETERMINATE SENTENCE. FURTHER, HE BELIEVED HE WOULD REDUCE THAT TERM BY 33% FOR A PERIOD OF INCARCERATION AT 19 YEARS AND A FEW MONTHS AND HE WOULD BE ELIGIBLE FOR PAROLE FOR UP TO 60 MONTHS ON ANY TERM HE ULTIMATELY RECEIVED. THIS IS HOW PETITIONER understood THE PLEA AGREEMENT AT THE MOMENT HE SIGNED WHAT HE CONSIDERED THE CONTRACT OR INSTRUMENT.

46) AS INCREDIBLE AS THAT MIGHT SOUND TO AN EXPERIENCED JURIS, AN OBJECTIVE REVIEW OF THE CODES, THE RECORDS, LEGISLATIVE HISTORY, D.S.L., INSTRUMENT AND MANY MORE REASONS, WOULD JUSTIFY PETITIONERS BELIEF.

47.) REGUARDLESS, OF PETITIONERS MISUNDERSTANDING THE FACTS (OR MISINTERPRETATION OF THE STATUTE BY THE CALIFORNIA COURTS OR EXECUTIVE BRANCH) OR THE LAWS OF CALIFORNIA, HE REASONABLY BELIEVED HE WOULD BE RELEASED FROM CUSTODY AT THE EXPIRATION OF HIS FEDERAL SENTENCE BECAUSE,

48.) NO MATTER HOW MUCH TIME PETITIONER WOULD RECEIVE IN STATE COURT WOULD BE CONCURRENT TO WHATEVER TIME HE RECEIVED IN THE FEDERAL COURT,

49.) PETITIONER BELIEVED THE STATE SENTENCE WOULD EITHER BE:

1. SHORTER THAN THE FEDERAL SENTENCE; (19 YEARS ACCORDING TO LARRY AINBINDER; 20 BY MR. POKORNY).

2. EQUAL TO THE FEDERAL SENTENCE WITH POST CONVICTION CREDIT; OR

3. THEY USED THE PROMISED "CONCURRENT TIME" PROVISION TO CONTAIN THE LENGTH OF AN INDETERMINATE SENTENCE TO EFFECTUATE THE UNDERLYING AGREEMENT.

4. PETITIONER'S 'MULTIJURISDICTIONAL' STATUS AS DEFINED PURSUANT TO CALIFORNIA'S RULES AND REGULATIONS, TITLE 15, DIVISION 2, CHAPTER 1-3, SECTION 2000 (68). REQUIRED THE BOARD TO EITHER: "DISCHARGE" PETITIONER AT HIS INITIAL PAROLE HEARING PURSUANT TO TITLE 15 § 2730 (d)(1), OR "SET the Term" § 2730 (d)(2) WITHIN THIS CHAPTER, WHICH WOULD BE THE FIRST DEGREE MURDER MATRIX FOUND IN TITLE 15 § 2204.

WHICH THE BOARD FAILED TO DO, AS CLEARLY ESTABLISHED POLICY AND DUE PROCESS REQUIRED.

5. THEY BELIEVED THAT THE ORDER OF CALIFORNIA SUPREME COURT PURSUANT TO IN RE RODRIGUEZ, (1975) 14 CAL. 3d 639, 653-54 N. 18, REQUIRING THE AUTHORITY TO PROMPTLY FIX A "PRIMARY TERM" TERM BASED SOLELY UPON THE CONVICTED OFFENSE AND REGUARDLESS OF PAROLE SUITIBILITY, WITHIN 120 DAYS OF RECEPTION INTO THE DEPARTMENT. (AS PETITIONERS COUNSELOR LARRY AINBINDER TOLD PETITIONER ON 1-10-91, AFTER SENTENCING.) AND THE DEPARTMENT DID, ON 2-26-91, AND SET THE TERM AT 25 YEARS. (see exhibit ___ incorporated herein and attached hereto)

50.) PETITIONER WAS (AND IS) NO LAWYER, HE DID NOT DRAFT THE EFFECTUATING INSTRUMENT HE CAN ONLY ATTEMPT TO UNDERSTAND WHY HIS COUNSEL, THE STATES D.D.A. AND THE JUDGE WOULD BELIEVE THAT AN INDETERMINATE SENTENCE COULD REALISTICLY EFFECTUATE PETITIONERS CONDITIONS, UNLESS THEY ALL BELIEVED THAT THE 25 YEARS TO LIFE, PURSUANT TO P.C. § 190 WAS IN FACT A TRUE (I.S.L.) INDETERMINATE SENTENCE, AS THE 60 MONTH PAROLE PERIOD SUGGESTS. (P.C. § 3000) NOTWITHSTANDING THE FACT THAT CALIFORNIA DOES NOT HAVE THE OPERATIONAL MECHANICAL STATUTES TO OPERATE AN INDETERMINATE SENTENCING SCHEME. (FORMER P.C. §§ 3020-25; 671; 2920 ET. SEQ.; 2940 ET. SEQ., ETC.) WITHOUT THE STATUTORY UNDERPINNINGS TO SUPPORT THE ANTIQUATED DECISSIONAL OPINIONS, HOW DOES CALIFORNIA VALIDLY OPERATE SUCH A SPECIES INTELLIGIBILIS ?

PETITIONER DID NOT DISCOVER THAT THE STATE WOULD ACTUALLY BREACH THE TERMS OF PETITIONERS PLEA AGREEMENT UNTIL JULY OF 2005. WHEN THE PAROLE BOARD DECISSION <u>May be FINAL</u>[1], DENYING HIM PAROLE CONSIDERATION FOR 5 YEARS WHICH WOULD MEAN PETITIONER WOULD BE INCARCERATED BEYOND NOT ONLY THE 25 YEAR DETERMINATE TERM THE STATE COMPUTATED IF PETITIONER WOULD WORK; BUT ALSO LONGER THAN THE FEDERAL TERM; And matrix term; too! PETITIONERS PETITION IS NOT ONLY TIMELY, TECHNICLY IT IS EARLY, BECAUSE TECHNICLY PETITIONERS FEDERAL TERM HAS NOT EXPIRED, and this court has the power to remedy this controversy before the actual injury occurs.

---

FN 1) Petitioner did not receive a multijurisdiction prisoner Initial Parole hearing; appropriate notice, decission (proposed), review, or appeal response. (see title 15, §§ 2000 (68)(70 Now), 2368-70(d); 2040 et seq.)

52.) C.D.C. TOLD PETITIONER, AT RECEPTION CENTER ON 2-26-91, THAT HE HAD A DETERMINATE 25 YEAR TERM, WITH A "RELEASE DATE" ANTICIPATED AT 8-2-2005. ; IN 2006 THE CAL. SUPREME COURT APPEARED TO SUGGEST THE TERM WAS TRUE, NOT THE "LIFE TERM" C.D.C.R. WAS INDICATING IN 2003.

53.) prayer for relief

1. PETITIONER SEEKS TO ENFORCE THE TERMS, PROVISIONS, PROMISES THAT INDURED HIS GUILTY PLEAS; OR RECISSION OF THE CONTRACT, BECAUSE IT WAS INDUCED UPON UNFULLFILLABLE PROMISES.

2. PETITIONER SEEKS A CONTRACTUAL INTERPRETATION OF HIS PLEA AGREEMENTS TO RESOLVE THE AMBIGUITIES AND SETTLE THIS CONFLICT.

3. PETITIONER SEEKS HIS TRANSFER FROM THE CUSTODY OF THE DIRECTOR OF CORRECTIONS, OR WARDEN OF SOLANO STATE PRISON, TO THE CUSTODY OF THE FEDERAL AUTHORITIES IN ORDER THAT HE MAY SERVE HIS SENTENCE UNDER HIS FEDERAL JUDGEMENT OF CONVICTION AND THEREBY GAIN THE BENEFIT OF THE PROVISIONS OF HIS GUILTY PLEA.

54.) IT IS WELL ESTABLISHED, THAT HABEAS CORPUS IS THE PROPER MECHANISM TO ENFORCE THE TERMS OF A BROKEN PLEA AGREEMENT; SECURE CONFINEMENT UNDER THE PROPER AUTHORITY; AND FREE PETITIONER FROM THE ILLEGALITY OF RESTRAINT; AND ULTIMATELY DETERMINE FACTUAL ISSUES NOT CONTAINED ON THE RECORD DURING PLEA BARGAINING.

## VERIFICATION

55.) I, MARTIN E. WALTERS, PRISONER AND PETITIONER UNDER THE PENALTY OF PERJURY SWEAR ON MY SOLMN OATH THAT THE ABOVE MENTION FACTS CONTAINED HEREIN ARE TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE;

Amended ON 7-6-2008
Executed ON: ~~10-10-2007~~

Martin Walters
MARTIN Walters

2 of 3

Martin E. Walters E-86183
California State Prison at Solano
P.O. Box 4000, 6-206L
VACAVILLE CA. 95696
Pro se

FILED
JUL 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN E. WALTERS, Petitioner, vs CA. DIRECTOR OF CORRECTIONS, Respondent, | NO. 08 CV 0924 DMS<br>Points and Authorities in Support of Petition for Writ of Habeas Corpus |

TO: THE HONORABLE JUDGE PRESIDING IN THE ABOVE ENTITLED CAUSE OF ACTION,

I, Martin E Walters, petitioner in the instant matter, hereby submits points and Authorities that may support petitioner's petition for Writ of Habeas corpus.

ORIGINAL
Original
ORIGINAL

CR

# TABLE OF CONTENTS


| | Page No. |
|---|---|
| TABLE OF CONTENTS | 2 |
| TABLE OF AUTHORITIES | 3 |
| Arguement | 4-13(c). |
| Exhibits | 14 |
| Exhibit 1 | 15-18 |
| Exhibit 2 | 20-21 |
| Exhibit 3 | 23-26 |
| Exhibit 4 | 28-35 |
| Varification | 36 |

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

U.S.C.A. CONSTITUTION AMEND. 14.
U.S.C.A. CONSTITUTION AMEND. 5.
U.S.C.A. CONSTITUTION AMEND. 6.

SANTOBELLO VS. NEW YORK, 404 U.S. 257 (1971)
RICKETTS VS. ADAMSON, 483 U.S. 1, 6 N. 3. (1987)
BUCKLEY VS. TERHUNE, 441 F. 3d 688, (9TH CIR. 2006)
BROWN VS. POOLE, 337 F. 3d 1155, 1159 (9TH CIR. 2003)
Atkins Vs. Rivera, 477 U.S. 154 [106 S.Ct. 2456; 91 L.Ed.2d 131] (1986)

## CALIFORNIA

CALIFORNIA CIVIL CODE §§ 1437, 1512, 1550 ET. SEQ, 1565 ET. SEQ., 1598, 1710, 1619-23, 1635, 1649, 1654, 3390-91, 3384-3412; ETC.

PEOPLE V. SHELTON, 37 CAL. 4TH AT 344, 20 CAL RPTR 3d 923 (2004)

IN RE MOSER, 6 CAL. RPTR. 2d 723, 6 CAL. 4TH 342 (CAL. 1993)

IN RE CARABES, 193 CAL. RPTR. 65, 144 CAL APP. 3d 927 (CAL. APP. 5TH DIST. 1983)

CALIFORNIA CODE OF REGULATIONS, TITLE 15 §§ 2370, 2369, 2368, 2000 (70).

California Penal Code § 1389.7.

## Fed. Statutes

28 U.S.C. § 2254 (d) (1) and (2)
28 U.S.C. § 2255

Under Santobello v. New York, 404 U.S. 257, 261-62, 92 S.Ct. 495, (1971), a criminal defendant has a due process right to enforce the terms of his plea agreement. See also Buckley V. Terhune, 441 F.3d 688, 694 (9th cir. 2006); Brown V. Poole, 337 F.3d 1155, 1159 (9th cir. 2003) ("[The defendant's] due process rights conferred by the federal constitution allow [him] to enforce the terms of his Plea agreement.").

In August 2007, when the California Supreme Court summarily denied petitioner's petition for Writ of Habeas Corpus, it had been clearly established federal law for more than a decade That the construction and interpretation of state court plea agreements "and the cocomitant obligations flowing there from are, within broad bounds of reasonableness, Matters of state law." Ricketts V. Adamson, 483 U.S. 1, 6 n.3, 107 S.Ct. 2680 (1987).

In California, "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles," People V. Shelton, 37 Cal.4th 759, 767, 37 Cal. Rptr. 3d 354, 125 P.3d 290 (2006), and "according to the rules as other contracts," People V. Toscano, 124 Cal. App. 4th 340, 344, 20 Cal. Rptr. 3d 923 (2004) (cited with approval in Shelton along with other California cases to the same effect dating back to 1982). Thus, under Adamson, California courts are required to construe and interpret plea agreements in accordance with state contract law.

The analysis regarding the breach of petitioner's plea agreement and remedy to which petitioner is entitled

Page:

is not New to this Court.

The Nineth Circuit Court has previously applied similar principles and rules of construction in Brown and Buckley. In those cases, on the basis of Santobello and Adamson, the Nineth Curcuit held that the state court, in failing to properly apply California contract law when interpreting a plea agreement, had had engaged in an objectively unreasonable application of clearly established federal law under Title 28 U.S.C.A. § 2254(d)(1) Brown, 337 F.3d at 1160 n.2. In petitioner's case, more on point with Buckley, The California Courts not only failed to apply state contract law properly but failed to apply it at all. Buckley, 441 F.3d at 695 hn. 7-8.

Therefore, its decision, is unquestionably contrary to clearly established federal law.

Petitioner seeks a contractual interpretation of his plea agreement to settle the ambiguities of; his sentence; Parole; the length of parole; Concurrent time; Served in federal Custody; and multijurisdictional status; requiring a decision of the paroling authority, to either "discharge" petitioner's California Sentence (C.C.R. title 15 § 2370(d)(1).) or "Set (Petitioner's) term" (within the California's First degree Murder matrix) Pursuant to C.C.R. title 15 § 2370(d)(2). This Was supposed to be used to effectuate petitioners underlying, true agreement, of serving 20 years in custody.

After these ambiguities are settled, allow petitioner to enforce the terms, conditions, promises, or indusements

used to obtain petitioner's guilty pleas.

Should it please this court, petitioner sincerely provides this honorable court an opportunity to prevent a miscarriage of justice, because a plenary review of this extraordinary case would sincerely show, by operation of law, petitioner should be free at the expiration of his federal sentence as designed by the original contracting parties (anticipated at 2-28-2008).

Concomitant Obligations

Had the Central office Calander, California's administration for the Board of Parole Hearings, initiated the appropriate "multijurisdictional prisoner Initial parole Hearing" (C.C.R. title 15 § 2370) Petitioner would have received the appropriate decision (§ 2370(d)). Thus, rendering the current controversey moot.

Because, California's agency (B.P.H.) does not have an appeal process petitioner is forced to seek relief from this court. this Court has original Jurisdiction.

Petitioner respectfully attached a copy of the appropriate Rule and/or regulation, that was supposed to be used to effectuate the true agreement. (please see exhibits A and B incorporated herein and attached hereto.)

Petitioner is entitled to relief.

Parole; Benifit or Penal Consequence?

The issue of Parole is extremely difficult for Petitioner to

explain because parole under State law is not the early release to finish the remainder of a defendants term outside the prison walls, as Federal laws define Parole.

In California (post D.S.L.) parole is served after the term has been completed (Cal. Pen C § 3000 et seq.) [Moser; Carabes; Table of Auth.]

Thus, Petitioner has great difficulty conveying the word parole without offending State and or Federal law. In other words no matter how petitioner utilizes the word parole he will be wrong. Petitioner concludes this abomination is a pure sophism and or Artiface and therefor should be estopped, because it conflicts with federal law. For the same reasons the Federal system abolished parole when it adopted the minimum mandatory sentencing scheme, instead of merely calling "supervised release", Parole ("The New parole"). The U.S. Legislature recognized "parole" means something specific, a grant of leiniency not a 'penal consequence' such as supervised release is. California did not do this. As a result prisoner's seeking judicial relief from federal court are forced to overcome the rules and principles based upon the presumption that parole is a gift, not a penal consequence that parole is, in California. Thus, "no one is entitled to parole" decisions, and yet, the reality is, most every person is released on parole in California. Ironicly, when [h]e reads the U.S. Courts decisions, The reasons, he recognizes the paradox and the sophism called parole.

Thus, whats left is whats petitioner's term? Because only then can the court ascertain that California does not have an Agency to determine the term between the minimum and maximum, as would be required under federal law, when operating and Indeterminate

Sentencing Scheme.

How does California operate an indeterminate sentence when no one appears to be statutorily authorizeed to determine the proportionate term, when former (I.S.L.) Pen. Code §§3020-25 have been abolished since 1977?

Once again petitioner finds himself in a paradox, whether claiming he is I.S.L or D.S.L. sentenced prisoner, he will be wrong.

Same paradox applies when seeking D.S.L. post conviction credits, (P.C. §§ 2930 et. seq.) because they apply to persons sentenced pursuant to P.C. § 1170, not §1168(b), Nor §1168. (Former I.S.L.), who committed crimes prior to 7-1-77.

Petitioner recognizes the difficulty of seeking Judical review when being limited to claims of due process, when there is no way petitioner can ever be totally correct, free from fallacy, or misapplying the legislative intent of the statutes.

Thus, Petitioner concludes the California courts utilized Judicial gloss to operate the ambiguous "25 years to life" (under the Determinate Sentencing Act) must be unconstitutional because it fits no model of a constitutional "Indeterminate Sentence."

Therfor, Petitioner does not adopt the presumption that he has a legitimate indeterminate sentence or that he seeks parole. However Should this court adopt California's version of law, Petitioner is still entitled to relief as a multijurisdiction prisoner, or the provisions of petitioner's plea bargains ambiguities (Cal. Civ. Code § 1649).

Petioner seeks specific performance (C.C.C. § 3390) because his aleged obligation is unascertainable, as the State changes it at will.

# MAIN Issues

Notwithstanding the fact petitioner not only believed that the Sentence for first degree murder carried a "sentence range of 25 years to life", and the plain words used in the statute indicate such.

Petitioner's true issue is that, Petitioner accepted the offer of serving 20 years in custody, on both State and federal cases, made by D. Thomas Ferraro (A.U.S.A.) and Evan Miller (D.D.A.) in San Diego, witnessed by Larry Ainbinder, petitioner's court appointed lawyer, on the State Case and Jim Pokorny, Court appointed lawyer, in the federal case.

Petitioners conditions for pleading guilty were accepted by the prosecutions and judges, according to defense counsels, and are now being dishonored.

All problems stem from the charges used to effectuate the agreement. (i.e. first degree Murder)

Petitioner Wants to enforce all the terms of his Plea Bargain.

Issue #1 The prosecutions agreed that any time Petitioner received in State Court would be concurrent to any time petitioner received in Federal Court.

The State Sentence is now going to be longer than the the Federal time. that was not the agreement.

Issue #2 That anytime petitioner received in state court would be served in federal custody. Now The State refuses to allow petitioner to serve his time in federal custody.

Issue #3 Petitioner Was promised he could receive "early release" on parole of up to 60 months.

Now the State is claiming Petitioner will be on parole for the rest of his life. (P.C. § 3000.1)

Issue #4 Petitioner was told, and believed that he would receive a multijurisdiction Prisoner status and as a multijurisdiction prisoner, he would recieve a decision that would ensure Petitioner's California term expired before Petitioner's federal Sentence.

Petitioner not only was not even recognized as a multi-jurisdictional prisoner, he did not receive a multijurisdiction Prison hearing or a decision to "ensure" has California's term expired before petitioner's federal term, but received a decision that ensured petitioner will be in state custody for a term longer than the federal term and the much longer than Petitioner's agreed upon 20 years of custody.

Issue #5 The prosecutor, D.D.A. Miller promised Petitioner would not serve one day on the Murder because the State Sentence would expire before the federal Sentence; and the Concurrent Sentence ensured that. Now, that is a lie.

Issue #6

Petitioner knows whats wrong and Specific Performance would prove Petitioner's claims. Yet, California Courts continue to misconstrue Petitioner's claims in order to circumvent the enforcement of their unlawful promises that were used to obtain the guilty pleas. (i.e. 5 years parole; concurrent time; multijurisdiction Status; and Served in federal custody.)

not Petitioner was erroneously Sentenced to 25 years to Life.

The State made all these promises and does not want to live up to them, presumably because the promises violate State law.

Issue #7

Petitioner's lawyers also varified the representations as true. Mr. Ainbinder told petitioner and Mr. Pokorny that petitioner would serve 19 years on the first degree murder charge, on (5-8-90 —)5-9-90, in the federal court house and on many occasions leading up to the change of plea.

As increadible as it may appear, should your honor simply examine the multijurisdictional prisoner Initial parole Hearing regulation (title 15 § 2370(d)) you would discover that the regulations do not provide for the unethical "shield" policy requiring a prisoner to be "found suitable for parole" before determining his punishment for the crime.

Petitioner was never told he would have to be found suitable for parole in order to receive his term or to be released from prison. now prison officials condition petitioner to be found suitable for parole (virtually impossible) in order to obtain his term and subsequent freedom. This was not the Deal in Petitioner's case.

That's the problem and "The Issues".

Petitioner can not receive parole on a term that has already expired, any more than he can make the paroling authority recognize his multijurisdictional status or the terms of his plea agreement.

Petitioner knows what he agreed to, and it was not serving life. Petitioner agreed to serve 20 years in custody, with his own conditions, that are now being dishonored by the State's Agencies.

WITH ALL DUE RESPECT PETITIONER DOES NOT UNDERSTAND WHY, THE CALIFORNIA COURTS, ARE REQUIRING PETITIONER TO MAKE A "PRIMA FACIE STATEMENT" TO CLAIM, AS FACT, THAT HE IS "UNLAWFULLY OR ILLEGALLY CONFINED," IN ORDER TO, "ENFORCE THE TERMS OF HIS PLEA AGREEMENT."

DOES PETITIONER ACTUALLY HAVE TO SUFFER IRREPARIBLE INJURY OF OVER INCARCERATION IN ORDER TO ENFORCE THE TERMS OF HIS PLEA AGREEMENT?

EXAMPLE: ON 5-9-90, IN SAN DIEGO COUNTY SUPERIOR COURT, WHEN PETITIONER AGREED TO PLEAD GUILTY ON THE THE CONDITION THAT:

A.) ANY TIME HE RECEIVED IN HIS STATE CASE (#103749) WOULD BE SERVED IN FEDERAL CUSTODY, AND ON 5-20-06 THE STATE REFUSED TO ALLOW PETITIONER TO SERVE HIS TIME IN FEDERAL CUSTODY. WHERE DOES THE ILLEGALITY OF MY CONFINEMENT FIT? OR;

B.) WHEN PETITIONER AGREED TO PLEAD GUILTY ON 5-9-90, THAT HE COULD RECEIVE EARLY RELEASE ON PAROLE FOR UP TO 60 MONTHS AND ON 11-26-06, C.D.C.R. TELLS HIM, HE MUST BE ON PAROLE (CONDITIONAL FREEDOM) FOR THE REMAINDER OF HIS LIFE.

WHERE DOES ILLEGALITY OF CONFINEMENT APPLY?

C.) THAT; ANY TIME PETITIONER RECEIVED IN STATE CASE (# 103749) WOULD BE CONCURRENT TO ANY TIME PETITIONER RECEIVED IN HIS FEDERAL CASE 88-0769-G.

WHEN THE "CONCURRENT TIME" PROVISION WILL NOT BE BREACHED UNTIL PETITIONERS FEDERAL SENTENCE HAS EXPIRED. (2-28-08)

HOW DOES PETITIONER CLAIM HE IS ILLEGALLY CONFINED?

D.) THAT; PETITIONER WOULD RECEIVE MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING (TITLE 15 § 2370) AND THE DECISION (TITLE 15 § 2370 (d) AND (d) (1), OR (d) (2), WHICH WOULD REQUIRE RESPONDENTS TO "DISCHARGE" OR "SET (PETITIONERS) TERM" THAT WOULD ENSURE PETITIONER'S STATE TIME WOULD EXPIRE BEFORE HIS FEDERAL TIME!' WHEN PETITIONER NEVER RECEIVED THE HEARING OR THE DECISION (DESPITE THE FACT IT WAS PROBABLY DUE IN 2005) THAT WOULD EFFECTUATE THE AGREEMENT.

PETITIONER IS PROBABLY WRONG BUT, HE ASSUMES THAT AN ORDER FROM THIS COURT, REQUIRING THE RESPONDANTS TO HONOR THE TERMS AND/OR CONDITIONS OF PETITIONERS PLEA AGREEMENT, AS AN OPERATION OF LAW, PETITIONER WOULD BE FREE AT THE EXPIRATION OF HIS FEDERAL SENTENCE.

THUS, THERE IS NO ATTACK ON THE CONVICTION OR SENTENCE, SIMPLY ORDER RESPONDENTS TO CONDUCT THE APPROPIATE MULTIJURISDICTION PRISONER INITIAL PAROLE HEARING, AND Presumably, ALL WILL BE SETTLED.

Order California to recreate an appeals process for B.P.H., So, Prisoner's are not directed to Seek (presumably Correct) Habeas Corpus relief, for an administrative Issue.

Principles OF LAW THAT Should HAVE Applied

IN CALIFORNIA, "[A]LL CONTRACTS, WHETHER PUBLIC OR PRIVATE, ARE TO BE INTERPRETED BY THE SAME RULES. ..." CAL. CIV. CODE § 1635; SEE ALSO SHELTON, 37 CAL. 4TH AT 766-67; TOSCANO, 124 CAL. APP. 4TH AT 344. A COURT MUST FIRST LOOK TO THE PLAIN MEANING OF THE AGREEMENT'S LANGUAGE. CAL. Civil Code §§ 1638, 1644. IF THE LANGUAGE IN THE CONTRACT IS ambiguous "IT MUST BE INTERPRETED IN THE SENSE IN which the Promisor BELIEVED, AT THE TIME OF MAKING IT, THAT THE PROMISEE UNDERSTOOD IT." CAL. CIV. CODE § 1649. THE INQUIRY CONSIDERS NOT THE SUBJECTIVE BELIEF OF THE PROMISOR BUT, RATHER, THE "OBJECTIVELY REASONABLE" EXPECTATION OF THE PROMISEE. BANK OF THE WEST V. SUPERIOR COURT, 2 CAL. 4TH 1254, 1265 (1992); BADIE V. BANK OF AM., 67 CAL. APP. 4TH 779, 802 N.9 (1998) ("ALTHOUGH THE INTENT OF THE PARTIES DETERMINES THE MEANING OF THE CONTRACT, THE RELEVANT INTENT IS OBJECTIVE - THAT IS, THE OBJECTIVE INTENT AS EVIDENCED BY THE WORDS OF THE INSTRUMENT, NOT A PARTY'S SUBJECTIVE INTENT." (INTERNAL QUOTATION MARKS AND CITATION OMITTED)). COURTS LOOK TO THE "OBJECTIVE MANIFESTATIONS OF THE PARTIES' INTENT ...." SHELTON, 37 CAL. 4TH AT 767. IF AFTER THIS SECOND INQUIRY THE AMBIGUITY REMAINS, "THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST." CAL. CIV. CODE § 1654; SEE ALSO TOSCANO, 124 CAL. APP. 4TH AT 345 ("AMBIGUITIES [IN A PLEA AGREEMENT]

ARE CONSTRUED IN FAVOR OF THE DEFENDANT").

It is ALSO WELL SETTLED (LAW) THAT AN ADMINISTRATIVE REGULATION HAS THE FORCE OF LAW, and is binding on the issueing Agency. Thus, The (B.P.H.) Agency must follow its own rules. (i.e. conduct the multijurisdiction prisoner hearings and dispositive decision Flowing therefrom, C.C.R. Title 15 § 2370 (d), (1) or (2); see Exhibit 1, attached hereto and incorporated herein by reference.)

## CONCLUSION

Petitioner is entitled to some relief.

# EXHIBIT COVER PAGE:

Exhibit: 1

Description of this exhibit: multijurisdiction prisoner regulations, Matrix of terms for first degree murder; and decision of parole panel

Number of pages of this exhibit: 4 pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

*1. Amendment filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).*
*2. Amendment of subsection (b) filed 7-14-78 as an emergency; effective upon filing (Register 78, No. 28).*
*3. Certificate of Compliance filed 10-27-78 (Register 78, No. 43).*
*frog 03/16/07, Register 2007, No. 11*
© 2007 Thomson/West. No claim to original U.S. Govt. works.
15 CCR s 2368, s 2368. Prehearing Procedures.
***764 15 CCR s 2368**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2368. Prehearing Procedures.**

Upon notification that the board at the central office calendar has ordered a hearing for a multijurisdiction prisoner or parolee, the central office hearing coordinator shall assure that the officials of the other jurisdiction have done the following:

(a) Scheduled the hearing.
(b) Met time limits.
(c) Advised the prisoner or parolee of his rights.
(d) Screened the prisoner's or parolee's requests for witnesses, if applicable.
(e) Notified any necessary witnesses of the date, time and place of the hearing, if applicable.
(f) Disclosed all documentary and physical evidence unless designated confidential under Section 2235.
(g) Decided requests for continuances under Section 2253.
(h) Arranged necessary attorney representation, if applicable.
(i) Otherwise prepared the case for a hearing.

*frog 03/16/07, Register 2007, No. 11*
© 2007 Thomson/West. No claim to original U.S. Govt. works.
15 CCR s 2369, s 2369. Documentation Hearing.
***765 15 CCR s 2369**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2369. Documentation Hearing.**

At this hearing, the panel shall review the prisoner's activities and conduct considering the criteria in ss 2290 and 2410 and document activities and conduct pertinent to granting and withholding postconviction credit. This hearing shall be conducted by a one person panel and the panel member shall be a commissioner or deputy commissioner. The hearing shall be scheduled pursuant to s 2269.1. For multijurisdiction prisoners located outside California, the hearing may be conducted over the telephone or by videoconferencing.

*Note: Authority cited: Section 5076.2, Penal Code. Reference: Section 1389.7, 3041, 3041.5, 11190 and 11193, Penal Code.*

*HISTORY*
*1. Amendment of section heading, repealer and new section and newNote filed 6-17-2003; operative 7-17-2003 (Register 2003, No. 25).*
*frog 03/16/07, Register 2007, No. 11*
© 2007 Thomson/West. No claim to original U.S. Govt. works.
15 CCR s 2370, s 2370. Initial Parole Hearing: Prisoner Rights.
***766 15 CCR s 2370**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**
**ARTICLE 10. MULTIJURISDICTION REGULATIONS**

*This database is current through 03/16/07, Register 2007, No. 11*

**s 2370. Initial Parole Hearing: Prisoner Rights.**

(a) Multijurisdiction Prisoners Located in California. At the hearing specified in Section 2268 all multijurisdiction prisoners located in California, shall have the rights specified in Sections 2245-2255.

(b) Multijurisdiction Prisoners Located Outside California. At the hearing specified in Section 2268, all multijurisdiction prisoners located outside California shall have the rights specified in Section 2367. The hearing shall be a telephone hearing.

(c) Record. The record of the hearing shall be a verbatim transcript.

(d) Decision. In making a decision concerning parole for multijurisdiction prisoners the hearing panel shall make one of the following decisions considering the factors enumerated:

(1) To discharge the California sentence at the minimum eligible parole date and waive parole when the crime for which the prisoner has been committed to the other jurisdiction is more serious than the California crime or when the prisoner has stronger family, social or economic ties to the other jurisdiction than he does to California.

(2) To set the California term as provided in this Chapter if the prisoner would serve substantially more time for the California crimes than for the crimes committed in the other jurisdiction, the prisoner has stronger social, family or economic ties to California or the panel determines that discharge would be inappropriate.

*Note: Authority cited: Section 5076.2, Penal Code. Reference: Sections 1170.2, 3041, 3041.5 and 3041.7, Penal Code.*

*HISTORY*
*1. Amendment of section title filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).*
*2. New subsection (d) filed 4-4-78; effective thirtieth day thereafter (Register 78, No. 14).*
**767 3. Amendment of subsection (d)(2) filed 8-12-82; effective thirtieth day thereafter (Register 82, No. 33)*
*frog 03/16/07, Register 2007, No. 11*
© 2007 Thomson/West. No claim to original U.S. Govt. works.
15 CCR s 2371, s 2371. Progress Hearing: Prisoner Rights.
***768 15 CCR s 2371**

**BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS**
**TITLE 15. CRIME PREVENTION AND CORRECTIONS**
**DIVISION 2. BOARD OF PRISON TERMS**
**CHAPTER 3. PAROLE RELEASE**

# California Code Of Regulations
## Title 15. Division 2. Board of Prison Terms

Chapter 3, section 2403

### CIRCUMSTANCES

| First Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged of physical pain through the use of non-deadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 25-26-27 | 26-27-28 | 27-28-29- | 28-29-30 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 26-27-28 | 27-28-29 | 28-29-30 | 29-30-31 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 27-28-29 | 28-29-30 | 29-30-31 | 30-31-32 |
| IV. Threat to Public order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution or any killing where the prisoner hired and/or paid another person to commit the offense. | 28-29-30 | 29-30-31 | 30-31-32 | 31-32-33 |

(c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978

### CIRCUMSTANCES

| Second Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 15-16-17 | 16-17-18 | 17-18-19 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 16-17-18 | 17-18-19 | 18-19-20 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 17-18-19 | 18-19-20 | 19-20-21 |

**BOARD OF PRISON TERMS** **STATE OF CALIFORNIA**

**Records Use Only**

Parole Release Date ____________
YR MO DAY

Attach Prison Calculation Sheet

[ ] PAROLE GRANTED – (YES)
CDC: Do not release prisoner before Governor's review.

[✓] PAROLE DENIED – (NO) 5 years
New Psych Requested

[ ] AGREED UNSUITABLE (Attach 1001A Form) FOR: ______ YEAR(S)
[ ] HEARING POSTPONED/REASON: ____________

**PANEL RECOMMENDATIONS AND REQUESTS**

**The Board Recommends:**

[✓] No more 115's or 128A's
[ ] Work to reduce custody level
[✓] Get self-help*
[✓] Stay discipline free
[✓] Learn a trade*
[✓] Get therapy*
[✓] Earn positive chronos
[ ] Get a GED*

[ ] Recommend transfer to ____________
[ ] Other ____________

* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

**Penal Code 3042 Notices** [ ] Sent Date: December 27, 2004

Commitment Offense(s)

| 187 | Murder 1st |
|---|---|
| Code(s) | Crimes(s) |
| CR103749 | 08 |
| Case #(s) | Count #(s) |

| Date Inmate Came to CDC | Date Life Term Began | Minimum Eligible Parole Date |
|---|---|---|
| 02/21/1991 | 02/21/1991 | 09/01/2005 |

[ ] Initial Hearing [ ] Subsequent (Hearing No.) ______ Date of Last Hearing ______

CDC Representative E. K. Parks
Attorney for Prisoner Maryann Tardiff Address
D.A. Representative Video Conference County San Diego

This form and the Board's decision at the end of the hearing is only proposed and NOT FINAL. It will not become final until it is reviewed.

Chair [signature] Date 2/24/05
Panel Member [signature] Date
Panel Member Date

| NAME | CDC # | PRISON | CALENDAR | DATE |
|---|---|---|---|---|
| Walters, Martin | E86183 | PVSP | February 2005 | 02/24/2005 |

BPT 1001 (REV. 08/03)

INMATE COPY

~~Apr 19, 2008 11:47AM~~ 17

**BOARD OF PRISON TERMS** **STATE OF CALIFORNIA**

**LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION:**

**DENY PAROLE**

[✓] **PAROLE DENIED FOR:** 1 2 3 4 (5) **YEARS**

→ Place the prisoner on the 2/2010 calendar for his next subsequent hearing.

If this decision is final, you WILL NOT get paroled. The Board will send you a copy of the decision. It will indicate the reasons you did not get paroled. If this decision is not final, the Board will set up another hearing. You can read the laws about your hearing. You can find the laws at California Code of Regulations, Title 15, section 2041.

## RECOMMENDATIONS

**The Board Recommends:**

[✓] No more 115's or 128A's
[ ] Work to reduce custody level
[✓] Get self-help*
[✓] Stay discipline free
[✓] Learn a trade*
[✓] Get therapy*
[✓] Earn positive chronos
[ ] Get a GED*

[ ] Recommend transfer to __________
[ ] Other

* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

## HEARING PANEL

Name [signature] Date 2/24/05
Name [signature] Date
Name Date

| NAME | CDC# | PRISON | DATE |
|---|---|---|---|

BPT 1005(b)
(REV 04/04)

INMATE COPY

Apr 13,2006 11:47AM 18

Distribution: White-C File
Canary-BPT
Pink-Prisoner

# EXHIBIT COVER PAGE:

Exhibit: 2

Description of this exhibit: change of plea form, expressed provisions and 5 year parole period. (promises)

Number of pages of this exhibit: 2 pages

JURISDICTION: (Check only one)

____ Municipal Court

____ Superior Court

____ Appellate Court

____ State Supreme Court

X United States District Court

____ United States Circuit Court

____ United States Supreme Court

____ California Department of Corrections. 602 Exhibit.

____ Other: ______________________________

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

FILED
KENNETH E. MARTONE
Clerk of the Superior Court
0253
MAY -9 1990
By: A. PECK, Deputy

People vs. Martin Walters CR No. 103749

DA No. B 46516

## PLEA OF GUILTY/NO CONTEST - FELONY

The defendant in the above-entitled action, in support of his/her motion to change his/her plea(s) in open Court, personally and by his/her attorney, does declare as follows:

1. Of those charges now filed against me in this case, I plead guilty (Guilty/No Contest) to the following violations: (List Crimes and Code Sections) P.C. § 187 Murder, 1st degree (Count 8) Amended Information — MW

1a. **(If Applicable)** I also admit the following enhancement(s)/prior conviction(s) with which I am charged: (List Court, Docket No. and Date of any Prior Conviction) N/A

2. I have not been induced to enter the above plea by any promise or representation of any kind, except: (Briefly state any agreement with the District Attorney.) Dismiss all remaining counts + allegations; D.A. has no opposition to serving sentence in federal custody; concurrent to federal sentence in 89-0769 G; DA agrees to file no charges against either Martha Walters or Carmen Fonseca (Martin Walter's mother and aunt); Dismiss the companion drug case — MW

**RIGHT TO A LAYWER**

3. I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer, or the Court will appoint a lawyer for me if I cannot afford one. — MW

**CONSTITUTIONAL RIGHTS**

I understand that I also have the following constitutional rights, which I now give up to plead either Guilty/No Contest:

| | I understand this right. | I give up this right. |
|---|---|---|
| 4. The right to be tried by a jury, in a speedy, public trial. | MW | MW |
| 5. The right to confront and to cross-examine all the witnesses against me. | MW | MW |
| 6. The right to remain silent (unless I choose to testify on my own behalf). | MW | MW |
| 7. The right to present evidence and to have witnesses subpoenaed to testify in my behalf at no cost to me. | MW | MW |

**CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST**

8a. I understand that I may receive this maximum penalty as a result of my plea: 25 yrs to life years in State Prison, $ 10,000 fine and ~~48~~ 60 months parole, with up to one year return to prison for every parole violation. If I should receive probation (for up to five years), I understand that I may be given up to a year in local custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any terms or conditions of probation I can be sent to State Prison for the maximum term as stated above. — MW

8b. My attorney has explained to me that other possible consequences of this plea may be: — MW

(Circle applicable consequences.)

- (a) Consecutive sentences.
- (b) Loss of driving privileges.
- (c) Commitment to the Youth Authority.
- (d) Registration as a sex offender.
- (e) Registration as an arsonist.
- (f) Ineligibility for probation/presumptive prison. [circled]
- (g) Registration as a narcotics offender.
- (h) Restitution and/or a restitution fine. ($100-$10,000) [circled]
- (i) Serious felony prior/prison prior. [circled]
- (j) Priorable [circled]

9. I understand that if I am not a citizen of the United States a plea of Guilty or No Contest could result in deporation, exclusion from admission to this country, and/or denial of naturalization. N/A

10. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases. N/A

11. I now plead *guilty* (Guilty circled / No Contest) to the charges(s) described in #1 above and admit that on the date charged I: (Describe facts as to each charge in #1.) [MW]

~~[illegible]~~
*lawfully murdered Christine Reyes, alone, my brother Vincent did [illegible] did or assist in any way with her death* D254

11a. **(If Applicable)** I understand that as to any and all prior convictions(s)/enhancements(s) alleged against me in this case, I have all the constitutional rights listed in #3-#7 above. As to any prior convictions alleged, I understand that if I request a jury trial on the current case, the jury would not learn of or decide, the prior conviction(s) unless and until the jury found me guilty on the current charges. *N/A*

11b. **(If Applicable)** I herby admit the prior conviction(s)/enhancement(s) listed in this form, and give up my constitutional rights, including the right to separate jury determination on the issue of the prior conviction(s). *N/A*

12. I do understand that the matter of probation and sentence is to be determined solely by the Court. [MW]

13. **(Harvey Waiver)** The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence. [MW]

14. I am entering my plea freely and voluntarily, without threat or fear to me or anyone closely related to me. [MW]

15a. I am pleading Guilty because in truth and in fact I AM GUILTY [MW]

15b. I understand that a plea of No Contest is the same as a plea of Guilty in this criminal case and for all purposes has the same consequences as a plea of Guilty. *N/A*

16. I am now sober. I have not consumed any drug, alcohol or narcotic within the past 24 hours to the extent that my judgment is impaired. [MW]

17. I declare under penalty of perjury, under the laws of the State of California, that I have read, understood, and initialed each item above, and everything on the form is true and correct. [MW]

Dated: *5-9-90* Defendant's Signature *Martin Walters*

Defendant's Address ____________ Street ____________ City ____________ State ____________ ZIP

Defendant's Telephone No. ( ) - ____________

## ATTORNEY'S STATEMENT

The undersigned states that (s)he is the attorney for defendant in the above-entitled action; that (s)he personally read and explained the contents of the above declaration to the defendant and each item thereof; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty/No Contest; that (s)he personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge explanation of the contents of each item; that (s)he observed defendant date and sign said declaration; that (s)he concurs in defendant's above plea and in defendant's waiver of constitutional rights.

Dated: *5-9-90* *Larry A. [illegible]*
Attorney for Defendant

## INTERPRETER'S STATEMENT (If Applicable)

I, the interpreter in this proceeding, having been duly sworn, truly translated this form and all the questions therein to the defendant in the ____________ language. The defendant indicated that (s)he understood the contents of the form and (s)he then initialed and signed the form.

Dated: ____________ ____________
Court Interpreter

## PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's plea of Guilty/No Contest as set forth above.

Dated: *5.9.90* *Evan Miller*
Deputy District Attorney

## COURT'S FINDINGS AND ORDER

The Court, having questioned the defendant concerning the defendant's constitutional rights, finds that defendant has voluntarily and intelligently waived his/her constitutional rights. The Court finds that defendant's pleas and admissions are freely and voluntarily made, that defendant understands the nature of the charges and the consequences of the plea, and that there is a factual basis for the plea. The Court accepts defendant's plea, and the defendant is hereby convicted on his plea.

Dated: *5/9/90* *[signature]*
Judge of the Superior Court

21

# EXHIBIT COVER PAGE:

Exhibit: 3

Description of this exhibit: opposition to petitioner's motion to withdraw plea, evidences promises petitioner seeks to enforce.

Number of pages of this exhibit: 4 pages

JURISDICTION: (Check only one)

____ Municipal Court

____ Superior Court

____ Appellate Court

____ State Supreme Court

X United States District Court

____ United States Circuit Court

____ United States Supreme Court

____ California Department of Corrections, 602 Exhibit.

____ Other: ____________________

112

0342

FILED
KENNETH E. MARTONE
Clerk of the Superior Court

JAN 08 1991

By: C. BURGESS, Deputy

EDWIN L. MILLER, JR.
District Attorney
EVAN MILLER
Deputy District Attorney
STACY RUNNING
Law Clerk
6002 County Courthouse
San Diego, California 92101
531-4473

Attorneys for Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

SAN DIEGO JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, Plaintiff, v. MARTIN WALTERS, Defendant. | No. CR103749/DA B46516<br>POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY<br>DATE: January 10, 1991<br>TIME: 10:00 A.M.<br>DEPT: S9 |

I

**THE BURDEN IS ON DEFENDANT TO DEMONSTRATE GOOD CAUSE FOR WITHDRAWING HIS GUILTY PLEA BY CLEAR AND CONVINCING PROOF.**

Penal Code section 1018 allows for the withdrawal of a previously entered plea at any time before judgment for good cause. The standard upon which said motion should be granted is a strong showing of clear and convincing proof. (People v. Cruz (1974) 12 Cal. 3d 562, 566; People v. Fratianno (1970) 6 Cal.App.3d 211, 222.)

The broad discretion vested in a court in connection with an evaluation of a motion pursuant to Penal Code section 1018 means a sound judicial discretion, and it will not be an abuse of discretion unless the court's decision exceeds the bounds of reason

COPY

23

0343

in its examination of the circumstances before it. (Mendieta v. Municipal Court (1980) 109 Cal.App.3d 290, 294; People v. McDonough (1961) 198 Cal.App.2d 84, 90.) "While the section is to be liberally construed, and a plea withdrawn for mistake, ignorance, inadvertence, or any other factor overreaching the defendant's free and clear judgment, the facts of such grounds must be established by clear and convincing evidence." (People v. Roper (1983) 144 Cal.App.3d 1033, 1044; People v. Knight (1987) 194 Cal.App.3d 337, 344.)

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision. Brady v. United States (1970) 397 U.S. 742, 756-757. Post plea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. Id.

The court's discretion is to be exercised only after a consideration of all factors necessary to a just result. (Ibid.) In determining whether its ruling will "promote justice," the court is required to consider the rights of the People. Leave to withdraw a plea which will result in inconvenience and expense to the state should not be granted lightly. (Id., at p. 331.)

The court is not bound to give full credence to the statements of a defendant in support of his motion to withdraw his plea, even if uncontradicted, in view of the defendant's obvious interest in the outcome of the proceeding. (People v. Beck (1961) 188 Cal.App.2d 549, 553.)

/ / / / /

24

In this case, the defendant, Martin Walters, is attempting to withdraw the state portion of a federal/state plea bargain package he entered into with the United States Government and the People of the State of California.

The basis for this request is the defendant's contention that he mistakenly believed he would be facing life without possibility of parole for the primary count charged in his federal indictment. The defendant claims that for this reason alone, he accepted the plea bargain package. [See defendant's moving papers at p.2, lines 21 through 26].

However, the People must point out that this defendant had other reasons for accepting this plea bargain. The defendant was charged in Counts 7 and 8 of the state information with kidnapping for ransom with allegations of bodily injury (PC 209(a)) and murder in the first degree (PC 187(a)), respectively. Count 7 mandated a sentence of life without parole. Count 8 had a sentence range of 25 years to life.

In exchange for his plea of guilty to Count 8 of the information (PC 187(a)) the People dismissed Count 7, thereby saving the defendant from the possibility of life without parole in state prison. Furthermore, the People did not oppose the defendant's wish to serve his sentence in federal custody; concurrent with his federal sentence. The People agreed to file no charges against the defendant's mother, Martha Walters, or his aunt, Carmen Fonsica, and also to assist in limiting the amount of time they would serve in federal custody. Finally, the People dismissed the companion drug cases against the defendant that had been trailing along with the

/ / / / /

primary charges. The defendant received the benefit of his bargain with regard to the state charges.

II

**THE DEFENDANT HAS CHOSEN THE WRONG FORUM IN WHICH TO PRESENT HIS CLAIMS**

Assuming arguendo, that the defendant was mistaken about the maximum sentence he could receive in federal court, why is he seeking his remedy in state court where he received the benefit of his bargain and yet, has filed no motion in federal court to withdraw his plea?

**CONCLUSION**

For the reasons stated, it is respectfully requested that defendant's motion be denied.

Dated: January 8, 1991

Respectfully submitted,

EDWIN L. MILLER, JR.
District Attorney

By: Evan Miller
EVAN MILLER
Deputy District Attorney

Attorney for Plaintiff

26

# EXHIBIT COVER PAGE:

Exhibit: 4

Description of this exhibit: opinions of the State Courts (misstateing Petitioner's claims)

Number of pages of this exhibit: 8 pages

JURISDICTION: (Check only one)

_____ Municipal Court

_____ Superior Court

_____ Appellate Court

_____ State Supreme Court

_____ United States District Court

_____ United States Circuit Court

_____ United States Supreme Court

_____ California Department of Corrections, 602 Exhibit.

_____ Other: ______________________________

SAN DIEGO SUPERIOR COURT
CENTRAL DIVISION
CRIMINAL OPERATIONS BUREAU
COUNTY COURTHOUSE • ROOM 3005
220 WEST BROADWAY
P.O. BOX 120128
SAN DIEGO, CALIFORNIA 92112-0128

June 2, 2006

Martin Walters
E-86183 15-D-2-U
C.S.P. Solano
P.O. Box 4000
Vacaville, CA 95696-4000

Dear Mr. Walters

The Petition for Writ of Habeas Corpus you submitted was filed on 04-21-06 and is currently being processed. The court has 60 days to process a habeas corpus petition.

Sincerely,

San Diego Superior Court
Attn: Habeas Corpus Desk
220 West Broadway
San Diego, CA 92101

FILED
Clerk of the Superior Court
JUN 21 2006
By: NORMA TAGUINO, Deputy

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

IN THE MATTER OF THE APPLICATION OF:

MARTIN E. WALTERS,

Petitioner

HC 17872
CR 103749

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THIS COURT, HAVING READ THE PETITION FOR WRIT OF HABEAS CORPUS AND THE FILES IN THE ABOVE CAPTIONED MATTER, FINDS AS FOLLOWS:

On May 5, 1990, Petitioner pled guilty to murder. On January 10, 1991, he was sentenced to an indeterminate term of 25 years to life in prison. The court ordered Petitioner pay restitution to the victims and a restitution fine.

Petitioner previously filed a petition for writ of habeas corpus on October 14, 2004, arguing his sentence was a *determinate* term of 25 years because the court did not aggravate it to "life.". He also argued the Department of Corrections repeatedly set his maximum term at 25 years, but then "resentenced" him to an indeterminate life term. Finally, Petitioner argued the court improperly imposed restitution without determining his ability to pay. This Court denied Petitioner's claims as untimely.

On January 7, 2005, Petitioner filed a petition for writ of habeas corpus with the Fourth Appellate District, Division One (Case No. D045658), raising the same issues raised in his prior petition with this Court. The Court of Appeal denied the petition on February 15, 2005, finding the trial court had imposed a legal sentence, and the Board of Prison Terms would determine when and if he was suitable for parole. The Court of Appeal also found Petitioner's contentions regarding his restitution fine were untimely.

Petitioner appears to have filed a subsequent petition for writ of habeas corpus with the California Supreme Court (Case No. S132581), which was denied January 18, 2006.

Petitioner filed the instant petition for writ of habeas corpus on April 27, 2006. In the instant petition, Petitioner seeks to "enforce the terms of the plea agreement." According to Petitioner, he was "under the impression" he would be released after spending 21 years in custody. However, he claims he has "erroneously" received a sentence of 25 years to life.

In support of his claims, Petitioner has filed, among other things, a request for judicial notice.

Evidence Code section 452, subdivision (d) permits judicial notice of the records of "any court of record of the United States or of any state of the United States." (Evid. Code, § 452, subd. (d).) Defendant seeks judicial notice of two pages purportedly taken from the January 17, 1991 transcript of proceedings which took place in case number 88-0769-G-Criminal, before the Honorable Earl B. Gilliam, Judge of the United States District Court for the Southern District of California. This Court declines to take judicial notice of these pages because the documents offered are neither certified nor provided under subpoena from the Southern District. Thus, this Court has no assurance of their authenticity. "When a party desires the appellate court to take judicial notice of a document or record on file in the court below the parties should furnish the [reviewing] court with a copy of such document or record certified by its custodian." (*Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 791-792.) It is the burden of the party seeking judicial notice to demonstrate a reason for the failure to furnish certified copies. (*Ibid.*) Petitioner has not met this burden. However, the Court notes, even if these pages were properly certified, this Court could only take judicial notice as to the existence of the transcript;

not as to the truth of any of the statements contained therein. (*Id.* at p. 792, citing *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.)

The petition for writ of habeas corpus is also DENIED.

First, "a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him." (*In re Clark* (1993) 5 Cal.4th 750, 767-775, quoting *In re Connor* (1940) 16 Cal.2d 701, 705.) Unless a petitioner can justify the filing of numerous habeas corpus petitions, the reviewing court may summarily deny the current petition in its entirety. (*In re Clark, supra,* 5 Cal.4th, at pp. 767-775.) Here, Petitioner has not explained why he failed to raise the instant claims in any of his prior petitions. Petitioner contends the claim regarding his plea agreement was "unknown until recently." However, Petitioner has already filed at least two prior habeas petitions addressing his sentence. That Petitioner did not at that time "discover" any further basis for his claims does not automatically provide justification for filing successive piecemeal petitions.

Second, even if this Court were to review the merits of Petitioner's claims, the petition would fail. Every petitioner, even one filing in pro per, must set forth a prima facie statement of facts which would entitle him to habeas corpus relief under existing law. (*In re Bower* (1985) 38 Cal.3d 865, 872; *In re Hochberg* (1970) 2 Cal.3d 870, 875 fn 4.) The petitioner then bears the burden of proving the facts upon which he bases his claim for relief. (*In re Riddle* (1962) 57 Cal.2d 848, 852.) Petitioner has not met this burden.

Petitioner has not demonstrated his "impression" that he would be released from custody after twenty-one years was based on anything more than speculation regarding his minimum eligible parole date. In fact, at the time of sentencing, no one has any way of knowing the status of all of the factors that will be considered by the parole board years in the future. That Petitioner would be "eligible" for parole at any given time, is not a guarantee Petitioner would definitely be granted parole at that time.

Petitioner has filed a motion for production of certified transcripts which would allegedly provide prima facie evidence of his claims. However, Petitioner has not made any showing that the certified transcripts he seeks will provide information different from the information

contained in the federal transcripts he has already provided in support of his petition. Petitioner notably has failed to specify in that motion any proposed factual basis for obtaining this material. Factual specificity and particularity are required when seeking a reporter's transcripts and other documents at the taxpayers' expense. (See *People v. Bizieff* (1991) 226 Cal.App.3d 1689, 1702; *United States v. MacCollom* (1976) 426 U.S. 317, 322-325.) Therefore the request for production is denied.

It is emphasized that Petitioner's right of access to these transcripts is ***not*** being denied. However, right of access is not the same as a right to have the taxpayers and/or the County of San Diego pay to make copies of documents. Petitioner has the right, as does any member of the public, to review these files and to request that copies be made of whatever documents are contained therein. The requesting party bears the cost of making copies and there is no legal authority requiring the taxpayer to subsidize this expense. Petitioner may have a friend or relative review the file and have copies made of whatever is contained therein -- for a fee. However, the transcripts Petitioner seeks may not be in the Court file, because transcripts of every hearing are not automatically prepared. In that case, Petitioner would have to contact the court reporter who transcribed the hearings in question to negotiate financial arrangements to pay for what he wants.

For each of the foregoing reasons, the petition for writ of habeas corpus, request for judicial notice and request for production of transcripts are denied. Service of this Order is ordered upon (1) Petitioner; and (2) the San Diego Office of the District Attorney (Appellate Division).

IT IS SO ORDERED.

DATED: June 21, 2006

Robert F. O'Neill

ROBERT F. O'NEILL
JUDGE OF THE SUPERIOR COURT

I hereby certify that the foregoing instrument is a full, true & correct copy of the original on file in this office, that said document has not been revoked, annulled or set aside, and it is in full force and effect.

Attest: JUN 2 1 2006 @ 4:00pm

Clerk of the Superior Court of the State of California, in and for the County of San Diego

By AT Deputy

32

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED Stephen M. Kelly, Clerk
MAY 24 2001
Court of Appeal Fourth District

| | |
|---|---|
| In re MARTIN E. WALTERS<br>on<br>Habeas Corpus. | D050312<br>(San Diego County<br>Super. Ct. No. CR103749) |

THE COURT:

The petition for writ of habeas corpus has been read and considered by Presiding Justice McConnell, and Associate Justices McIntyre and O'Rourke.

Martin Edward Walters pleaded guilty to a first degree murder committed in 1988. The trial court sentenced him to an indeterminate term of 25 years to life in prison and ordered him to pay restitution fines.

Walters asserts the terms of his plea agreement are not being properly enforced. Specifically, he claims the terms of his plea agreement state he is to be released from custody after serving a determinate sentence of 21 years and that the court erroneously sentenced him to 25 years to life. He further asserts the terms of the plea agreement were "obtained by fraud."

Preliminarily, we note procedural bars to Walters's claims. His claim that the terms of his plea agreement are not being enforced is untimely and Walters has not established good cause for the delay in bringing the claim. (*In re Robbins* (1998) 18 Cal.4th 770, 780.)

In any event, Walters has failed to state a prima facie case for relief. To satisfy this requirement, the petition must state fully and specifically the facts justifying relief. It must also include reasonably available supporting evidence, including trial transcripts and/or affidavits or declarations. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) Conclusory allegations made without any explanation of the basis for them do not support the granting of relief or even an evidentiary hearing. (*Ibid.*)

Walters has not shown that he would be released from custody after serving a 21-year sentence. The sentencing order clearly states Walters received a sentence of 25 years to life. Further, Walters pleaded guilty to first degree murder. The punishment for murder in the first degree is either death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life. (Pen. Code, § 190, subd. (a).) The court imposed a legal sentence.

Also, there is nothing in the record showing the terms of the plea agreement were obtained under conditions of fraud or duress. A review of the guilty plea form shows Walters's initials appear next to the statement asserting he was not induced to enter his plea. The record shows Walters filed a motion to withdraw the plea following its entry. The trial court denied the motion. Walters has not stated a prima facie case for relief. (*People v. Duvall, supra,* 9 Cal.4th at pp. 474-475.)

The petition is denied.

McINTYRE, Acting P. J.

Copies to: All parties

Court of Appeal, Fourth Appellate District, Div. 1 - No. D050312
**S153765**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re MARTIN E. WALTERS on Habeas Corpus

---

The petition for review is denied.

SUPREME COURT
FILED

AUG 15 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

## CONCLUSION

Petitioner is entitled to relief.

## VARIFICATION

I Declare under the penalty of perjury that the foregoing is true and correct to the best of my knowlege. This declaration was executed at California State Prison - Solano, in Vacaville California, executed on January 3, 2008.

Martin Walters

MARTIN WALTERS
Pro Per Petitioner

Martin Edward Walters #E-86183
C.S.P. - Solano 6-206L
P.O. Box 4000
Vacaville, CA. 95696

FILED
JUL 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY KWH DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN EDWARD WALTERS, Petitioner, v. D.K SISTO, Warden, Defendants. | Civil No. ~~08cv167 DMS (NLS)~~ 08CV0924 DMS<br>Declaration Is Support of Petitioners opposition to Respondents motion to dismiss |

I, Martin Edward Walters, declare under penalty of perjury the following is true:

Petitioner's explanation of why he believed

1. 25 years to life carried a determinate Sentence between 25 yrs. And life.
2. Penal Code § 190 language indicates Cal. Legislature intended for determinate terms or D.S.L./P.C. § 1170, with post conviction credits and 25 year Term in P.C. § 190.4. Which either proves an indeterminate Sentence is either illegal or the Statute is to ambiguous for the public to ascertain.
3. Also to show that Petitioner via Counsel, believed he would serve 19-20 years and that the Prosecutor's words lead him to believe the charge carried a sentence range of, and his actions of provideing terms, not mentioning Parole Suitability prerequisite, nor objecting to Petitioner's express expectation that he would be released at age 40. NEVER Life, or "Considered Life"! (See Exhibits D, incorporated herein by reference)

ON 5-9-90, WHETHER RELEVENT OR NOT, AT THE MOMENT PETITIONER SIGNED THE CHANGE OF PLEA FORM PETITIONER BELIEVED THAT CALIFORNIA'S PUNISHMENT FOR FIRST DEGREE MURDER (P.C. § 190 et. SEQ.) WAS A DETERMINATE TERM BETWEEN 25 YEARS TO LIFE, NOT AN "INDETERMINATE TERM OF 25 YEARS TO LIFE." BECAUSE OF THE FOLLOWING REASONS:

THE STATUTE:

A.) THE STATUTE (P.C. § 190) DOES NOT INCLUDE THE WORD "INDETERMINATE"

B.) THE LANGUAGE FOUND IN P.C. § 190 (A), INDICATING THE PENALTY TO BE APPLIED SHALL BE FOUND IN SUBSEQUENT SECTIONS (P.C. § 190.4) THUS, NOT FOUND IN SECTION 190 (A) ITSELF.

C.) P.C. § 190.4 IS THE ONLY PLACE THAT DESCRIBES A SITUATION WHERE A PERSON WHOSE FIRST DEGREE MURDER CONVICTION WITHOUT SPECIAL CIRCUMSTANCES FOUND TRUE, WOULD RECEIVE A SENTENCE, IMPOSED BY THE COURT, FOR A TERM OF 25 YEARS, NOT AN "INDETERMINATE SENTENCE OF 25 YEARS TO LIFE."

D.) AND THE POST-CONVICTION CREDIT FOR PERSONS SENTENCED PURSUANT TO P.C. § 1170 (A.K.A. D.S.L.) PORTION OF P.C. § 190 SUB. PARAGRAPH 3, WHERE THE LANGUAGE STATES A MINIMUM "TERM OF 25 YEARS... IMPOSED PURSUANT TO THIS SECTION..."; NOT 25 YEARS TO LIFE, NOR INDETERMINATE TERM OF 25 YEARS TO LIFE.

E.) NO PERSON SHALL BE RELEASED ON PAROLE PRIOR TO SUCH TIME, LANGUAGE DOES NOT SAY "ELIGIBLE FOR PAROLE RELEASE OR ELIGIBLE FOR PAROLE CONSIDERATION." 1

THUS, PETITIONER NOT ONLY BELIEVED THAT THE STATUTE SUGGESTED A DETERMINATE SENTENCE, BUT EVEN TODAY CAN NOT COMPREHEND HOW ANY CITIZEN WOULD INTERPRET THE STATUTE, (P.C. § 190-190.5) TAKEN AS A WHOLE, WAS FOR AN "INDETERMINATE" SENTENCE. ESPECIALLY CONSIDERING THE WORD "INDETERMINATE" IS NOWHERE IN THE STATUTE, AND 25 YEARS (P.C. § 190.4 (A)) IS. (twice)

THUS, EVERY DIRECTION PETITIONER FOLLOWED INDICATED A DETERMINATE SENTENCE. HOW IS IT FAIR THAT A PERSON GUILTY OF FIRST DEGREE MURDER IN P.C. § 190.4 (A)(5) GETS A 25 YEAR SENTENCE FROM THE COURT (NOT B.P.H.) AND PETITIONER HAS TO GET AN INDETERMINATE SENTENCE FOR FIRST DEGREE MURDER? (see exhibit A, ATTAChed hereto and incorporated herein by references)

(FN.1) Although Petitioner did not know on 5-9-90, Cal. Legislature knew, "Parole" (in Cal.) is a "penal consequence" served after the term when P.C. § 190 was enacted in 1978. (P.C. § 3000; D.S.L.)

# REASON #2

A.) THE D.D.A., EVAN MILLER, PROVIDED PETITIONER WITH THE PRESCRIBED DETERMINATE TERMS, RANGEING FROM 25-33 YEARS, CLAIMING AND INDICATING THAT THE PUNISHMENT PETITIONER WOULD RECEIVE WAS THE PUNISHMENT IN YEARS CONTAINED WITHIN THIS MATRIX (ATTACHED HERETO AND INCORPORATED HERE IN AS EXHIBIT B ) COMMENSURATE TO THE FACTS IN PETITIONER'S CASE, BASED SOLELY UPON THE CRIME WITH NO MENTION OF A CONDITION REQUIRING A "SUITIBILITY" PREREQUSITE.

B.) THE D.D.A. STATED THAT FIRST DEGREE MURDER HAD A "SENTENCE RANGE OF 25 YEARS TO LIFE." NOT AN INDETERMINATE SENTENCE OF 25 YEARS TO LIFE. (See exhibit d.)

C.) PROBATION REPORT WAS EVEN WRITTEN TO THAT EFFECT, TOO. (The report was written months later.)

# REASON #3

THE CHANGE OF PLEA FORM ITSELF:

A.) THE FORM "ADVISING" PETITIONER OF THE MAXIMUM POTENTIAL CONSEQUENCE THAT MAY BE IMPOSED, SECTION 8(A) (ATTACHED HERETO AND INCORPORATED HEREIN, AS EXHIBIT C ). DOES NOT USE THE WORDS "INDETERMINATE", AND PETITIONER DID NOT AGREE TO SERVE AN INDETERMINATE TERM. (Although he is entitled to relief as such, Title 15 § 2370 (d)(1) or (2).)

B.) PETITIONER IS "ADVISED" OF A POSSIBLE $10,000 FINE ALTHOUGH PETITIONER DID NOT "AGREE" TO PAY $10,000. (Petitioner did not agree to serve "Life" either!)

C.) ADVISES PETITIONER OF A 60 MO. PERIOD OF PAROLE. THUS, PETITIONER REASONABLY CONCLUDED, THAT HE WOULD HAVE TO HAVE A TERM, (DETERMINED) IN ORDER TO APPLY THE 60 MO. PERIOD OF PAROLE TOWARDS, BECAUSE PAROLE IS EARLY RELEASE UPON THE TERM (IMPOSED) IN ORDER TO SERVE THE REMAINDER OF THE TERM OUTSIDE THE PRISON WALLS, ACCORDING TO FEDERAL LAW.

D.) No mention of "parole suitability" to fix a proportionate term.

# REASON #4 surrounding circumstances "Phrases"

PETITIONER WAS ALSO MISADVISED THAT HE FACED "10 TO LIFE" IN THE FEDERAL CASE 88-0769-G, 10 YEARS WAS THE MINIMUM AND LIFE THE MAXIMUM, PURSUANT TO THE FEDERAL GUIDELINES EFFECTIVE ON 11-1-88. HOWEVER, PETITIONER WAS SHOWN THE GUIDELINE MATRIX, FOR HIM, LEVEL 36, CRIMINAL HISTORY CATAGORY 1, EQUATED TO A TERM OF MONTHS, NOT AN INDETERMINATE SENTENCE, EVEN THOUGH IT WAS PHRASED "10 TO LIFE", BY MY COUNSEL, THE SAME WAY "25 TO LIFE" WAS "PHRASED."

A Word or phrase association similar to "Construcing a statute" and how the State will now attempt to exploit federal law with "Life Prisoner", "Parole", "Indeterminate Sentence", etc..

Petitioner hates to admit just how ignorant and unsophisticated he was.

## TERM FOR FIRST DEGREE MURDER

IF YOU WERE MARTIN WALTERS AND THE D.D.A. Mr. MILLER TOLD (P.C. § 1192.7) YOU, "YOU WON'T SERVE ONE DAY ON THE MURDER" BECAUSE "THE STATE TERM FOR MURDER WOULD EXPIRE BEFORE THE FEDERAL TERM", AND AS PROOF OFFERED THE FIRST DEGREE MURDER MATRIX ATTACHED HERETO AND INCORPORATED HEREIN; AFTER SUBTRACTING 33% FOR GOOD TIME/WORK TIME, (P.C. § 2931) POST CONVICTION, CONFINEMENT TIME, TERM REDUCING CREDIT:

## REASONABLE BELIEF

Wouldn't You believe You would receive a commencerate term, (e.g. 29 years)? WOULDN'T YOU REASONABLY BELIEVE, YOU WOULD BE FREE AFTER SERVING 19-20 YEARS? (subtracting 33% off Term)

NOTE: PETITIONER WAS ADVISED THIS BY COUNSEL WITH D.D.A. MILLER AT THE PLEA BARGAIN STAGE, BEFORE PETITIONER SIGNED THE CONTRACT. HOWEVER, TODAY PETITIONER ~~KNOWS~~ Is told THIS TO BE UNTRUE.

## PAROLE

THE D.D.A. MILLER, TOLD PETITIONER (P.C. § 1192.7) THAT Petitioner WOULD BE ELIGIBLE FOR PAROLE FOR UP TO 5 YEARS (PAROLE IS EARLY RELEASE TO FINISH THE REMAINDER OF THE TERM PROSCRIBED OUTSIDE THE PRISON WALLS (Morressy v. BREWER, U.S. Supreme Court Law. ) ALTHOUGH UNLIKELY, POSSIBLE.

BASED UPON THIS STATEMENT AND THE CLEAR WORDS USED IN THIS INSTRUMENT (i.e. 60 MONTHS PAROLE).

WOULDN'T YOU REASONABLY BELIEVE THAT A.) REASONABLE BELIEF YOU WOULD POSSIBLY RECEIVE AN EARLY RELEASE OF UP TO 60 MONTHS; AND OR B.) 60 MONTHS OF PAROLE?

WOULD YOU BELIEVE YOU WOULD HAVE A LIFE TIME OF PAROLE? (P.C. § 3000.1). THIS IS REVERSEABLE "PLAIN ERROR" (IN RE CARABES (1983) 193 CAL. RPTR. 65, OR IN RE MOSER 24 CAL. RPTR. 2d 723 (1993)), OR "clear error", "reversable error.".

## Surrounding Circumstances

Petitioner was in a Federal Jail/prison M.C.C., Parole was being used then. Petitioner doubts that M.C.C. "Law library" even has a Title 15; He ~~would~~ may not have even knew how the laws worked, even if he had access to it,

Your honor, Petitioner was (and is) ignorant and isolated, The entire Court and Confinement experience, under the pressure of Very Serious charges and told by Court Appointed counsels', Prosecutors', and Federal Court Judge that he faced (and would probably receive) L.W.O.P. was crushing. They all relied on the A.U.S.A. (Me Too), because of our core belief that, for the most part, our Government does not mislead us to our detriment. Petitioner thought this was a tactic, when he considered the totality of the Surrounding circumstances. On 1-10-91, Petitioner did not know "the facts".

On 2-24-2005, Petitioner did not know facts. Petitioner discovered "labels" of Californiaese when attempting to receive his earned post conviction credit for his alleged "Release date", In November 2005. The Artiface of Californiaese; combined with presumption of reviewing courts, is almost indescribeable, until one falls Victim to the anamoly. The exploitation of Petitioner, by creating and defineing Words that a prisoner (or reviewing court) adopts to his own detriment e.g. "Parole", "Indeterminate Sentence", "Life prisoner" (based upon no Statutory Underpinnings) and escape meaningful reviews, is beyond words, and this ... exploitation, Could not be discovered (and not all of it) until June or so, 2007. Petitioner has studied, D.S.L., then I.S.L., then the Legislation, then the State and Fed. Constitution, and law dictionaries, civil Codes, the U.S. History, the Social Compact, And realized just how brilliant a mind your honor must have, a slave to knowlege, forever dilligent. While morons like me TAKE it for granted and fail to be asset to my nation, my Country, my Community. Petitioner is ashamed ... and appreciates Yours and Mr. Woods, Sacrafice. Just so you know, Virtually every crime stems from feelings of disenfranchisement (at school) between kids and their Teachers or Government We must fix this to stop crime and rebuild our nation, into the Good Days. Severe Punishment has not worked in any nation in history. Heal us.

///

//

VARIFICATION

I, Martin Edward Walters, declare under penalty of Perjury that The foregoing is true and correct to the best of My knowlege.

Executed on July 10, 2008 in Vacaville california

Martin Walters
MARTIN WALTERS
Declarant

# EXHIBIT COVER PAGE:

Exhibit: A

Description of this exhibit:

Number of pages of this exhibit:_______pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ____________________

## § 190. Murder; degrees; punishment; parole

(1) Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life.[1] The penalty to be applied[2] shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5.

(2) Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life.

(3) The provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code shall apply to reduce any minimum term of 25 or 15 years[3] in a state prison imposed pursuant to this section,[4] but such person shall not otherwise be released on parole[5] prior to such time. *(Added by § 2 of Initiative Measure approved Nov. 7, 1978.)*

Former § 190 was repealed by § 1 of Initiative Measure approved Nov. 7, 1978.

Former § 190, added by Stats.1973, c. 719, § 2, amended by Stats.1976, c. 1124, § 1; Stats.1976, c. 1139, § 133, relating to similar subject matter, was repealed by Stats.1977, c. 316, § 4.

Former § 190 was repealed by Stats.1973, c. 719, § 1.

the defendant was under the influence of extreme mental or emotional disturbance.

(e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act.

(f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct.

(g) Whether or not defendant acted under extreme duress or under the substantial domination of another person.

(h) Whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, or the effects of intoxication.

(i) The age of the defendant at the time of the crime.

(j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

(k) Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime.

After having heard and received all of the evidence, and after having heard and considered the arguments of counsel, the trier of fact shall consider, take into account and be guided by the aggravating and mitigating circumstances referred to in this section, and shall impose a sentence of death if the trier of fact concludes that the aggravating circumstances outweigh the mitigating circumstances. If the trier of fact determines that the mitigating circumstances outweigh the aggravating circumstances the trier of fact shall impose a sentence of confinement in state prison for a term of life without the possibility of parole. *(Added by § 8 of Initiative Measure approved Nov. 7, 1978.)*

Former § 190.3 was repealed by § 7 of Initiative Measure approved Nov. 7, 1978.

Former § 190.3, added by Stats.1973, c. 719, § 6, prohibiting death penalty in certain circumstances, was repealed by Stats.1977, c. 316, § 10. See, now, § 190.5.

**Cross References**

Burden of proving mitigating circumstances in trial for murder, see § 1105.

Death penalty, not deemed cruel or unusual punishment, see Const. Art. 1, § 27.

Treason, admissibility of evidence of overt act, see § 1102.7.

**§ 190.4. Special circumstances; special findings; penalty hearing; application for modification**

(a) Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial or at the hearing held pursuant to Subdivision (b) of Section 190.1.

In case of a reasonable doubt as to whether a special circumstance is true, the defendant is entitled to a finding that it is not true. The trier of fact shall make a special finding that each special circumstance charged is either true or not true. Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be charged and proved pursuant to the general law applying to the trial and conviction of the crime.

If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people.

If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, and neither the finding that any of the remaining special circumstances charged is not true, nor if the trier of fact is a jury, the inability of the jury to agree on the issue of the truth or untruth of any of the remaining special circumstances charged, shall prevent the holding of a separate penalty hearing.

In any case in which the defendant has been found guilty by a jury, and the jury has been unable to reach a unanimous verdict that one or more of the special circumstances charged are true, and does not reach a unanimous verdict that all the special circumstances charged are not true, the court shall dismiss the jury and shall order a new jury impaneled to try the issues, but the issue of guilt shall not be tried by such jury, nor shall such jury retry the issue of the truth of any of the special circumstances which were found by a unanimous verdict of the previous jury to be untrue. If such new jury is unable to reach the unanimous verdict that one or more of the special circumstances it is trying are true, the court shall dismiss the jury and in the court's discretion shall either order a new jury impaneled to try the issues the previous jury was unable to reach the unanimous verdict on, or impose a punishment of confinement in state prison for a term of 25 years.

(b) If defendant was convicted by the court sitting without a jury the trier of fact at the penalty hearing shall be a jury unless a jury is waived by the defendant and the people, in which case the trier of fact shall be the court. If the defendant was convicted by a plea of guilty, the trier of fact shall be a jury unless a jury is waived by the defendant and the people.

If the trier of fact is a jury and has been unable to reach a unanimous verdict as to what the penalty shall be, the court shall dismiss the jury and shall order a new jury impaneled to try the issue as to what the penalty shall be. If such new jury is unable to reach a unanimous verdict as to what the penalty shall be, the court in its discretion shall either order a new jury or impose a punishment of confinement in state prison for a term of life without the possibility of parole.

# EXHIBIT COVER PAGE:

Exhibit: B.

Description of this exhibit:

Number of pages of this exhibit:________pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ____________________________________________

# California Code Of Regulations
## Title 15. Division 2. Board of Prison Terms

Chapter 3.

CIRCUMSTANCES

| First Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged physical pain through the use of non-deadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 25-26-27 | 26-27-28 | 27-28-29- | 28-29-30 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 26-27-28 | 27-28-29 | 28-29-30 | 29-30-31 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 27-28-29 | 28-29-30 | 29-30-31 | 30-31-32 |
| IV. Threat to Public order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution or any killing where the prisoner hired and/or paid another person to commit the offense. | 28-29-30 | 29-30-31 | 30-31-32 | 31-32-33 |

(c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978

CIRCUMSTANCES

| Second Degree Murder<br>Penal Code 189 (in years and does not include post conviction credit as provided in 2290) | A. Indirect<br>Victim died of crimes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force, e.g. shock producing heart attack; a crime partner actually did the killing | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or action calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partners, drug dealers, etc. | 15-16-17 | 16-17-18 | 17-18-19 |
| II. Prior relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc), which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense. See Category IV. | 16-17-18 | 17-18-19 | 18-19-20 |
| III. No Prior relationship<br>Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 17-18-19 | 18-19-20 | 19-20-21 |

Note: Petitioner's "circumstances" could not (possibly) justify a term beyond 30 years, That term must be reduced by post conviction credit. (e.g. 33%); And 28 year term was probably proportionate considering P.S.R. as true.

# EXHIBIT COVER PAGE:

Exhibit: C

Description of this exhibit:

Number of pages of this exhibit:______ pages

JURISDICTION: (Check only one)

____Municipal Court

____Superior Court

____Appellate Court

____State Supreme Court

____United States District Court

____United States Circuit Court

____United States Supreme Court

____California Department of Corrections, 602 Exhibit.

____Other: ____________________

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

FILED
KENNETH E. MARTONE
Clerk of the Superior Court
MAY -9 1990
By: A. PECK, Deputy

0253

People vs. Martin Walters CR No. 103749

DA No. B 46516

## PLEA OF GUILTY/NO CONTEST - FELONY

The defendant in the above-entitled action, in support of his/her motion to change his/her plea(s) in open Court, personally and by his/her attorney, does declare as follows:

1. Of those charges now filed against me in this case, I plead guilty (Guilty/No Contest) to the following violations: (List Crimes and Code Sections) P.C. § 187 Murder, 1st degree (Count 8) Amended Information — MW

1a. (If Applicable) I also admit the following enhancement(s)/prior conviction(s) with which I am charged: (List Court, Docket No. and Date of any Prior Conviction) N/A

2. I have not been induced to enter the above plea by any promise or representation of any kind, except: (Briefly state any agreement with the District Attorney.) Dismiss all remaining counts + allegations; D.A. has no opposition to serving sentence in federal custody; concurrent to federal sentence in 89-0769 G; DA agrees to file no charges against either Martha Walters or Carmen Fonseca (Martin Walter's mother and aunt); Dismiss the companion drug case — MW

RIGHT TO A LAYWER

3. I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer, or the Court will appoint a lawyer for me if I cannot afford one. — MW

CONSTITUTIONAL RIGHTS

I understand that I also have the following constitutional rights, which I now give up to plead either Guilty/No Contest:

| | I understand this right. | I give up this right. |
|---|---|---|
| 4. The right to be tried by a jury, in a speedy, public trial. | MW | MW |
| 5. The right to confront and to cross-examine all the witnesses against me. | MW | MW |
| 6. The right to remain silent (unless I choose to testify on my own behalf). | MW | MW |
| 7. The right to present evidence and to have witnesses subpoenaed to testify in my behalf at no cost to me. | MW | MW |

CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

8a. I understand that I may receive this maximum penalty as a result of my plea: 25 yrs to life years in State Prison, $ 10,000 fine and ~~48~~ 60 months parole, with up to one year return to prison for every parole violation. If I should receive probation (for up to five years), I understand that I may be given up to a year in local custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any terms or conditions of probation I can be sent to State Prison for the maximum term as stated above. — MW

8b. My attorney has explained to me that other possible consequences of this plea may be: — MW
(Circle applicable consequences.)
(a) Consecutive sentences.
(b) Loss of driving privileges.
(c) Commitment to the Youth Authority.
(d) Registration as a sex offender.
(e) Registration as an arsonist.
(f) Ineligibility for probation/presumptive prison. [circled]
(g) Registration as a narcotics offender.
(h) Restitution and/or a restitution fine. ($100-$10,000) [circled]
(i) Serious felony prior/prison prior. [circled]
(j) Priorable [circled]

9. I understand that if I am not a citizen of the United States a plea of Guilty or No Contest could result in deporation, exclusion from admission to this country, and/or denial of naturalization. N/A

10. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases. N/A

11. I now plead guilty (Guilty/No Contest) to the charges(s) described in #1 above and admit that on the date charged I: (Describe facts as to each charge in #1.) MW

~~[illegible]~~
lawfully murdered Christine Reyes, alone, my brother Vincent did not aid or assist in any way with her death D254

11a. **(If Applicable)** I understand that as to any and all prior convictions(s)/enhancements(s) alleged against me in this case, I have all the constitutional rights listed in #3-#7 above. As to any prior convictions alleged, I understand that if I request a jury trial on the current case, the jury would not learn of or decide, the prior conviction(s) unless and until the jury found me guilty on the current charges. N/A

11b. **(If Applicable)** I herby admit the prior conviction(s)/enhancement(s) listed in this form, and give up my constitutional rights, including the right to separate jury determination on the issue of the prior conviction(s) N/A

12. I do understand that the matter of probation and sentence is to be determined solely by the Court. MW

13. **(Harvey Waiver)** The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence. MW

14. I am entering my plea freely and voluntarily, without threat or fear to me or anyone closely related to me. MW

15a. I am pleading Guilty because in truth and in fact I AM GUILTY MW

15b. I understand that a plea of No Contest is the same as a plea of Guilty in this criminal case and for all purposes has the same consequences as a plea of Guilty. N/A

16. I am now sober. I have not consumed any drug, alcohol or narcotic within the past 24 hours to the extent that my judgment is impaired. MW

17. I declare under penalty of perjury, under the laws of the State of California, that I have read, understood, and initialed each item above, and everything on the form is true and correct. MW

Dated: 5-9-90 Defendant's Signature Martin Walters

Defendant's Address ______________________
Street City State ZIP

Defendant's Telephone No. ( ) - __________

---

## ATTORNEY'S STATEMENT

The undersigned states that (s)he is the attorney for defendant in the above-entitled action; that (s)he personally read and explained the contents of the above declaration to the defendant and each item thereof; that no meritorious defense exists to the charge(s) to which defendant is pleading Guilty/No Contest; that (s)he personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge explanation of the contents of each item; that (s)he observed defendant date and sign said declaration; that (s)he concurs in defendant's above plea and in defendant's waiver of constitutional rights.

Dated: 5-9-90 Larry Aitbride
Attorney for Defendant

## INTERPRETER'S STATEMENT (If Applicable)

I, the interpreter in this proceeding, having been duly sworn, truly translated this form and all the questions therein to the defendant in the ______________ language. The defendant indicated that (s)he understood the contents of the form and (s)he then initialed and signed the form.

Dated: ______________
Court Interpreter

## PROSECUTOR'S STATEMENT

The People of the State of California, plaintiff in the above-entitled criminal action, by and through its attorney, EDWIN L. MILLER, JR., District Attorney, concurs in the defendant's plea of Guilty/No Contest as set forth above.

Dated: 5.9.90 Evan Miller
Deputy District Attorney

## COURT'S FINDINGS AND ORDER

The Court, having questioned the defendant concerning the defendant's constitutional rights, finds that defendant has voluntarily and intelligently waived his/her constitutional rights. The Court finds that defendant's pleas and admissions are freely and voluntarily made, that defendant understands the nature of the charges and the consequences of the plea, and that there is a factual basis for the plea. The Court accepts defendant's plea, and the defendant is hereby convicted on his plea.

Dated: 5/9/90
Judge of the Superior Court

# EXHIBIT COVER PAGE:

Exhibit: D

Description of this exhibit:

Number of pages of this exhibit:________pages

JURISDICTION: (Check only one)

_____Municipal Court

_____Superior Court

_____Appellate Court

_____State Supreme Court

_____United States District Court

_____United States Circuit Court

_____United States Supreme Court

_____California Department of Corrections, 602 Exhibit.

_____Other: ______________________________

is...I will set it up and call Larry

07/17/90 N/C tct EBG chambers NI LMTC

07/17/90 .20 tcf EBG law clerk who says that the only time that the judge can meet with us is tomorrow at 4:15

07/18/90 N/C tct Ferraro and Ainbinder to advise NI LMTC

07/18/90 .20 conf w/Ainbinder and Ferraro. Ferraro points out that we goofed up a little doing the dispo...cl was advised that the max for count one was 10-life. Actually, the guidelines changed one day after cl's conduct (difference is between 10/31/88 and 11/01/88) the actual guidelines in effect at time of offense were 0-20 years.

Martin could argue ineffective assistance of counsel if he wanted to, however:

(a) his state court case was mandatory 25-life
(b) even under the correct guidelines, his exposure at trial was a term of years that would have exceeded a life sentence

For these reasons, any IAC claim would be without merit.

Bottom line is that this makes the PSR recommendation moot, because the max cl could get would be 20 (for count one) plus 5 (for count two) for a total of 25 years! Martin should be happy about this.

07/18/90 .20 conf w/Ainbinder...he thinks that since Martin will do probably 19-20 actual years state, we should have his fed sentence a little longer than state so he doesn't have to go and do any state time. Therefore, we should get a total sentence of around 23years 3 months, which is 20 years actual time.

07/18/90 1.20 legal research re guidelines and prison terms. It appears that we should ask for 18 years and 3 months (219 months) for the conspiracy, 10 years (120 months) for the pipe bomb...all to run concurrent. Then add five years mandatory for the gun, and you get 23 years and 3 months (279 months). This will get him out in twenty years on the nose, which is what we all intended when we did plea negotiations (cal. civ code of civ. proc. § 1859)

07/19/90 1.40 prep for sent hearing

07/19/90 .50 R+R probation response to our obj to PSR

07/23/90 .30 appear EBG for hearing...marshal tells me that cl was hospitalized a couple of days ago for kidney problems, and should be in Harbor View Hosp...we will check and find out. Matter put over to 07/26/90 fpr status

07/23/90 tct Harborview Medical Center (232-4331) They do not have any information or records showing that Martin is there.

0344

In this case, the defendant, Martin Walters, is attempting to withdraw the state portion of a federal/state plea bargain package he entered into with the United States Government and the People of the State of California.

The basis for this request is the defendant's contention that he mistakenly believed he would be facing life without possibility of parole for the primary count charged in his federal indictment. The defendant claims that for this reason alone, he accepted the plea bargain package. [See defendant's moving papers at p.2, lines 21 through 26].

However, the People must point out that this defendant had other reasons for accepting this plea bargain. The defendant was charged in Counts 7 and 8 of the state information with kidnapping for ransom with allegations of bodily injury (PC 209(a)) and murder in the first degree (PC 187(a)), respectively. Count 7 mandated a sentence of life without parole. Count 8 had a sentence range of 25 years to life.

In exchange for his plea of guilty to Count 8 of the information (PC 187(a)) the People dismissed Count 7, thereby saving the defendant from the possibility of life without parole in state prison. Furthermore, the People did not oppose the defendant's wish to serve his sentence in federal custody; concurrent with his federal sentence. The People agreed to file no charges against the defendant's mother, Martha Walters, or his aunt, Carmen Fonsica, and also to assist in limiting the amount of time they would serve in federal custody. Finally, the People dismissed the companion drug cases against the defendant that had been trailing along with the

/ / / / /

the light most favorable to the government, these tapes show Martin Walters purchasing enormous quantities of precursor chemicals and supplies for the production of multi-hundred pound shipments of methamphetamine.

It was counsel's opinion, communicated to Mr. Walters, that the state of the federal prosecutor's evidence was extremely strong. It was also counsel's opinion, again communicated to Mr. Walters, that as a result of these videotapes, (and despite the fact that the People's evidence was nowhere near so strong), that even if we should prevail completely on all of the state charges, it was a near certainty that Mr. Walters would spend the rest of his natural life in a federal penitentiary should he elect to go to trial on those charges. The same opinions were communicated to him by his federal defense attorney, James Pokorny.

This information obviously had a profound effect on Martin. He was 20 years old when arrested. And because of the mutually mistaken belief that he faced an LWOP sentence in federal court on charges he would almost certainly be convicted of, he was under the impression that if he accepted the plea bargains offered and entered pleas of guilty to both cases, including a plea to the instant P.C. § 187 charge, he would in all likelihood walk out of prison at the age of 40 with most of his life in front of him; but if he did not resolve the cases by plea, he would serve the rest of his natural life incarcerated in a federal prison. This impression was <u>the</u> motivating factor in deciding to enter his plea of guilty to murder in the case now before your honor. It was obviously based on an extremely material misunderstanding of the true consequences of electing trial over entering a plea of guilty.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

DEPARTMENT NO. 15 HON. PERRY LANGFORD, JUDGE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, PLAINTIFF, | |
| VS. | CASE NO. CR 103749 |
| MARTIN E. WALTERS, DEFENDANT. | MOTION TO WITHDRAW PLEA |
| | PAGES 1 - 31 |

REPORTER'S TRANSCRIPT

JANUARY 10, 1991

APPEARANCES:

FOR THE PLAINTIFF:
EDWIN L. MILLER, JR.
DISTRICT ATTORNEY
BY: EVAN MILLER
DEPUTY DISTRICT ATTORNEY
220 WEST BROADWAY
SAN DIEGO, CALIFORNIA 92101

FOR THE DEFENDANT:
LARRY AINBINDER
DEPUTY PUBLIC DEFENDER
233 A STREET
SAN DIEGO, CALIFORNIA 92101

REPORTED BY:
YVONNE A. MORENO, CSR 5366
OFFICIAL COURT REPORTER
SAN DIEGO SUPERIOR COURT

TO HIM THAT "WHY WOULD YOU WANT TO DO THAT." AND FOR THAT REASON WE SUGGESTED TO HIM THAT THE OFFERS MADE ON BOTH SIDES OF THE STREET, A PLEA TO FIRST DEGREE MURDER OVER HERE, A PAROLABLE OFFENSE, PLEAS TO THE CONSPIRACY TO MANUFACTURE METHAMPHETAMINE AND TO THE GUN COUNTS OVER IN FEDERAL COURT, RUN CONCURRENT WITH A RELEASE DATE ANTICIPATED AT 20 YEARS, WERE SOMETHING THAT MADE A LOT MORE SENSE.

IT WAS ESSENTIALLY OUR JOINT ADVICE TO THE OPINION THAT FACING LIFE WITHOUT PAROLE IN A FEDERAL CASE, WHERE THERE WAS VIDEOTAPE EVIDENCE AS STRONG AS THAT VIDEOTAPE EVIDENCE APPEARED, THAT THAT WAS JUST SUICIDAL. AND SO THAT NO MATTER WHAT THE STRENGTHS OR WEAKNESSES OF THE PEOPLE'S EVIDENCE IN THIS CASE, IT MADE NO SENSE TO REJECT THE OFFER AND TO BE ACQUITTED, LET'S SAY, OVER HERE AND TO TURN AROUND AND BE CONVICTED IN FEDERAL COURT AND SPEND THE REST OF HIS NATURAL LIFE IN FEDERAL PRISON.

THAT WAS THE MOTIVATING FACTOR AND THE RECURRENT REASON FOR HIS ENTERING HIS PLEA TO THIS CHARGE, AND IT'S FOR THAT REASON THAT IT'S MY READING OF THE LAW HE SHOULD BE ENTITLED TO WITHDRAW HIS PLEA IN THIS CASE.

I WILL SIT DOWN BASICALLY WITH THIS LAST THOUGHT: TO TELL HIM THAT THAT FACT DOES NOT JUSTIFY WITHDRAWING HIS PLEA IS ESSENTIALLY TO SAY "WELL, 20 YEARS OR LIFE WITHOUT THE POSSIBILITY OF PAROLE, YOU BASICALLY UNDERSTOOD THE PARAMETERS OF THE PLEA, WHICH IS THAT YOU'RE GOING TO DO A LOT OF TIME AND REALLY WHAT'S THE DIFFERENCE."

AND IN MY MIND WHEN YOU'RE TALKING ABOUT A FELLOW WHO THEN WAS 22 YEARS OLD AND TRYING TO MAKE SOME

DECISIONS BASED UPON WHETHER HE WOULD WALK OUT OF PRISON ROUGHLY AT THE AGE OF 40 OR SPEND THE REST OF HIS NATURAL LIFE IN PRISON, PARTICULARLY AS IT HAD BEEN IMPRESSED UPON HIM BY BOTH THE FEDERAL JUDGE, THE FEDERAL PROSECUTOR, MYSELF, HIS FEDERAL DEFENSE ATTORNEY AND THE PRECEEDING LAWYERS, IT'S JUST MIND-BOGGLING TO BELIEVE THAT THAT DID NOT AFFECT AND DID NOT CONTROL HIS DECISIONS IN THIS CASE, AND FOR THESE REASONS WE BELIEVE IT'S APPROPRIATE TO ALLOW HIM TO WITHDRAW HIS PLEA.

THE COURT: OKAY.

BEFORE I ASK THE PEOPLE TO RESPOND, LET ME ASK YOU THIS, MR. AINBINDER. IT'S YOUR POSITION THAT AS BORNE OUT BY THE DOCUMENTS THAT YOU SUBMITTED FROM THE FEDERAL COURT THAT ALL PARTIES, THE JUDGE IN THE FEDERAL SYSTEM, AS WELL AS ALL THE PARTIES IN THE STATE SYSTEM AND THE PROSECUTOR AND EVERYBODY INVOLVED IN THE CASE AS TO THE FEDERAL CASE, THEY WERE UNDER THE MISTAKEN BELIEF THAT THE MAXIMUM PUNISHMENT AT THAT TIME WAS LIFE IMPRISONMENT.

MR. AINBINDER: THAT IS CORRECT.

THE COURT: JUST LIFE WITHOUT POSSIBILITY OF PAROLE UNDER THE FEDERAL SYSTEM.

MR. AINBINDER: THAT'S CORRECT.

THE COURT: NOW, MY QUESTION IS, FIRST OF ALL, IS WAS THAT A QUESTION, WHETHER HAD IT -- WHERE THERE WAS AN OPEN ISSUE IN THE FEDERAL SYSTEM WHETHER OR NOT THE NEW TERM APPLIED TO YOUR CLIENT OR CASES RELATED SIMILAR TO YOUR CLIENT, OR WAS IT SOMETHING THAT CAME ABOUT IN TERMS OF A CASE WHICH CLARIFIED THE ISSUE OF RETROACTIVITY.

HAVE THE REPORT IN FRONT OF ME.

THE QUESTION THOUGH, YOUR HONOR, IS ALSO DID HE RECEIVE THE BENEFIT OF HIS BARGAIN OVER IN STATE COURT. AS I POINT OUT IN MY MOVING PAPERS, HE WAS ALSO LOOKING AT A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT. SO WHEN HE PLED TO THE FIRST DEGREE MURDER, HE GOT THE BENEFIT OF NO LONGER BEING EXPOSED TO A LIFE WITHOUT THE POSSIBILITY OF PAROLE IN STATE COURT.

IN ADDITION TO THAT, WE AGREED THAT HE COULD SERVE HIS TIME IN FEDERAL CUSTODY AS OPPOSED TO A STATE FACILITY. WE ALSO AGREED THAT ANY TIME HE GOT IN THE STATE CASE COULD BE CONCURRENT WITH THE FEDERAL TIME.

WE AGREED TO FILE NO CHARGES AGAINST BOTH HIS MOTHER AND HIS AUNT ON A SOLICITATION FOR MURDER CASE. WE ALSO AGREED - AND THE FEDERAL PROSECUTOR WAS HERE AT THE TIME OF THE CHANGE OF PLEA - THAT THE AMOUNT OF TIME THAT BOTH HIS MOTHER AND HIS AUNT WOULD GET ON THEIR FEDERAL CASE RELATED TO THE SOLICITATION OF MURDER, THAT WE WOULD PUT A LID ON THAT TIME AND ALL OF THAT HAS HAPPENED.

THERE HAVE BEEN NO CHARGES FILED AGAINST THE MOTHER. NO CHARGES AGAINST THE AUNT. AND, IN FACT, THE MOTHER AND AUNT WERE SENTENCED IN FEDERAL COURT TO THE LIMIT THAT WE DISCUSSED HERE IN STATE COURT. SO HE HAS RECEIVED THE BENEFIT OF THAT BARGAIN.

IN ADDITION TO THAT, THERE WAS A COMPANION DRUG CASE THAT WAS DISMISSED IN STATE COURT. SO HE HAS RECEIVED CONSIDERABLE -- A CONSIDERABLE AMOUNT OF BENEFIT OVER IN STATE COURT FOR THE PLEA THAT HE ENTERED.

Petitioner's exhibit

THE COURT: MR. WALTERS, I HAVE IN MY HAND THE PRE-SENTENCE REPORT IN THIS MATTER. HAVE YOU HAD A CHANCE TO GO OVER IT WITH YOUR LAWYER, MR. PORKORNY?

THE DEFENDANT: YES, I HAVE, YOUR HONOR.

THE COURT: IS THERE ANYTHING ABOUT THE REPORT YOU WOULD LIKE TO TALK TO MR. POKORNY ABOUT BEFORE WE GO ANY FURTHER THIS MORNING?

THE DEFENDANT: YES.

THE COURT: OKAY. YOU MAY TALK WITH HIM NOW.

(COUNSEL AND DEFENDANT CONFER.)

MR. POKORNY: WE ARE READY TO PROCEED, YOUR HONOR.

THE COURT: ANYTHING ELSE YOU WANT TO TALK TO HIM ABOUT, MR. WALTERS?

THE DEFENDANT: NO.

THE COURT: THE COURT HAS READ AND CONSIDERED THE OBJECTIONS, AND ALSO HAS SOME WRITTEN THINGS HERE, THE ATTACHMENT THERETO. THE COURT HAS READ AND CONSIDERED ALL OF THAT FOR PURPOSES OF SENTENCING.

MR. POKORNY, DO YOU HAVE ANYTHING YOU WOULD LIKE TO SAY ABOUT SENTENCING BEFORE WE SENTENCE THE DEFENDANT?

MR. POKORNY: YES, YOUR HONOR. IT WILL BE BRIEF IN VIEW OF THE FACT THAT THE COURT HAS EXPRESSED IT'S INCLINATION TO FOLLOW THE PLEA AGREEMENT.

JUST BY WAY OF A QUICK REVIEW. IN STATE COURT 25 TO LIFE ACTUALLY MEANS, ACCORDING TO MR. MILLER, WHO'S

OUR EXPERT FROM STATE COURT, THAT THIS MAN WILL BE ELIGIBLE FOR PAROLE IN ABOUT 17 AND TWO-THIRD YEARS, WHICH I GUESS IS 17 YEARS AND EIGHT MONTHS. AS A PRACTICAL MATTER, HE WILL COME UP FOR PAROLE TO THE PAROLE HEARING IN ABOUT 18 YEARS.

I UNDERSTAND THAT THE LIKELIHOOD OF HIM BEING PAROLED AT THAT TIME IS SLIM TO NONE. HOWEVER, IT EXISTS.

THE PAROLE BOARD WILL THEN SET, IF IT DENIES HIS APPLICATION FOR PAROLE, ANOTHER PAROLE HEARING, EITHER ONE, TWO OR THREE YEARS DOWN THE ROAD FROM THAT DATE.

WE AGREE THAT HIS PROBABLE RELEASE DATE IS GOING TO BE 20 TO 21 YEARS, IT LOOKS LIKE, STATE SIDE. THAT'S THE ACTUAL TIME THAT HE'LL DO.

AS I INDICATED, THE JUDGMENT IS GOING TO BE ENTERED SUBSEQUENT TO TODAY'S DATE.

MY SUGGESTION TO THE COURT -- THIS IS FAIRLY STRAIGHTFORWARD. WE HAVE NO REAL BEEF WITH THE PRE-SENTEN( REPORT. WE FILED OUR OBJECTIONS, AND THEY'RE A MATTER OF RECORD AT THIS POINT. IT APPEARS TO BE FAIRLY ACCURATE OTHER THAN THE POINTS WE RAISED, WHICH WERE REALLY CON- CLUSIONARY POINTS IN THE COMPUTATION OF THE GUIDELINES SCORE BY THE PROBATION OFFICER.

WE ARE SUGGESTING THAT THE COURT GO BY LEVEL 36, CRIMINAL HISTORY CATEGORY OF ONE, WHICH FACTUALLY IS THE CASE. I THINK HE HAD ONE -- HE WAS -- SINCE HE WAS

THE COURT: ALL RIGHT.

MR. FERRARO: YOUR HONOR, I DON'T THINK IMPOSING THE LOWER END IS REQUIRED BY THE AGREEMENT. THE UNITED STATES ASKED THE COURT TO IMPOSE A 25-YEAR SENTENCE. LET ME BREAK THAT DOWN.

COUNT 1, 20 YEARS. COUNT 10, A CONCURRENT 10 YEAR SENTENCE. COUNT 13, A CONSECUTIVE FIVE-YEAR TERM OF IMPRISONMENT.

MUCH HAS BEEN SAID THIS MORNING ABOUT FIGURING OUT THE KIND OF SENTENCE THAT WILL BE ULTIMATELY IMPOSED IN THE CASE AGAINST MARTIN WALTERS IN STATE COURT. WHAT I MEAN BY THAT IS THERE HAS BEEN CALCULATIONS, ATTEMPTING TO FIGURE OUT HOW MANY YEARS MR. WALTERS WILL ACTUALLY SERVE IN STATE PRISON. I WOULD SUBMIT TO THE COURT THAT NONE OF THAT REALLY HAS ANY PLACE HERE, OR ANY REAL CONSIDERATION BEFORE YOU. THE DEFENDANT IS GOING TO BE SENTENCED ACROSS THE STREET FOR THE CRIMES THAT HE COMMITTED.

OUR AGREEMENT IS SIMPLY THAT THE TIME IS TO RUN CONCURRENT. NOW, WE STAND BY THAT AGREEMENT. ACTUALLY, THE GOVERNMENT NEVER AGREED TO THAT. THE STATE AGREED TO IT. WE DON'T WANT TO INTERFERE WITH THEIR AGREEMENT. WE DON'T WANT TO INTERFERE WITH THEIR ATTEMPT TO DO THAT.

BUT I WOULD SUBMIT THAT WE NEED TO LOOK AT THIS CASE AND PUNISH THIS DEFENDANT FOR THE CRIMES HE COMMITTED HERE, AND THE SUPERIOR COURT WILL IMPOSE A SENTENCE FOR